## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FOOTPRINT POWER SALEM HARBOR DEVELOPMENT LP, *et al.*,[1] | Case No. 22-10239 (____) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) MODIFYING THE AUTOMATIC STAY, AND (D) GRANTING RELATED RELIEF

Footprint Power Salem Harbor Development LP ("DevCo") and its debtor affiliates

in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively with

DevCo, the "Debtors"), respectfully represent as follows in support of this motion (this "Motion"):

### RELIEF REQUESTED

1.      By this Motion, pursuant to sections 105, 361, 362, 363, 503, 506, 507, and 552 of

title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, 7062,

and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

Rules 2002-1(b), 4001-2, and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure

of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Footprint Power Salem Harbor Development LP (1360); Highstar Footprint Holdings GP, LLC (2253); Highstar Footprint Power Holdings L.P. (9509); Footprint Power Salem Harbor FinCo GP, LLC (N/A); Footprint Power Salem Harbor FinCo, LP (9219); and Footprint Power SH DevCo GP LLC (9008). The location of the Debtors' service address is: c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite 475, Spring, Texas 77380. The Debtors have used the words "Footprint Power" and its associated logo in their names pursuant to a license (the "License") granted by the trademark owner Footprint Power Holdings, LLC (the "Trademark Licensor"). The License was terminated in accordance with the governing License agreement shortly before the commencement of these chapter 11 cases. Accordingly, to avoid and/or mitigate any alleged claims the Trademark Licensor may assert against the estates, the Debtors will no longer be utilizing the "Footprint" logo and, as part of their "first-day" motions, are seeking authorization to change the respective Debtors' names that will be utilized in connection with these chapter 11 cases.

request entry of an interim order (the "<u>Interim Order</u>"),[2] substantially in the form attached hereto as **<u>Exhibit A</u>**, and a final order (the "<u>Final Order</u>" and, together with the Interim Order, the "<u>Cash Collateral Orders</u>") (a) authorizing the Debtors to use "cash collateral" as such term is defined in section 363 of the Bankruptcy Code (the "<u>Cash Collateral</u>"), including the Cash Collateral in which the Prepetition Secured Parties (as defined below) have a lien or other interest, in each case whether existing on the Petition Date, arising pursuant to the Cash Collateral Orders, or otherwise; (b) granting adequate protection, solely to the extent provided in the Cash Collateral Orders, to the Prepetition Secured Parties and Iberdrola Energy Projects, Inc. ("<u>IEP</u>"); (c) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the Cash Collateral Orders; and (d) granting related relief. In addition, the Debtors request that the Court schedule a final hearing (the "<u>Final Hearing</u>") to consider approval of this Motion on a final basis.

## <u>JURISDICTION AND VENUE</u>

2.       The Court has jurisdiction over these chapter 11 cases and this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue of these chapter 11 cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Interim Order or the First Day Declaration (as defined below), as applicable.

3.      The statutory and legal predicates for the relief requested herein are sections 105,

361, 362, 363, 503, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001,

6003, 7062, and 9014, and Local Rules 2002-1(b), 4001-2, and 9013-1(m).

## BACKGROUND

4.      On March 23, 2022 (the "Petition Date"), the Debtors each commenced a case by

filing a petition for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors are authorized to continue to operate their business and manage their

property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

To date, no trustee, examiner or statutory committee has been appointed in these chapter 11 cases.

6.      Contemporaneously herewith, the Debtors filed a motion requesting joint

administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

7.      Information regarding the Debtors' business and capital structure, the

circumstances leading to the commencement of these chapter 11 cases, and the facts and

circumstances supporting the relief requested in this Motion is set forth in the *Declaration of

John R. Castellano in Support of Chapter 11 Petitions and First Day Pleadings*, sworn to on the

date hereof (the "First Day Declaration"). The First Day Declaration has been filed with the Court

contemporaneously herewith and is incorporated by reference herein.

## CONCISE STATEMENT PURSUANT TO
## BANKRUPTCY RULE 4001 AND LOCAL RULE 4001-2

8.      Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2(a), the Debtors submit

the following concise statement summarizing the material terms of the Interim Order.[3]

---

[3]     Any summary of the terms of the Interim Order contained in this Motion is qualified in its entirety by reference
to the provisions of the Interim Order. To the extent there is a conflict between the Motion and the Interim Order,
the Interim Order shall control. The Debtors reserve the right to supplement the statements made herein.
Capitalized terms used in the summary chart below that are not otherwise defined in this Motion shall have the
meaning ascribed to such terms in the Interim Order.

| Summary of Material Terms and Significant Provisions Pursuant to Rule 4001 and Local Rule 4001-2(a)(i) | | Location |
|---|---|---|
| **Parties with an Interest in Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(i) | MUFG Union Bank, N.A., in its capacity as the Prepetition Agent on behalf of the Prepetition Secured Parties (each, as defined below). | ¶ D(iii) |
| **Purposes for Use of Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(ii); Local Rule 4001-2(a)(i) | To avoid immediate and irreparable harm to the Debtors and their estates, the Debtors seek authority to use Cash Collateral for general corporate and working capital purposes, to pay costs in connection with the administration of the chapter 11 cases and claims or amounts approved by the Court or as required under the Bankruptcy Code, to make Adequate Protection Payments and pay Prepetition Secured Parties' Fees and Expenses, and for other purposes as set forth in the Approved Budget. | ¶ 4(a) |
| **Term and Termination Events/ Events of Default** Bankruptcy Rule 4001(b)(1)(B)(iii); Local Rule 4001-2(a)(i)(M) | The Debtors' authorization, and the Prepetition Secured Parties' consent, to use Cash Collateral in accordance with the Cash Collateral Orders and the Approved Budget shall terminate upon the earliest to occur of: <br><br> (i)   185 calendar days after the Petition Date, unless such date is extended pursuant to written consent by the Required Lenders (as defined in the Credit Agreement); <br><br> (ii)   Entry of an order approving a postpetition financing that has not been consented to by the Required Lenders; <br><br> (iii)   Effective date of a confirmed chapter 11 plan; and <br><br> (iv)   Delivery of a Termination Notice by the Prepetition Agent following occurrence and continuation of any of the following events of default (each, an "<u>Event of Default</u>"), unless waived by the Required Lenders: <br><br>     (a)  termination of the RSA (defined below); <br><br>     (b)  Failure to meet or satisfy any of the reporting requirements if left uncured for two (2) business days after the Debtors receive notice of such failure; <br><br>     (c)  Failure to comply with the Approved Budget, subject to the Permitted Variances (each, as defined below), or the use of any Cash Collateral or the Carve-Out (as defined below) in a manner not permitted by the Cash Collateral Orders; <br><br>     (d)  Failure to comply with the Minimum Cash Balance (as defined below); <br><br>     (e)  Other than the Adequate Protection (as defined below), the payment of professional fees and related expenses of any third party creditor or shareholder (excluding any official committee of unsecured creditors), unless otherwise consented to by the Required Lenders and authorized by an order of the Court; <br><br>     (f)  Filing of a motion, application, or other pleading to (i) obtain postpetition financing that has not been previously consented to by the Required Lenders or | ¶¶ 6, 15 |

| Summary of Material Terms and Significant Provisions Pursuant to Rule 4001 and Local Rule 4001-2(a)(i) | Location |
|---|---|
| (ii) use Cash Collateral other than as permitted in the Cash Collateral Orders or consented to by the Required Lenders; <br><br> (g) except as expressly provided in the Cash Collateral Orders, entry of an order subjecting or subordinating the Senior Adequate Protection Liens or making the Senior Adequate Protection Liens *pari passu* with (i) any intercompany claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor or (ii) any other lien or security interest under sections 361 or 363 of the Bankruptcy Code; <br><br> (h) entry of an order subjecting the Superpriority Claim to, or making the Superpriority Claim *pari passu* with, any administrative expense claims heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726, and 1114 of the Bankruptcy Code or otherwise), except for the Carve-Out; <br><br> (i) Entry of an order or judgment granting relief from the automatic stay (without the Prepetition Agent's consent) that would allow a third party to recover or obtain possession of property of the Debtors' estates (other than cash deposits serving as collateral) with a value in excess of $500,000; <br><br> (j) Entry of an order or judgment staying, reversing, vacating, amending, rescinding, or otherwise modifying (without the Prepetition Agent's consent) the terms of the Cash Collateral Orders, or filing of a motion, application, or other pleading by the Debtors seeking such entry; <br><br> (k) The Debtors' continued use of Cash Collateral during the Remedies Notice Period in a manner not permitted by the Cash Collateral Orders; <br><br> (l) Making of any material payments in respect of prepetition obligations other than as permitted pursuant to the Approved Budget or otherwise approved by the Court; or <br><br> (m) Dismissal of any of the chapter 11 cases or conversion of any of the chapter 11 cases under chapter 7 of the Bankruptcy Code, or the appointment of a chapter 11 trustee or an examiner with expanded powers in any of the chapter 11 cases. |  |

| Summary of Material Terms and Significant Provisions Pursuant to Rule 4001 and Local Rule 4001-2(a)(i) | | Location |
|---|---|---|
| **Release**<br>Bankruptcy Rule 4001(b)(1)(B)(iii) | Subject to the relevant provisions of the Cash Collateral Orders, the Final Order shall provide that the Debtors on behalf of themselves and their estates (including any successor trustee or other estate representative in the chapter 11 cases) and any party acting by, or through, the Debtors or their estates, to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully, forever waive and release the Prepetition Agent and each of the other Prepetition Secured Parties, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest of any and all "claims" (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights that exist on the date hereof relating to any of the Collateral and any of the Loan Documents (as defined below) or the transactions contemplated under such documents, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, arising at law or in equity, including, without limitation, any so-called "lender liability," recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, and any and all claims and causes of action regarding the validity, priority, perfection or avoidability of the liens or the claims of the Prepetition Agent and the other Prepetition Secured Parties. | ¶ 18 |
| **Adequate Protection**<br>Bankruptcy Rule 4001(b)(1)(B)(iv) | As adequate protection against any postpetition net diminution in the value of the Prepetition Secured Parties' interests in the Collateral resulting from the effect of the automatic stay or the Debtors' use, sale, or disposition of the Collateral during the chapter 11 cases, the Prepetition Agent, for the benefit of the Prepetition Secured Parties, shall receive the following adequate protection:<br><br>(i)    First priority replacement liens, subject only to the Carve-Out and the Permitted Encumbrances, on all property of the Debtors as of the Petition Date or acquired thereafter, including first priority liens on any of the Debtors' assets that were unencumbered as of the Petition Date;<br><br>(ii)    Allowed superpriority administrative expenses claims in the chapter 11 cases pursuant to section 507(b) of the Bankruptcy Code, having priority over all administrative expenses of the kind specified in, or ordered pursuant to, sections 105(a), 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507, 546(c), 552(b), 726, and 1114 of the Bankruptcy Code, subject only to the Carve-Out;<br><br>(iii)    Monthly cash payments of interest at the applicable non-default rate under the Credit Agreement, including, for the avoidance of doubt, fees payable under the L/Cs (as defined below) (each such payment, an "Adequate Protection Interest Payment"); provided, that the Adequate Protection Interest Payment shall only be paid to the extent DevCo shall maintain a minimum cash balance of $17.5 million after | ¶¶ 9, 11 |

| Summary of Material Terms and Significant Provisions Pursuant to Rule 4001 and Local Rule 4001-2(a)(i) | | Location |
|---|---|---|
| | effectuating any such Adequate Protection Interest Payment; | |
| | (iv) Current cash payments of all prepetition and postpetition reasonable and documented fees and out-of-pocket expenses incurred by and payable to the Prepetition Agent under the Loan Documents (the "Agency Fees"); | |
| | (v) Reimbursement of the prepetition and postpetition reasonable and documented out-of-pocket professional fees, expenses, and disbursements incurred by the Prepetition Agent in connection with the Loan Documents, including, but not limited to, the fees, expenses, and disbursements of the advisors to the Prepetition Agent: Mayer Brown LLP; Potter Anderson & Corroon LLP; Goodwin Procter LLP; and PJT Partners LP (collectively, the "Adequate Protection Fees" and together with the Agency Fees, the "Secured Parties' Fees and Expenses"); and | |
| | (vi) Compliance with the Approved Budget (as defined below), subject to Permitted Variances (as defined below). | |
| | Any amendment or modification to the adequate protection package shall require the prior written consent of the Required Lenders. | |
| | Solely to the extent the IEP Lien (as defined below) is valid, secured, perfected, and unavoidable as of the Petition Date, as adequate protection against any postpetition diminution in value of IEP's interests in the IEP Prepetition Collateral (as defined below) resulting from: (a) the imposition of the automatic stay or (b) the Debtors' use, sale, or disposition of the IEP Prepetition Collateral during the Chapter 11 Cases, the Debtors, pursuant to sections 361 and 363(e) of the Bankruptcy Code, hereby grant to IEP, effective as of the Petition Date, postpetition security interests in and a replacement lien on the Postpetition Collateral (as defined in the Interim Cash Collateral Order) (the "IEP Adequate Protection Liens"). | |
| **The Amount of Cash Collateral the Debtor Seeks Permission to Use** Local Rule 4001-2(a)(i)(A) | The Debtors shall be allowed to use Cash Collateral in the amount set forth in the Approved Budget (as defined below), subject to the Permitted Variance (as defined below). | ¶ 3 |
| **Fees** Local Rule 4001-2(a)(i)(B) | None | N/A |
| **Provisions that Limit the Court's Discretion** Local Rule 4001-2(a)(i)(C) | None | N/A |

| Summary of Material Terms and Significant Provisions Pursuant to Rule 4001 and Local Rule 4001-2(a)(i) | | Location |
|---|---|---|
| **Funding of Non-Debtor Affiliates With Cash Collateral** Local Rule 4001-2(a)(i)(D) | None | N/A |
| **Budget, Reporting, and Variance Covenants** Local Rule 4001-2(a)(i)(E) | Attached as <u>Exhibit A</u> to the Interim Order is the Approved Budget (as defined below), including anticipated uses of the Cash Collateral for such designated period.<br><br>The use of Cash Collateral shall be subject to compliance with the Approved Budget as described in the Cash Collateral Orders, <u>provided</u> that, the payment of estate professionals' fees and the Secured Parties' Fees and Expenses shall not be subject to the Approved Budget.<br><br>The Debtors shall provide a revised budget (the "<u>Proposed Budget</u>") by 5:00 p.m. (ET) every other Wednesday, beginning with the Wednesday during the second full week following the Petition Date, to the Prepetition Agent, which Proposed Budget shall be reasonably acceptable to the Debtors and the Prepetition Agent.  If the Prepetition Agent does not object to the Proposed Budget by 11:59 p.m. (ET) on the immediately following Friday, such Proposed Budget shall be considered the new Approved Budget (the "<u>Current Approved Budget</u>").  If the Prepetition Agent does object to the Proposed Budget by 11:59 p.m. (ET) on the immediately following Friday, the Current Approved Budget—for variance testing purposes—shall continue in effect and remain unchanged until an updated budget has been agreed.<br><br>The Debtors shall deliver a budget variance report ("<u>Budget Variance Report</u>") to the Prepetition Agent by 5:00 p.m. (ET) each Wednesday, beginning with the Wednesday of the third full week following the Petition Date.  The Budget Variance Report shall show line item variances relative to the Current Approved Budget for the prior week and the prior cumulative two-week period, when applicable.  The Budget Variance Report shall measure disbursements relative to the Current Approved Budget for the prior cumulative two-week period (the "<u>Testing Period</u>") and cash balances.<br><br>Notwithstanding the Approved Budget, the following limited variances shall be permitted (each such variance, a "<u>Permitted Variance</u>" and collectively, the "<u>Permitted Variances</u>"), each measured at the end of each two-week period starting with the first two full weeks following the Petition Date:<br><br>(i)    The Debtors' actual total receipts for the Testing Period shall not be less than 85% of total receipts set forth in the last Approved Budget for the Testing Period.<br><br>(ii)    The Debtors' total disbursements (excluding estate professionals' fees and the Secured Parties' Fees and Expenses) for the Testing Period shall not exceed 115% of such budgeted disbursements set forth in the Current Approved Budget for the Testing Period. | ¶¶ 4, 7 |

| Summary of Material Terms and Significant Provisions Pursuant to Rule 4001 and Local Rule 4001-2(a)(i) | Location |
|---|---|
| | For the avoidance of doubt, the Budget Variance Report for the first Testing Period following the Petition Date shall be delivered on Wednesday of the third full week following the Petition Date.<br><br>The Debtors' total cash retained across various accounts shall not be less than $7.5 million (the "Minimum Cash Balance").  Compliance with the Minimum Cash Balance shall be measured on the 25th day of each calendar month; provided, however, that if the 25th day of a calendar month is not a business day, then such Permitted Variance shall be measured on the first business day following the 25th day of such calendar month.<br><br>The Debtors are further required to comply with the following reporting requirements:<br><br>(i)     As described above, the Debtors shall deliver to the Prepetition Agent (A) the Proposed Budget every two weeks and (B) the Budget Variance Report every week.<br><br>(ii)    Subject to applicable confidentiality obligations and restrictions imposed by the Federal Energy Regulatory Commission ("FERC"), the Debtors shall deliver to the Prepetition Agent on a going forward basis, and solely to the extent permissible, copies of all notices and documents exchanged between the Debtors and FERC and updates on material developments consistent with Section 5.10(f) of the Credit Agreement.<br><br>(iii)   The Debtors shall hold a weekly conference call with the Prepetition Secured Parties who elect to participate to discuss the Proposed Budget, Budget Variance Report, any FERC-related matters (subject to applicable confidentiality obligations), and the sale process. | |
| **Carve-Out**<br>Local Rule 4001-2(a)(i)(F) | Any payment or adequate protection shall be subject and subordinate to the following (the "Carve-Out"):<br><br>(i)     All fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee (the "U.S. Trustee");<br><br>(ii)    All reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code;<br><br>(iii)   To the extent allowed at any time, all accrued or earned but unpaid reasonable fees and expenses, including any earned but unpaid transaction fee(s), of professionals retained by the Debtors or by any official committee appointed in the chapter 11 cases whose retention is approved by the Court (the "Professional Fees"), at any time before or on the first business day after delivery by the Prepetition Agent of a Carve-Out Trigger Notice; and<br><br>(iv)    Allowed Professional Fees incurred after the first business day following delivery by the Prepetition Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, in an aggregate amount not to exceed $1,250,000. | ¶ 17(a) |

| Summary of Material Terms and Significant Provisions Pursuant to Rule 4001 and Local Rule 4001-2(a)(i) | | Location |
|---|---|---|
| **Liens on Unencumbered Assets** Local Rule 4001-2(a)(i)(G) | As adequate protection for the Prepetition Secured Parties, the Debtors shall grant first priority liens and replacement liens to the Prepetition Secured Parties, subject only to the Carve-Out and the Permitted Encumbrances, on all property of the Debtors as of the Petition Date or acquired thereafter, including first priority liens on any of the Debtors' assets that were unencumbered as of the Petition Date. The IEP Adequate Protection Liens (defined below) will also apply to the Debtors' assets that were unencumbered as of the Petition Date as set forth in the Cash Collateral Orders. | ¶ 9(a) |
| **Milestones** Local Rule 4001-2(a)(i)(H) | The Prepetition Secured Parties have conditioned the Debtors' use of Cash Collateral on compliance with the milestones (the "Milestones") set forth in that certain Restructuring Support Agreement (the "RSA"), as may be extended consistent with the terms of the RSA.[4] | ¶ 14 |
| **Prepayment Penalty** Local Rule 4001-2(a)(i)(I) | N/A | N/A |
| **Joint Liability** Local Rule 4001-2(a)(i)(J) | Certain of the Debtors are jointly and severally liable for the obligations in connection with the Credit Facility pursuant to the Loan Documents. | ¶¶ 9(b), (g) |
| **Payment of Secured Parties' Fees Without Review** Local Rule 4001-2(a)(i)(K) | Payment of the Secured Parties' Fees and Expenses are subject to review by the U.S. Trustee and counsel to any official committee of unsecured creditors appointed in the chapter 11 cases. | ¶ 9(e) |
| **Use of Estate Funds for Investigations** Local Rule 4001-2(a)(i)(L) | Up to $100,000 of Cash Collateral may be used to pay the allowed fees and expenses incurred solely by an official committee of unsecured creditors, if appointed by the U.S. Trustee, in these chapter 11 cases in investigating (but not commencing or prosecuting) the validity, enforceability, perfection, priority, or extent of the prepetition liens under the Loan Documents. | ¶ 4(g) |
| **Cross-Collateralization and Administrative Expense Status** Local Rule 4001-2(a)(i)(N) | The Interim Order does not provide for cross-collateralization, other than additional and replacement liens as adequate protection. The Interim Order provides for allowed superpriority administrative expense claims to the extent of any diminution in value of the interests of the Prepetition Secured Parties in the Collateral and any diminution in value of IEP's interests in the IEP Prepetition Collateral. | ¶ 9(b) |
| **Roll Up** Local Rule 4001-2(a)(i)(O) | N/A | N/A |
| **Non-Consensual Priming Liens** Local Rule 4001-2(a)(i)(P) | N/A | N/A |

---

[4]    A copy of the RSA is attached as Exhibit B to the First Day Declaration.

| Summary of Material Terms and Significant Provisions Pursuant to Rule 4001 and Local Rule 4001-2(a)(i) | | Location |
|---|---|---|
| **Binding Effect of the Debtors' Stipulations on Third Parties** Local Rule 4001-2(a)(i)(Q) | The Interim Order contains customary stipulations by the Debtors (the "Debtors' Stipulations") regarding the amount, validity, perfection, and priority of the claims arising under the Loan Documents and liens in the Collateral granted as security therefor, including, without limitation, the following stipulations: <br><br> (i)   The Prepetition Secured Parties properly perfected all security interests in and liens and mortgages on the Collateral (as defined in the Credit Agreement); <br><br> (ii)  Each Loan Document is valid and binding; <br><br> (iii) The Obligations (as defined in the Credit Agreement) are enforceable against the applicable Debtors; the applicable Debtors have no objection, offset, defense or counterclaim to the Obligations, and any amount previously paid on account thereof are not subject to avoidance, reduction, disallowance, impairment or subordination; and <br><br> (iv) The Obligations (as defined in the Credit Agreement) are secured by liens on all or substantially all assets of the applicable Debtors, and the liens are valid, binding, perfected, first-priority liens (subject to permitted liens) granted to the Prepetition Secured Parties, which are not subject to avoidance, reduction, disallowance, impairment or subordination. <br><br> Subject to the below-mentioned challenge period, the Debtors' Stipulations shall be binding on the Debtors, their estates, any successors thereto, and all third parties. | ¶¶ D, 5(a)-(b) |
| **Challenge Period** Bankr. R. 4001(C)(1)(B) Local Rule 4001-2(a)(i)(Q) | Notwithstanding that the Cash Collateral Orders do not vest or confer on any person standing or authority to pursue any claim or cause of action belonging to the Debtors and/or their estates, any party in interest (other than the Debtors) may seek to invalidate, subordinate or otherwise challenge the Debtors' Stipulations by no later than seventy-five (75) calendar days from entry of the Interim Order. | ¶ 5(a) |
| **Provisions Approving All Terms of the Loan Agreement** Local Rule 4001-2(a)(i)(R) | N/A | N/A |
| **Waiver/Modification of Automatic Stay** Local Rule 4001-2(a)(i)(S) | The automatic stay shall be modified to effectuate the terms of the Cash Collateral Orders, including to: <br><br> (i)   Permit the Debtors to grant adequate protection as set forth in the Cash Collateral Orders; <br><br> (ii)  Permit the Debtors to perform acts as reasonably requested by the Prepetition Agent to assure the perfection and priority of the liens granted the Cash Collateral Orders; <br><br> (iii) Authorize the Debtors to make, and the Prepetition Agent to retain and apply, payments made in accordance with the Cash Collateral Orders; | ¶¶ 10, 16 |

| Summary of Material Terms and Significant Provisions Pursuant to Rule 4001 and Local Rule 4001-2(a)(i) | | Location |
|---|---|---|
| | (iv) Following a draw under the L/Cs, authorize the respective issuing banks and lenders thereunder to apply the cash collateral securing such L/Cs in satisfaction of the Debtors' reimbursement obligations, without further order of the Court; and | |
| | (v) Permit the Prepetition Agent to, upon seven (7) calendar days after the delivery of written notice of an Event of Default, among other things, terminate and/or revoke the Debtors' right to use Cash Collateral or to exercise all rights and remedies provided to it by the Cash Collateral Orders. | |
| **Provisions Limiting Arguments**<br>Local Rule 4001-2(a)(i)(T) | None. | N/A |
| **Liens on Avoidance Actions**<br>Local Rule 4001-2(a)(i)(U) | As adequate protection, the Debtors shall grant first priority liens on all property of the Debtors as of the Petition Date or acquired thereafter including, upon entry of the Final Order, the proceeds of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, and 550 of the Bankruptcy Code or any other similar state or federal law (collectively, "Avoidance Actions"). | ¶ 9(a) |
| **Section 506(c) Waiver**<br>Local Rule 4001-2(a)(i)(V) | Upon entry of the Final Order, the Debtors and their estates shall be deemed to have irrevocably waived, and shall be prohibited from asserting, any surcharge claim, under section 506(c) or otherwise, for any costs incurred, including those in connection with the preservation, protection, enhancement of, or realization by the Prepetition Secured Parties upon, the Collateral. | ¶ 24 |
| **Section 552(b) Waiver**<br>Local Rule 4001-2(a)(i)(W) | Upon entry of the Final Order, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply to the Prepetition Secured Parties. | ¶ 23 |
| **Marshalling Waiver**<br>Local Rule 4001-2(a)(i)(X) | Upon entry of the Final Order, the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the Collateral, any collateral granted to the Prepetition Secured Parties pursuant to the Cash Collateral Orders, or any proceeds thereof. | ¶ 25 |

## THE DEBTORS' PREPETITION INDEBTEDNESS

9.     Below is a summary of the Debtors' prepetition indebtedness impacted by the relief requested in this Motion.

10.     As of the Petition Date, the Debtors have outstanding funded debt obligations in the aggregate principal amount of approximately $290 million under a single credit facility

(the "Credit Facility") documented pursuant to that certain Credit Agreement (as amended, supplemented, restated, or otherwise modified from time to time, the "Credit Agreement" and, collectively, with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, or otherwise modified prior to the Petition Date, the "Loan Documents"), dated as of January 9, 2015, by and among DevCo, as Borrower, MUFG Union Bank, N.A., as Administrative Agent, Collateral Agent, and Depositary Bank ("MUFG" or the "Prepetition Agent"), the lenders party thereto (collectively, the "Prepetition Lenders," and together with the Prepetition Agent, the "Prepetition Secured Parties"), and the other parties thereto.   The stated maturity date under the Credit Agreement is December 31, 2022.

11.    The Credit Facility originally provided for a $600 million term loan facility (the "Term Loan"), a $120 million letter of credit facility, and a $10 million working capital facility.  In December 2019, the Credit Agreement was amended to, among other things, terminate the working capital facility commitment, terminate the letter of credit commitments in excess of $49.92 million, convert the loans thereunder from construction loans to term loans, and waive certain existing events of default.[5]  As of the Petition Date, the total outstanding principal amount of the Term Loan (inclusive of capitalized interest) is approximately $290 million.  In addition, as of the Petition Date, the aggregate amount of the Debtors' two outstanding letters of credit total $46.35 million (collectively, with the Term Loan and any accrued and unpaid fees, expenses, interest, swap termination payments, and other obligations under the Credit Agreement, the "Secured Obligations").[6]

---

[5]    In project finance parlance, this transaction is referred to as a "term conversion."  Generally, term conversion of a project finance facility occurs following achievement of substantial completion of a project.

[6]    As of the Petition Date, the Debtors maintain two letters of credit, the CSA LC issued by MUFG in the amount of $4.75 million for the benefit of General Electric International Inc. and the Gas Lateral Letter of Credit (as

12.    Pursuant to that certain Security Agreement, dated as of January 9, 2015, by and among DevCo and the Prepetition Agent, DevCo pledged substantially all of DevCo's assets as collateral under the Credit Facility, and granted the Prepetition Agent a mortgage covering the real property where the Facility is located, including all fixtures and improvements thereon.    In addition, pursuant to that certain Pledge Agreement, dated as of January 9, 2015, by and among DevCo, Footprint Power SH DevCo GP LLC ("DevCo GP"), Footprint Power Salem Harbor FinCo, LP ("FinCo"), and the Prepetition Agent, as additional collateral supporting the Secured Obligations, (a) DevCo GP pledged its 100% general partnership interest in DevCo as collateral, (b) FinCo pledged its 100% limited partnership interest in DevCo as collateral, and (c) FinCo pledged its 100% membership interest in DevCo GP as collateral.

13.    DevCo is also party to that certain Depositary Agreement (as amended, supplemented, restated, or otherwise modified from time to time, the "Depositary Agreement"), dated as of January 9, 2015, by and among DevCo and the Prepetition Agent, pursuant to which DevCo is required to maintain substantially all of its bank accounts with MUFG.  The Depositary Agreement governs contributions to and withdrawals from such bank accounts, including requiring substantially all of the Debtors' cash receipts to be deposited into specified accounts held at MUFG and subject to the terms of the Depositary Agreement.[7]

14.    The Prepetition Secured Parties' and other parties' rights and remedies with respect to the collateral pledged under the Credit Facility (collectively, the "Collateral") are set forth in

---

defined in the Credit Agreement) issued by BNP Paribas in the amount of $41.6 million to support the Debtors' obligations to Algonquin Gas Transmission, LLC (together, the "L/Cs").

[7]    The requirements of the Depositary Agreement are more fully described in the *Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing (I) Continued Use of Cash Management System, (II) Maintenance of Bank Accounts and Business Forms, (III) Performance of Intercompany Transactions, and (IV) Certain Prepetition Obligations to be Honored; (B) Granting Administrative Expense Priority Status to Postpetition Intercompany Claims; (C) Waiving Strict Compliance with 11 U.S.C. § 345(b) and Certain Operating Guidelines, as Applicable; and (D) Granting Related Relief*, filed contemporaneously herewith.

that certain Collateral Agency and Intercreditor Agreement, dated as of January 9, 2015, by and among DevCo, the Prepetition Agent, and the swap representatives party thereto.

## THE IEP STANDSTILL AGREEMENT

15.     As set forth in the First Day Declaration, pursuant to that certain Standstill and Coordination Agreement, dated as of January 18, 2022, by and between DevCo and IEP (the "Standstill Agreement"), IEP agreed, to the extent it obtains a lien (or purports to obtain a lien) on any of the Debtors' property, including Cash Collateral, not to object to, oppose, or seek to modify the Debtors' use of Cash Collateral, in its purported capacity as a secured creditor, if such use is otherwise consented to by the Required Lenders or object, oppose, or seek to modify the adequate protection provided in connection therewith to the Prepetition Secured Parties or IEP as set forth in the Cash Collateral Orders.  IEP further agreed that to the extent it is entitled to adequate protection under sections 361, 362, and 363 of the Bankruptcy Code, such adequate protection shall be limited at all times to the provision by the Debtors of adequate protection liens and adequate protection administrative expense claims, in each case consistent with the priority attributable to the IEP Lien as compared to the liens and security interests of the Prepetition Secured Parties.  On March 23, 2022, prior to the commencement of these chapter 11 cases, IEP recorded a judicial lien in the land records with the Southern Essex District Registry of Deeds in Massachusetts with respect to its judgment claim against Debtor DevCo (the "IEP Lien" and the property subject to such lien, the "IEP Prepetition Collateral").  By this Motion, and in accordance with the terms of the Standstill Agreement, the Debtors are seeking to provide IEP with the adequate protection set forth in the Cash Collateral Orders solely to the extent the IEP Lien is valid, secured, perfected, and unavoidable as of the Petition Date.  Pursuant to the Standstill Agreement, all parties' rights are reserved to contest the validity or priority of such adequate protection or the validity or priority of any liens and security interests maintained by IEP.

29210756.1

## THE DEBTORS' LIQUIDITY NEEDS

16.     The Debtors require immediate access to liquidity to ensure that they are able to continue operating during these chapter 11 cases, preserve the value of their estates for the benefit of all parties in interest, and pursue a value-maximizing restructuring transaction.  Without prompt access to Cash Collateral, the Debtors would be unable to (a) satisfy trade payables incurred in the ordinary course of business, including certain payments that are essential for the continued management, operation, and preservation of the Debtors' business; (b) preserve and maximize the value of their estates; and (c) fund the administration of these chapter 11 cases, which would cause immediate and irreparable harm to the value of the Debtors' estates to the detriment of all stakeholders.  The ability to satisfy these expenses as and when due is essential to the Debtors' ability to continue operating the Facility during the pendency of these chapter 11 cases.

17.     As of the Petition Date, the Debtors estimate that they have approximately $24.3 million of available cash on hand, all of which is subject to the security interests of the Prepetition Secured Parties and, thus, constitutes Cash Collateral.  The Debtors have determined that existing cash, together with cash generated from operations, will be sufficient to operate their business, continue paying their ordinary course debts as they come due, and enable the Debtors to pursue a value-maximizing restructuring transaction for the benefit of all stakeholders.  The Debtors believe that the relief requested in this Motion will save the Debtors significant interest expense and potential fees and costs that would be incurred if the Debtors had to secure traditional debtor-in-possession financing.

18.     At this time, the Debtors seek authority to use Cash Collateral on an interim basis pending entry of the Final Order (such interim period, the "Interim Period").  Following extensive arms'-length and good faith negotiations between the Debtors and the Prepetition Secured Parties, the Prepetition Secured Parties have consented to the Debtors' use of Cash Collateral to fund

29210756.1

operations and the costs of administering their estates during the Interim Period in accordance with the Approved Budget (as defined below), subject to permitted variances, on the terms set forth in the Cash Collateral Orders. Following the Interim Period, the Debtors will seek authority to continue the consensual use of Cash Collateral in accordance with the Final Order, a proposed form of which will submitted to the Court before the Final Hearing.

19.    The Debtors, in consultation with their financial advisor, AP Services, LLC, prepared a 13-week cash flow (as may be updated from time to time in accordance with the terms of the Interim Order, the "Approved Budget")[8] reflecting anticipated cash receipts, operating disbursements, and non-operating expenditures, among other things. The Debtors believe that the Approved Budget establishes that the Debtors will have adequate liquidity during the period reflected therein. The Approved Budget contains line items for cash flows anticipated to be received and disbursed during the time period for which the Approved Budget has been prepared. The Debtors believe that the Approved Budget includes all reasonable, necessary and foreseeable expenses to be incurred in connection with the operation of their business for the period set forth therein.

---

[8]    A copy of the Approved Budget is attached to the Interim Order as Exhibit A.

## BASIS FOR RELIEF

### A.    The Debtors' Use of Cash Collateral Is Necessary

20.    Section 363 of the Bankruptcy Code governs the Debtors' use of property of their estates, including Cash Collateral.[9]  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).

21.    Here, the Prepetition Secured Parties have consented to the Debtors' use of Cash Collateral, subject to the terms of the Cash Collateral Orders and the Approved Budget. Furthermore, the law is well established that a bankruptcy court should, whenever possible, resolve issues in favor of allowing a debtor to continue its business as a going concern.  Courts have recognized that "[a] debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild.  Without the availability of cash to meet daily operating expenses . . . the congressional policy favoring rehabilitation over economic failure would be frustrated."  *Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.)*, 727 F.2d 1017, 1019 (11th Cir. 1984); *see also NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 528 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources.").

---

9    The Bankruptcy Code defines "cash collateral" as follows:

Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

22.     The Debtors require immediate access to Cash Collateral to ensure that they are able to continue operating during these chapter 11 cases, preserve the value of their estates for the benefit of all parties in interest, and pursue a value-maximizing restructuring transaction. All, or substantially all, of the Debtors' available cash constitutes Cash Collateral of the Prepetition Secured Parties, and the Prepetition Secured Parties have security interests in and liens on substantially all of DevCo's assets. During these chapter 11 cases, the Debtors will need the cash generated from the operation of the Facility to satisfy certain payments that are essential for the continued management, operation, and preservations of the Debtors' businesses. Without immediate access to Cash Collateral, the Debtors would be unable to continue to operate the Facility, from which the Debtors generate substantially all of their revenue, on an uninterrupted basis, which would result in immediate and irreparable harm to the Debtors' estates.

23.     The terms and conditions of the Debtors' use of Cash Collateral are set forth in the Interim Order and the Approved Budget, which reflect the negotiated terms that the Prepetition Secured Parties have consented to with respect to the Debtors' use of Cash Collateral. Taken as a whole, the Debtors submit that the consensual terms of the Debtors' use of Cash Collateral are fair and reasonable under the circumstances. Accordingly, the Debtors believe that the requirements of section 362(c)(2) of the Bankruptcy Code have been satisfied, and relief is warranted under the circumstances.

**B.     The Adequate Protection Provisions Are Appropriate**

24.     Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral. *See* 11 U.S.C. § 363(e) ("[O]n request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."). Further, section 362(d)(1) of the Bankruptcy Code

provides for adequate protection of interests in property due to the imposition of the automatic stay. *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996). While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re Columbia Gas Sys., Inc.*, 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992). The essential purpose of adequate protection is to protect against the diminution of a secured creditor's collateral during the period when such collateral is being used by the debtor in possession. *See In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value); *see also In re Monroe Park*, 17 B.R. 934, 937 (D. Del. 1982) (adequate protection requires a debtor to propose some form of relief that will preserve the secured creditor's interest in collateral during the case).

25.     The Debtors propose granting the following adequate protection to the Prepetition Secured Parties (collectively, "Adequate Protection"):

    a.    Adequate Protection Liens. To the extent of any diminution in value of the Prepetition Secured Parties' interests in the Collateral resulting from the effect of the automatic stay or the Debtors' use, sale or disposition of the Collateral during these chapter 11 cases, the Debtors will provide first priority liens and replacement liens on all now or hereafter acquired property of the Debtors, including on any of the Debtors' currently unencumbered assets, and upon entry of the Final Order, the proceeds of Avoidance Actions, to the Prepetition Secured Parties (the "Senior Adequate Protection Liens"); provided that, the Senior Adequate Protection Liens are junior to (i) the Carve-Out and (ii) Permitted Encumbrances.

    b.    Adequate Protection Claims. To the extent of any diminution in value of the Prepetition Secured Parties' interests in the Collateral resulting from the effect of the automatic stay or the Debtors' use, sale or disposition of the Collateral during these chapter 11 cases, the Prepetition Secured Parties

shall be granted allowed superpriority administrative expense claims in the chapter 11 cases pursuant to section 507(b) of the Bankruptcy Code, having priority over all administrative expenses of the kind specified in, or ordered pursuant to, sections 105(a), 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507, 546(c), 552(b), 726, and 1114 of the Bankruptcy Code, subject only to the Carve-Out.

c.    <u>Adequate Protection Payments</u>.    The Debtors will make Adequate Protection Interest Payments each month; <u>provided</u> that the Adequate Protection Interest Payments will only be paid to the extent DevCo maintains a cash balance of $17.5 million or greater after effectuating any such Adequate Protection Interest Payment.

d.    <u>Fees and Expenses</u>.  The Debtors will pay (i) the Agency Fees and (ii) the Adequate Protection Fees.

e.    <u>Approved Budget</u>.  The Debtors will comply with the Approved Budget, subject to Permitted Variances.  Specifically, by 5:00 p.m. (prevailing Eastern Time) every other Wednesday, beginning with the Wednesday during the second full week following the Petition Date, the Debtors will provide the Prepetition Agent with an updated Proposed Budget.  If the Prepetition Agent does not object to the Proposed Budget by 11:59 p.m. (prevailing Eastern Time) on the immediately following Friday, such Proposed Budget shall be considered the new Approved Budget.   In addition, by 5:00 p.m. (prevailing Eastern Time) each Wednesday, beginning with the Wednesday of the third full week following the Petition Date, the Debtors shall also provide to the Prepetition Agent a budget variance report showing line item variances relative to the applicable Approved Budget.

26.    The Debtors respectfully submit that the proposed Adequate Protection is sufficient to protect the Prepetition Secured Parties from any diminution in value to the Collateral during pendency of these chapter 11 cases.  Additionally, as noted above, the Prepetition Secured Parties have consented to the Debtors' use of Cash Collateral in exchange for, among other things, the Adequate Protection, subject to their right to request further or alternative forms of adequate protection at any time (and the rights of the Debtors or any other party to contest such request are fully preserved).

27.    In light of the foregoing, the Debtors submit that the proposed Adequate Protection to be provided for the benefit of the Prepetition Secured Parties is appropriate and consistent with the forms of adequate protection routinely approved in this District and others under similar

circumstances. The Debtors' proposed Adequate Protection is not only necessary to permit the Debtors to continue operating their business in the ordinary course, but is also fair and appropriate under the circumstances of these chapter 11 cases to ensure the Debtors are able to continue using the Cash Collateral in the near term for the benefit of all parties in interest and the Debtors' estates.[10]

28.     In addition, solely to the extent the IEP Lien is valid, secured, perfected, and unavoidable as of the Petition Date, the Debtors propose granting the following adequate protection to IEP:  (a) postpetition security interest in and a replacement lien on the Postpetition Collateral (the "IEP Adequate Protection Liens") and (b) an allowed superpriority administrative expense claim, which claim shall be subject to and junior to the Superpriority Claim and the Carve-Out, solely to the extent the IEP Adequate Protection Liens are insufficient to satisfy any valid diminution in value claim of IEP.  In accordance with the Standstill Agreement, the IEP Adequate Protection Liens shall be subject to and junior to the Carve-Out, the Prepetition First Priority Liens, Permitted Encumbrances, and the Senior Adequate Protection Liens.  In light of the foregoing, the Debtors respectfully submit that the proposed adequate protection to be provided to IEP is sufficient under the circumstances.

---

[10]   Courts in this district have approved similar adequate protection packages in prior cases.  *See, e.g.*, *In re Alex and Ani, LLC, et al.*, No. 21-10918 (Bankr. D. Del. June 9, 2021) (CTG) [D.I. 214]; *In re Riverbed Technology, Inc., et al.*, No. 21-11503 (Bankr. D. Del. Nov. 17, 2021) (CTG) [D.I. 89] (Interim Order); *In re Things Remembered, Inc., et al.*, No. 19-10234 (Bankr. D. Del. Mar. 29, 2019) (KG) [D.I. 353]; *In re Chisholm Oil and Gas Operating, LLC, et al.*, No. 20-11593 (Bankr. D. Del. June 18, 2020) (BLS) [D.I. 172]; *In re Town Sports International, LLC, et al.*, No. 20-12168 (Bankr. D. Del. Sept. 14, 2020) (CSS) [D.I. 64] (Interim Order); *In re White Eagle Asset Portfolio, LP, et al.*, No. 18-12808 (Bankr. D. Del. Jan. 15, 2019) (KG) [D.I. 81]; *In re Triangle Petroleum Corporation, et al.*, No. 19-11025 (Bankr. D. Del. May 8, 2019) (MFW) [D.I. 61]; *In re Ascent Resources Marcellus Holdings, LLC, et al.*, No. 18-10265 (Bankr. D. Del. Mar. 20, 2018) (LSS) [D.I. 107]; *In re Homer City Generation, L.P., et al.*, No. 17-10086 (MFW) (Bankr. D. Del. Jan. 31, 2017) [D.I. 125]; *In re Central Grocers, Inc., et al.*, No. 17-10993 (LSS) (Bankr. D. Del. June 8, 2017) [D.I. 368]; *In re ExGen Texas Power, LLC, et al.*, No. 17-12377 (BLS*)* (Bankr. D. Del. Nov. 8, 2017) [D.I. 46] (Interim Order); *In re Paragon Offshore plc, et al.*, No. 16-10386 (CSS) (Bankr. D. Del. Mar. 9, 2016) [D.I. 140]; *In re Samson Resources Corporation, et al.*, No. 15-11934 (CSS) (Bankr. D. Del. Sept. 25, 2015) [D.I. 111] (Interim Order).

29210756.1

C.      **Significant Provisions Are Appropriate**

29.     Local Rule 4001-2(a)(i) requires a debtor to justify the inclusion of certain provisions enumerated in Local Rule 4001-2(a)(i)(N) through (X) (collectively, the "Significant Provisions") in a proposed cash collateral order.   The Debtors believe that each Significant Provision included in the Cash Collateral Orders is justified and necessary in the context and circumstances of these chapter 11 cases for the reasons outlined below.

    **i.**      **Granting Liens on Unencumbered Collateral Is Appropriate and Warranted in These Cases**

30.     Granting new liens on unencumbered assets, such as the proceeds from Avoidance Actions, is necessary in these cases as adequate protection for the Prepetition Secured Parties, to the extent that there is a diminution in the value of the prepetition Collateral.  Making such grants is explicitly authorized under the Bankruptcy Code, represents an appropriate exercise of the Debtors' business judgment, as further demonstrated by the First Day Declaration, and is warranted under the circumstances.  Here, the bargain between the Debtors and the Prepetition Secured Parties required the Debtors to provide the Prepetition Secured Parties with the Adequate Protection set forth in the Cash Collateral Orders.

31.     In determining a debtor's inherent flexibility to provide various forms of adequate protection in the context of such an arrangement, a court must consider whether the proposed adequate protection is within the debtor's sound business judgment.  *In re Allegheny Int'l, Inc.*, 118 B.R. 282, 307 (Bankr. W.D. Pa. 1990) (debtor's entry into adequate protection agreement with lenders was an exercise of its business judgment).  What constitutes sufficient adequate protection is made on a case-by-case basis.  *Swedeland Dev. Grp., Inc.*, 16 F.3d at 564; *In re Columbia Gas Sys., Inc.*, 1992 WL 79323, at *2.

32.     Moreover, courts should take equitable considerations into account in determining what constitutes adequate protection. *See In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) ("Adequate protection will take many forms, only some of which are set forth in section 361 of the Bankruptcy Code . . . and must be determined based upon equitable considerations arising from the particular facts of each proceeding."); *Stein v. U.S. Farmers Home Admin.*, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982) ("The equities in each case must be weighed in striking a balance.").

33.     Here, the Prepetition Secured Parties already maintain prepetition liens on substantially all of the Debtors' assets.  Thus, as part of the negotiated consensual use of Cash Collateral, the Prepetition Secured Parties requested the grant of liens on the Debtors' assets that were not previously encumbered, including all of the proceeds of Avoidance Actions and certain other assets that were unencumbered as of the Petition Date.[11]  Given the limited unencumbered assets available to the Debtors and the absolute need to maintain uninterrupted use of Cash Collateral, the Debtors believe that providing the Prepetition Secured Parties with Senior Adequate Protection Liens (and IEP with IEP Adequate Protection Liens) on very limited unencumbered assets that the Debtors maintain (including the proceeds of Avoidance Actions) is a sound exercise of the Debtors' business judgment.  Additionally, such Senior Adequate Protection Liens are only effective to the extent it is established by the Prepetition Secured Parties at a later date that there was a diminution in value of the subject Collateral—at which time the Debtors and any other parties in interest will have the opportunity to dispute such issue.  Similarly, such IEP Adequate Protection Liens are only effective to the extent it is established by IEP at a later date that there

---

[11]    As of the Petition Date, such unencumbered assets included (a) the Debtors' equity interests in Debtors Footprint Power Salem Harbor FinCo, LP, Footprint Power Salem Harbor FinCo GP, LLC, and Highstar Footprint Holdings L.P. and (b) certain *de minimis* value assets held by DevCo such as pickup trucks and forklifts utilized in the day-to-day operations of the Facility.

was a diminution in value of the IEP Prepetition Collateral, again at which time the Debtors and

any other parties in interest will have the opportunity to dispute such issue.

    **ii.**      **The Findings of Validity, Perfection, or Amount of Prepetition Liens and Challenge Period Are Appropriate**

    34.     Local Rule 4001-2(a)(i)(Q) requires explicit disclosure of provisions that bind the

estate or other parties in interest with respect to the validity, perfection, or amount of the secured

creditor's prepetition lien or the waiver of claims against the secured creditor without first giving

parties in interest at least seventy-five (75) days from the entry of the order to investigate such

matters.  Here, the Interim Order complies with this requirement by providing any party in interest

with the opportunity to file an adversary proceeding challenging the validity, extent, perfection, or

priority of the Secured Obligations or the liens on the Collateral securing the Secured Obligations

by no later than seventy-five (75) calendar days from entry of the Interim Order.  The Debtors

believe that this proposed challenge period is appropriate under the circumstances, consistent with

the Local Rules, adequate to protect the interests of any official committee or other party in interest

in these chapter 11 cases, and provides such parties in interest with sufficient time for a thorough

investigation.

**D.**     **The Scope of the Carve-Out Is Appropriate**

    35.     The Cash Collateral Orders provide that the Adequate Protection obligations and

the Debtors' prepetition obligations are subordinate to the Carve-Out.  The Carve-Out includes,

among other things, subject to Court approval, (a) all fees required to be paid to the Clerk of the

Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus

interest at the statutory rate, (b) all reasonable fees and expenses up to $50,000 incurred by a trustee

under section 726(b) of the Bankruptcy Code, (c) to the extent allowed at any time, all accrued or

earned but unpaid Professional Fees at any time before or on the first business day after delivery

by the Prepetition Agent of a Carve-Out Trigger Notice, and (d) allowed Professional Fees incurred after the first business day following delivery by the Prepetition Agent of the Carve-Out Trigger Notice in an aggregate amount not to exceed $1,250,000.

36.     Carve outs for professional fees under the terms of an agreement to use cash collateral, such as the Carve-Out proposed under the Cash Collateral Orders, have been found to be reasonable and necessary to ensure that a debtor's estate and any statutory committee can retain assistance from their professionals during the chapter 11 cases, including following an event of default.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 39 (Bankr. S.D.N.Y. 1990); *see also In Residential Capital, LLC*, 501 B.R. 549, 621 (Bankr. S.D.N.Y. 2013) ("A carve out is a provision of a cash collateral order that allows for some expenditure of administrative and/or professional fees to be paid before a secured creditor gets paid on its collateral.") (*citing In re Blackwood Assocs., L.P.*, 153 F.3d 61, 68 (2d Cir. 1998)).  Without the Carve-Out, the Debtors' estates may be deprived of possible rights and powers because the services for which professionals may be paid in these chapter 11 cases may be restricted.  *See In re Ames Dep't Stores*, 115 B.R. at 38 (observing that courts insist on carve outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced").  Additionally, the Carve-Out protects against administrative insolvency during the course of the chapter 11 cases by ensuring assets remain for payment of U.S. Trustee fees and professional fees notwithstanding the grant of superpriority administrative claims and liens as part of the Adequate Protection described above.

**E.     The Milestones Are Appropriate**

37.     The Cash Collateral Orders incorporate certain Milestones set forth in the RSA, which the Debtors must meet throughout the chapter 11 cases.  These Milestones were negotiated in good faith by the Debtors and the Prepetition Secured Parties and were a critical component of

the agreement reached by the parties to enable the Debtors to obtain the consensual use of Cash Collateral. The terms of the Debtors' use of Cash Collateral agreed to with the Prepetition Secured Parties will, among other things, avoid a costly adequate protection fight at the outset of these chapter 11 cases, allow the Debtors to focus on the operation of their business and implementation of a value-maximizing transaction for the benefit of all stakeholders, and provide a defined path to emergence from chapter 11. The continued and viable operation of the Debtors' business would not be possible absent access to Cash Collateral. Furthermore, the Debtors, in consultation with their advisors, believe that the Milestones are fair and reasonable under the circumstances and will provide the Debtors with sufficient time to effectively pursue a value-maximizing restructuring transaction.

F.    **The Automatic Stay Should Be Modified on a Limited Basis**

38.    The relief requested herein contemplates a modification of the automatic stay to permit the Debtors to, among other things, grant the security interests and liens described above to the Prepetition Secured Parties, perform such acts as may be requested to assure the perfection and priority of such security interests and liens, incur all liabilities and obligations to the Prepetition Secured Parties under the Cash Collateral Orders, and make payments in accordance with the terms of the Cash Collateral Orders and the Approved Budget. The Cash Collateral Orders also modify the automatic stay to permit the Prepetition Secured Parties to apply the Cash Collateral securing an L/C following a draw under such L/C in satisfaction of the Debtors' reimbursement obligations without further order of the Court.

G.    **Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm**

39.    Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than

fourteen (14) days after the service of such motion.  However, the Court is authorized to conduct a preliminary expedited hearing on this Motion and authorize the Debtors' proposed use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates. *See* Fed. R. Bankr. P. 4001(b)(2).

40.     As demonstrated by the First Day Declaration, the Debtors have an immediate postpetition need to use Cash Collateral.  The Debtors cannot maintain the value of their estates during the pendency of these chapter 11 cases without access to cash.  The Debtors will use cash to, among other things, continue to operate the Facility and their business in the ordinary course, procure services from vendors with respect to the operation of the Facility, satisfy other working capital needs during these chapter 11 cases, and negotiate and implement a value-maximizing restructuring transaction.  The Debtors believe that substantially all of their available cash constitutes the Prepetition Secured Parties' Cash Collateral.  The Debtors will therefore be unable to proceed with a proposed restructuring, operate their businesses in the near term, or otherwise fund these chapter 11 cases without access to Cash Collateral, and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest in the event the relief requested herein is denied.

41.     The Debtors, therefore, seek immediate authority to use the Cash Collateral on an interim basis and as set forth in this Motion and in the Interim Order to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b).  Accordingly, the Debtors respectfully submit that they have satisfied the requirements of Bankruptcy Rule 4001 to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis.

**H.      Processing of Checks and Electronic Funds Transfers Should Be Authorized**

42.      In connection with the foregoing, the Debtors respectfully request that the Court (a) authorize the Debtors' banks and other financial institutions (the "Banks") to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (b) provide that all Banks may rely on the Debtors' representations with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to this Motion (such banks and other financial institutions having no liability to any party for relying on such representations by the Debtors provided for herein); and (c) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks.

## WAIVER OF BANKRUPTCY RULE 4001(A)(3)

43.      The Debtors request a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3).  Bankruptcy Rule 4001(a)(3) provides that "[an] order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3).  As explained herein, access to Cash Collateral is essential to prevent irreparable damage to the Debtors' estates.  Accordingly, the Debtors submit that ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

## IMMEDIATE RELIEF IS NECESSARY

44.      Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  As described above, any disruption of the Debtors' use of Cash Collateral would

substantially diminish or impair the Debtors' efforts in these chapter 11 cases to preserve and maximize the value of their estates. For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## **WAIVER OF ANY APPLICABLE STAY**

45.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estates through these chapter 11 cases. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## **NOTICE**

46.     Notice of this Motion will be provided to: (a) the Office of the United States Trustee for the District of Delaware (Attn: Joseph Cudia); (b) the holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the District of Delaware; (e) counsel to the Prepetition Agent; (f) the Environmental Protection Agency and similar state agencies for states in which the Debtors conduct business; (g) the Federal Energy Regulatory Commission; (h) counsel to IEP; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

29210756.1

WHEREFORE, the Debtors respectfully request entry of the Interim Order and

Final Order granting the relief requested herein and such other and further relief as the Court may

deem just and proper.

Dated:  March 24, 2022          Respectfully submitted,
        Wilmington, Delaware

                                       **YOUNG CONAWAY**
                                       **STARGATT & TAYLOR, LLP**

                                     */s/ Andrew L. Magaziner*
                                     Pauline K. Morgan (No. 3650)
                                     Andrew L. Magaziner (No. 5426)
                                     Katelin A. Morales (No. 6683)
                                     Timothy R. Powell (No. 6894)
                                     Rodney Square
                                     1000 North King Street
                                     Wilmington, Delaware 19801
                                     Telephone: (302) 571-6600
                                     Facsimile: (302) 571-1253
                                     Email:  pmorgan@ycst.com
                                            amagaziner@ycst.com
                                            kmorales@ycst.com
                                            tpowell@ycst.com

                                              - and -

                                     **PAUL, WEISS, RIFKIND,**
                                     **WHARTON & GARRISON LLP**
                                     Brian S. Hermann (*pro hac vice* admission pending)
                                     John T. Weber (*pro hac vice* admission pending)
                                     Alice Nofzinger (*pro hac vice* admission pending)
                                     1285 Avenue of the Americas
                                     New York, New York 10019
                                     Tel:    (212) 373-3000
                                     Fax:    (212) 757-3990
                                     Email: bhermann@paulweiss.com
                                            jweber@paulweiss.com
                                            anofzinger@paulweiss.com

                                     *Proposed Counsel to the Debtors and*
                                     *Debtors in Possession*

**EXHIBIT A**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SALEM HARBOR POWER DEVELOPMENT LP (f/k/a Footprint Power Salem Harbor Development LP), *et al.*, [1] | Case No. 22-_____ (___) |
| | (Jointly Administered) |
| Debtors. | **Docket Ref No.____** |

### INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) MODIFYING THE AUTOMATIC STAY, AND (D) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases") seeking entry of an interim order (this "Interim Order") and a final order (the "Final Order"), pursuant to sections 105, 361, 362, 363, 503, 506, 507, and 552 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, 7062, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1(b), 4001-2, and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (a) authorizing the Debtors to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code, and all other Prepetition Collateral (as defined herein), solely in accordance with the terms of this Interim Order,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP) (1360); Highstar Salem Harbor Holdings GP, LLC (f/k/a Highstar Footprint Holdings GP, LLC) (2253); Highstar Salem Harbor Power Holdings L.P. (f/k/a Highstar Footprint Power Holdings L.P.) (9509); Salem Harbor Power FinCo GP, LLC (f/k/a Footprint Power Salem Harbor FinCo GP, LLC) (N/A); Salem Harbor Power FinCo, LP (f/k/a Footprint Power Salem Harbor FinCo, LP) (9219); and SH Power DevCo GP LLC (f/k/a Footprint Power SH DevCo GP LLC) (9008). The location of the Debtors' service address is: c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite 475, Spring, Texas 77380.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

(ii) granting adequate protection to MUFG Union Bank, N.A., as administrative agent (in such capacity, the "Administrative Agent"), collateral agent (in such capacity, the "Collateral Agent" and together with the Administrative Agent, the "Prepetition Agent") and depositary bank, under the Credit Agreement (as defined herein), and the other Prepetition Secured Parties (as defined herein), and (iii) granting adequate protection to Iberdrola Energy Projects, Inc. ("IEP") on the terms set forth in paragraph 11 below; (b) subject to entry of the relief sought in the Motion on a final basis pursuant to the Final Order, granting adequate protection liens on the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, and 550 of the Bankruptcy Code or any other similar state or federal law (collectively, the "Avoidance Actions"); (c) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the Final Order; (d) subject to entry of the Final Order, except to the extent of the Carve-Out (as defined herein), waiving all rights to surcharge any Prepetition Collateral or Postpetition Collateral (as defined herein) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law; (e) subject to Challenge (as defined herein and subject to the limitations specified herein), approving certain stipulations by the Debtors with respect to the Credit Agreement and the liens and security interests arising therefrom, (f) scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") to consider approval of the relief sought in the Motion on a final basis pursuant to the Final Order; and (g) granting related relief, all as more fully set forth herein; and an initial hearing on the Motion having been held by this Court on March [__], 2022 (the "Interim Hearing"), and this Court having considered the Motion, the First Day Declaration, and the evidence submitted or adduced and the arguments of counsel

made at the Interim Hearing; and due and proper notice of the Motion and the Interim Hearing having been given as set forth in the Motion; and such notice having been adequate and appropriate under the applicable Bankruptcy Rules and Local Rules, and it appearing that no other or further notice need be provided; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the relief requested in the Motion on an interim basis having been withdrawn, resolved, or overruled by this Court; and it appearing that granting the relief requested in the Motion on an interim basis is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable, in the best interests of the Debtors, their estates, creditors, and other parties in interest; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.      <u>Petition Date</u>.  On March 23, 2022 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

B.      <u>Debtors in Possession</u>.  The Debtors continue to manage and operate their business and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.   No trustee or examiner or official committee of unsecured creditors (the "<u>Creditors'</u> <u>Committee</u>") has been appointed in these Chapter 11 Cases.

---

[3]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over these proceedings, and the persons and properties affected hereby, pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

D.     <u>Debtors' Stipulations</u>.  In requesting the use of Cash Collateral (as defined below), and in exchange for and as a material inducement to the consent of the Prepetition Secured Parties (as defined below) to the use of their Cash Collateral, subject to the challenge rights set forth in paragraph 5 below (but subject to the limitations thereon contained herein), the Debtors, for themselves, their estates and all representatives of such estates, acknowledge, represent, admit, stipulate, and agree (collectively, the "<u>Debtors' Stipulations</u>") as follows:

(i)     *Loan Documents.*  Prior to the Petition Date, certain of the Prepetition Secured Parties made loans, advances, and other extensions of credit pursuant to that certain Credit Agreement, originally dated as of January 9, 2015 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified, the "<u>Credit Agreement</u>" and, collectively with all agreements, documents, notes, letters of credit, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, including the "Financing Documents" (as defined therein), the "<u>Loan Documents</u>"), by and among Footprint Power Salem Harbor Development LP, as borrower ("<u>DevCo</u>"), the Lenders (as defined in the Credit Agreement) from time to time party thereto (the "<u>Prepetition Secured Lenders</u>"), and the Prepetition Agent (collectively with the Prepetition Secured Lenders, and any other "Secured Party" (as defined in the Credit Agreement),

the "Prepetition Secured Parties").  Each of the Loan Documents is valid, binding, and, subject to applicable bankruptcy law, enforceable against the applicable Debtors in accordance with its terms.

(ii)    *Prepetition Secured Obligations.*    All indebtedness, liabilities, and obligations owing from time to time under the Loan Documents, specifically to the extent constituting Obligations (as defined in the Credit Agreement), are collectively referred to herein as "Prepetition Secured Obligations".  As of the Petition Date, the applicable Debtors were indebted and liable under the Loan Documents, without defense, counterclaim, or offset of any kind to the Prepetition Secured Lenders in respect of the Prepetition Secured Obligations for (a) an aggregate principal amount of not less than (1) $290 million in respect of the loans made under the Credit Agreement (inclusive of capitalized interest), (2) $41.6 million in respect of the letter of credit (the "Gas Lateral Letter of Credit") issued and outstanding in favor of Algonquin Gas Transmission, LLC for the account of DevCo, if such Gas Lateral Letter of Credit is ultimately drawn, and (3) $4.75 million in respect of the letter of credit (the "CSA Letter of Credit" and together with the Gas Lateral Letter of Credit, the "L/Cs") issued and outstanding in favor of General Electric International, Inc. for the account of DevCo, if such CSA Letter of Credit is ultimately drawn; and (b) accrued and unpaid interest, fees, and costs, expenses (including any attorneys' and financial advisors' fees), charges, indemnities and all other Obligations (as defined in the Credit Agreement) incurred or accrued with respect to the foregoing pursuant to, and in accordance with, the Loan Documents.

(iii)    *Liens and Collateral.*  Pursuant to and as more particularly described in the Loan Documents, the Prepetition Secured Obligations are secured by, among other things, first priority liens and mortgages on, security interests in, and assignments and pledges of (collectively,

the "Prepetition First Priority Liens"), assets of the applicable Debtors as more fully described in the Loan Documents, including (a) all of DevCo's right, title, and interest in all or substantially all of DevCo's property, including real property, personal property, and fixtures, (b) all of Footprint Power SH DevCo GP LLC's interests in DevCo, and (c) all of Footprint Power Salem Harbor FinCo, LP's interests in DevCo and Footprint Power SH DevCo GP LLC (such collateral, collectively, the "Prepetition Collateral"), and, as of the Petition Date, such Prepetition First Priority Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to liens senior by operation of law or otherwise permitted by the Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition First Priority Liens as of the Petition Date, or valid, non-avoidable, senior priority liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, collectively, the "Permitted Encumbrances").  For the avoidance of doubt, any and all of the Debtors' cash, whether existing as of the Petition Date or thereafter, wherever located constitutes "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral") (including, without limitation, cash or cash equivalents generated by the sale or other disposition of Prepetition Collateral or on deposit or maintained by the Debtors in any account or accounts over which the Prepetition Secured Parties have control, and all income, proceeds, products, rents, or profits of any Prepetition Collateral).

(iv)     *Validity of Prepetition First Priority Liens and Prepetition Secured Obligations.*  The Prepetition First Priority Liens are (a) valid, binding, perfected, duly recorded, and enforceable liens on, and security interests in the Prepetition Collateral, and (b) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance,

disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, set-off, offset, recoupment, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity.  The Prepetition First Priority Liens were granted for fair consideration and reasonably equivalent value, and were granted in consideration of the making and/or continued making of loans, commitments, and/or other financial accommodations under the Loan Documents.  The Prepetition Secured Obligations owing to the Prepetition Secured Parties constitute legal, valid, and binding obligations of the applicable Debtors, enforceable against them in accordance with their respective terms, and no portion of the Prepetition Secured Obligations or any payments made to the Prepetition Secured Parties or applied to or paid on account of the Obligations owing under the Loan Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, set-off, offset, subordination (whether equitable, contractual, or otherwise), recharacterization, avoidance, or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code or applicable nonbankruptcy law.  The Prepetition Secured Obligations constitute allowed secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(v)    *No Control*.  Prior to and as of the date hereof, none of the Prepetition Secured Parties control the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted, or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order or the Loan Documents.

(vi)    *No Challenges/Claims*.  No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition First Priority Liens or Prepetition

Secured Obligations exist, and no facts or occurrence supporting or giving rise to any offset, challenge, objection, defense, claim or counterclaim of any kind or nature to any of the Prepetition First Priority Liens or Prepetition Secured Obligations exist.  The Debtors do not possess, and shall not assert, any claim, counterclaim, setoff, objection, challenge or defense of any kind, nature or description that would in any way affect the validity, enforceability or non-avoidability of any Prepetition Secured Obligations.

(vii)    *Adequate Protection for the Prepetition Secured Parties.*  The Prepetition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code for any diminution in the value, from and after the Petition Date, of their interests in the Prepetition Collateral (including the Cash Collateral) resulting from the imposition of the automatic stay and/or from the Debtors' use, sale or lease of the Prepetition Collateral (collectively, the "Diminution in Value") during the Chapter 11 Cases.  As adequate protection therefor, the Prepetition Secured Parties will receive the adequate protection described in this Interim Order (including the adequate protection set forth in paragraph 9 hereof).  In exchange for such adequate protection, the Prepetition Secured Parties have consented to the Debtors' use of the Cash Collateral, solely on the terms and conditions set forth in this Interim Order.  The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary to obtain such consent.

E.    Necessity for Relief Requested; Immediate and Irreparable Harm.  The Debtors requested the entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  The Debtors have an immediate need to use the Cash Collateral to, among other things, preserve and maximize the value of the Debtors' assets, absent which immediate and irreparable harm will result to the Debtors, their estates, and creditors.  The preservation and maintenance of the Debtors' assets and

business are necessary and appropriate to maximize value available for distribution to creditors. Absent the Debtors' ability to use Cash Collateral, the Debtors would not have any available sources of working capital and would be unable to pay their operating expenses or maintain their assets, to the detriment of the Debtors' estates and creditors. The relief requested in the Motion is therefore necessary to avoid immediate and irreparable harm to the Debtors, their estates, and creditors. Additionally, the use of Cash Collateral avoids the immediate need for the Debtors to obtain postpetition financing, which would require the Debtors to, among other things, incur fees in connection with such financing and otherwise would result in additional expense for the Debtors and their estates. The Prepetition Secured Parties and the Debtors have negotiated at arms' length and in good faith regarding the Debtors' use of Cash Collateral during the pendency of these Chapter 11 Cases. Accordingly, the relief requested in the Motion and entry of this Interim Order are (a) critical to the Debtors' ability to maximize the value of their chapter 11 estates, (b) in the best interests of the Debtors and their estates, and (c) necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and their estates.

F.     IEP Lien. On March 23, 2022, shortly before the commencement of the Chapter 11 Cases, IEP recorded a judicial lien in the land records with the Southern Essex District Registry of Deeds in Massachusetts with respect to its judgment claim against Debtor DevCo (the "IEP Lien" and the property subject to such lien, the "IEP Prepetition Collateral"). Pursuant to that certain Standstill and Coordination Agreement, dated as of January 18, 2022, by and between DevCo and IEP (the "Standstill Agreement"), IEP agreed, to the extent it obtains a lien (or purports to obtain a lien) on any of the Debtors' property, including Cash Collateral, not to object to, oppose, or seek to modify the Debtors' use of Cash Collateral, in its purported capacity as a secured creditor, if such use is otherwise consented to by the Required Lenders (as defined in the Credit Agreement)

or object, oppose, or seek to modify the adequate protection provided in connection therewith to the Prepetition Secured Parties or IEP as set forth herein.

G.    <u>Proper Exercise of Business Judgment</u>.    Based on the Motion, the First Day Declaration, and the record presented to the Court at the Interim Hearing, (a) the terms of adequate protection to be granted to the Prepetition Secured Parties and IEP hereunder, (b) the terms on which the Debtors may continue to use Prepetition Collateral (including Cash Collateral) as reflected herein, and (c) the Cash Collateral arrangements described herein pursuant to this Interim Order, (i) are fair, reasonable, and the best available to the Debtors under the circumstances; (ii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties; and (iii) are supported by reasonably equivalent value and fair consideration.    The use of Prepetition Collateral (including Cash Collateral) was negotiated in good faith and at arm's length among the Debtors and the Prepetition Secured Parties.

H.    <u>Good Cause</u>.    Good cause has been shown for entry of this Interim Order, and the entry of this Interim Order is in the best interests of the Debtors and their estates and creditors. Among other things, the relief granted herein will permit the Debtors to preserve and maintain the value of their assets.    The terms of the Debtors' use of Cash Collateral and proposed adequate protection arrangements, as set forth in this Interim Order, are fair and reasonable under the circumstances, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

I.    <u>Good Faith</u>.    The Debtors' use of Prepetition Collateral (including Cash Collateral) has been negotiated in good faith and at arms' length among the Debtors and the Prepetition Secured Parties, on the one hand, and the Debtors and IEP, on the other hand, and the Prepetition

Secured Parties' and IEP's consent (or deemed consent) to the Debtors' use of Cash Collateral shall be deemed to have been made in good faith.

J.      Sections 506(c) and 552(b) Waivers.   The Prepetition Secured Parties have negotiated for, and the Debtors intend to seek in the Final Order, a waiver of (a) any "equities of the case" claims under section 552(b) of the Bankruptcy Code, (b) the provisions of section 506(c) of the Bankruptcy Code, and (c) the equitable doctrine of "marshalling" or any similar doctrine.

K.      Notice.   The Debtors have caused notice of the Motion, the relief requested therein on an interim basis, and the Interim Hearing to be served, whether by facsimile, email, overnight courier, or hand delivery on the following parties (collectively, the "Notice Parties"): (a) the Office of the U.S. Trustee for the District of Delaware (Attn: Joseph Cudia); (b) the holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the District of Delaware; (e) counsel to the Prepetition Agent; (f) the Environmental Protection Agency and similar state agencies for states in which the Debtors conduct business; (g) the Federal Energy Regulatory Commission; (h) counsel to IEP; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, and of the Interim Hearing complies with Bankruptcy Rules 2002, 4001(b), (c), and (d). The parties have made reasonable efforts to afford the best notice possible under the circumstances to permit the relief set forth in this Interim Order to be granted, and no other or further notice is required.

L.      Relief Essential.   This Court concludes that entry of this Interim Order is necessary to avoid immediate and irreparable harm to the Debtors' estates, is in the best interests of the

Debtors' estates, and is necessary, essential, and appropriate for the continued operation of the Debtors' business and the management and preservation of their assets and properties.

**BASED UPON THE STIPULATED TERMS AND FINDINGS OF FACT AND CONCLUSIONS OF LAW SET FORTH HEREIN, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.      <u>Motion Granted</u>.  The Motion is GRANTED to the extent provided herein on an interim basis.  Any objection to the interim relief requested in the Motion to the extent not withdrawn or resolved is hereby overruled.

2.      <u>Authorization to Use Cash Collateral</u>.  The use of proceeds of the Prepetition Collateral (including Cash Collateral) is authorized and approved during the period beginning with the Petition Date and ending on the Termination Date (as defined herein), in accordance with the 13-week cash disbursements and receipts budget attached as **<u>Exhibit A</u>** hereto (as such budget may be amended and extended from time to time as set forth herein, the "<u>Approved Budget</u>"), subject to the Permitted Variances (as defined herein).

3.      <u>No Effect of Debtors' Name Change on Collateral</u>.  No postpetition change or attempted change by any of the Debtors of its name or other trade and identifying information shall affect the validity, perfection or enforceability of the Prepetition First Priority Liens or the IEP Lien.

4.      <u>Budget</u>.

(a)      Subject to the provisions of this Interim Order, including the Approved Budget and the Permitted Variances, Cash Collateral may be used by the Debtors for general corporate and working capital purposes, to pay costs in connection with the administration of the Chapter 11 Cases and claims or amounts approved by this Court or as required under the

Bankruptcy Code, to make Adequate Protection Payments and pay Prepetition Secured Parties' Fees and Expenses (each as defined herein), and for other purposes as set forth in the Approved Budget.

(b)     The Debtors' projected cash receipts and cash disbursements shall be set forth in the Approved Budget and the Debtors' use of Cash Collateral shall be subject to compliance with the Approved Budget as described herein; *provided* that the payment of Allowed Professional Fees (as defined in paragraph 17(a) hereof), amounts owed to the U.S. Trustee, and the Prepetition Secured Parties' Fees and Expenses (as defined in paragraph 9(e) hereof) shall not be subject to the Approved Budget.

(c)     Beginning on the Wednesday during the second full week following the Petition Date, the Debtors shall provide a revised budget (the "Proposed Budget") to the Prepetition Agent by 5:00 p.m. (prevailing Eastern Time) every other Wednesday, which Proposed Budget shall be reasonably acceptable to the Debtors and the Prepetition Agent. If the Prepetition Agent does not object to the Proposed Budget by 11:59 p.m. (prevailing Eastern Time) on the immediately following Friday, such Proposed Budget shall be considered the new Approved Budget (the "Current Approved Budget") for the period covered thereby. If the Prepetition Agent does object to the Proposed Budget by 11:59 p.m. (prevailing Eastern Time) on the Friday immediately following delivery of the Proposed Budget, the Current Approved Budget—for variance testing purposes—shall continue in effect and remain unchanged until an updated budget is agreed to.

(d)     Beginning on the Wednesday during the third full week following the Petition Date, the Debtors shall deliver a budget variance report (the "Budget Variance Report") to the Prepetition Agent by 5:00 p.m. (prevailing Eastern Time) each Wednesday. The Budget

Variance Report shall show line item variances relative to the Current Approved Budget for the prior week and the prior cumulative two-week period, as applicable.  The Budget Variance Report for testing purposes shall measure disbursements relative to the Current Approved Budget for the prior cumulative two-week period (the "Testing Period") and shall show cash balances.

(e)     Notwithstanding the Approved Budget, the following limited variances shall be permitted (each such variance, a "Permitted Variance" and collectively, the "Permitted Variances"), each measured at the end of each applicable Testing Period beginning with the first two full weeks following the Petition Date:  (i) the actual total receipts during such Testing Period shall not be less than eighty-five percent (85%) of the total projected receipts set forth in the last Approved Budget for such Testing Period; and (ii) the actual total disbursements during such Testing Period shall not exceed one hundred fifteen percent (115%) of the projected disbursements set forth in the Approved Budget for such Testing Period (excluding for purposes of testing set forth in this paragraph 4(e), Allowed Professional Fees, the Prepetition Secured Parties' Fees and Expenses, and payments to the U.S. Trustee).  Without limiting the generality of the foregoing, the Debtors' total cash retained across various Accounts (as defined in the Credit Agreement) shall not be less than $7,500,000 (the "Minimum Cash Balance").  The Debtors' compliance with the Minimum Cash Balance shall be measured on the 25th day of each calendar month; *provided*, *however*, that if the 25th day of a calendar month is not a business day (as used in the Credit Agreement, each a "Business Day"), then compliance with the Minimum Cash Balance shall be measured on the first Business Day following the 25th day of such calendar month.

(f)     Notwithstanding anything herein to the contrary, the Debtors shall not be permitted to use funds securing the L/Cs[4] and cash in protected accounts such as the Debt Service Reserve Account and the Warranty Reserve Account (each as defined in the Loan Documents), absent prior written consent of the Gas Lateral LC Lenders (as defined in the Credit Agreement) in respect of the Gas Lateral Letter of Credit, MUFG Union Bank, N.A. in respect of the CSA Letter of Credit, and the Required Lenders.

(g)     Notwithstanding anything to the contrary set forth in this Interim Order, Cash Collateral and the Carve-Out (as defined herein) may not be used: (i) to investigate (except as expressly provided herein), initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type (A) against the Prepetition Secured Parties, or seek relief that would impair the rights and remedies of the Prepetition Secured Parties under the Loan Documents or this Interim Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or any Creditors' Committee (if appointed) in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration, or similar relief that would impair the ability of the Prepetition Secured Parties to recover on the Prepetition Secured Obligations or seeking affirmative relief against the Prepetition Secured Parties; (B) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Prepetition Secured Obligations or Prepetition First Priority Liens on the Prepetition Collateral; or

---

[4]     For the avoidance of doubt, this reference to funds securing the L/Cs shall not be construed as an acknowledgement that such funds constitute Cash Collateral.

(C) for monetary, injunctive, or other affirmative relief against the Prepetition Secured Parties or with respect to the Prepetition First Priority Liens on the Prepetition Collateral that would impair the ability of the Prepetition Secured Parties to assert or enforce any lien, claim, right, or security interest or to realize or recover on the Prepetition Secured Obligations (other than as expressly permitted herein); (ii) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition First Priority Liens) held by or on behalf of the Prepetition Secured Parties; (iii) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions against the Prepetition Secured Parties; or (iv) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of the Prepetition First Priority Liens, the Prepetition Secured Obligations, or any other rights or interests of the Prepetition Secured Parties under the Loan Documents or herein; *provided, however,* an amount up to $100,000 of Cash Collateral nevertheless may be used exclusively by any Creditors' Committee solely to investigate the foregoing matters within the Challenge Period (as defined herein).

(h)    Notwithstanding anything to the contrary in the Loan Documents, to the extent not cash collateralized prior to the Petition Date, nothing herein shall require the Debtors to cash collateralize the L/Cs other than as provided in paragraph 13 hereof.

5.    <u>Effect of Stipulation on Third Parties</u>.

(a)    *Generally.*    The representations, admissions, stipulations, agreements, releases, and waivers of the Debtors set forth in this Interim Order (collectively, the "<u>Prepetition Lien and Claim Matters</u>") are and shall be binding on the Debtors, their estates and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for

the Debtors), creditors, responsible persons, examiners with expanded powers, any other estate representative, and any other third parties and all of their successors in interest and assigns, including, without limitation, any Creditors' Committee, unless, and solely to the extent that, (a) a party in interest with standing and the requisite authority (other than the Debtors, as to which any Challenge (as defined herein) is irrevocably waived and relinquished) has timely filed an appropriate pleading seeking standing (the "Standing Motion") to timely commence an appropriate proceeding or contested matter required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in paragraph 4(g) of this Interim Order) challenging (or to the extent challenging) any of the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by no later than, with respect to parties in interest including any Creditors' Committee, seventy-five (75) calendar days from entry of the Interim Order (the "Challenge Period"), *provided*, that (i) the timely filing of a motion seeking standing to file a Challenge before the expiration of the Challenge Period, which attaches a draft complaint setting forth the legal and factual bases of the proposed Challenge, shall toll the Challenge Period only as to the party that timely filed such standing motion until such motion is resolved or adjudicated by the Court and only with respect to such Challenge set forth in the draft complaint attached to the motion and (ii) if a chapter 7 trustee or a chapter 11 trustee is appointed or elected, so long as such appointment or election occurs prior to the last day of the then applicable Challenge Period, then such chapter 7 trustee or chapter 11 trustee, as applicable, shall be permitted to Challenge until the later of (x) the last day of the Challenge Period and (y) the date that is twenty (20) calendar days after the date on which such chapter 7 trustee or chapter 11 trustee, as applicable, was appointed or elected during the Challenge

Period; and (b) this Court enters judgment (or to the extent judgment has been entered) in favor of the plaintiff or movant in any such timely and properly commenced Challenge, and any such judgment has become final and is not subject to any further review or appeal. Notwithstanding anything to the contrary in this Interim Order, if a party in interest, including any Creditors' Committee, files a Standing Motion within the Challenge Period, wherein the only basis to deny standing to pursue a Challenge set forth in the Standing Motion is that the applicable Debtor is a limited liability company, the Debtors (or a designated representative) shall retain the authority to prosecute such Standing Motion in the exercise of their business judgment and subject to any applicable further order of this Court.

(b)     *Binding Effect.*     To the extent no Challenge is timely and properly commenced during the Challenge Period by a party with requisite standing, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before, this Court, and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to this Interim Order, become binding, conclusive, and final on the Debtors, their estates, all creditors, any person, entity, or party in interest in the Chapter 11 Cases, and their successors and assigns, and in any Successor Case (as defined herein) for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates. More specifically, as to (i) any parties in interest, including any Creditors' Committee, who fail to file a Challenge within the Challenge Period, or if any such Challenge is filed and overruled, or (ii) any and all matters that are not expressly the subject of a timely Challenge: (A) any and all such Challenges by any party

18

(including, without limitation, any Creditors' Committee, any chapter 11 trustee, any examiner or any other estate representative appointed in these Chapter 11 Cases, or any chapter 7 trustee, any examiner or any other estate representative appointed in any Successor Cases (as defined herein)), shall be deemed to be forever waived and barred, (B) all of the findings, Debtors' Stipulations, waivers, releases, affirmations, and other stipulations hereunder as to the priority, extent, validity, and enforceability of the Prepetition First Priority Liens and the Prepetition Secured Obligations shall be of full force and effect and forever binding upon the Debtors' estates and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Cases, and (C) the Prepetition Secured Parties and each their respective agents, officers, directors, employees, attorneys, consultants, professionals, successors, and assigns shall be deemed released and discharged from all claims and causes of action arising out of or in any way relating to the Prepetition Lien and Claim Matters and shall not be subject to any further objection or challenge by any party at any time.

(c)     *No Standing.*  Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Creditors' Committee, standing or authority to pursue any claim or cause of action belonging to the Debtors and/or their estates, including, without limitation, any Challenge with respect to the Loan Documents, the Prepetition First Priority Liens, and/or the Prepetition Secured Obligations.

6.     <u>Termination Date</u>.  Unless otherwise ordered by this Court, the Debtors' authorization, and the Prepetition Secured Parties' consent, to use Cash Collateral in accordance with this Interim Order shall terminate on the earliest to occur of (the "<u>Termination Date</u>"):  (a) the date that is 185 days after the Petition Date, unless such date is extended pursuant to the written consent by the Required Lenders; (b) the entry of an order approving a postpetition financing

facility that has not been consented to by the Required Lenders; (c) the occurrence of an effective date of a confirmed chapter 11 plan; and (d) the delivery of a Termination Notice (as defined herein) by the Prepetition Agent, as set forth in paragraph 16 hereof.

7.      <u>Reporting Requirements</u>.  The Debtors shall provide the Prepetition Agent with all reporting and other information required to be provided to the Prepetition Agent under and in accordance with the terms of the Loan Documents, respectively.  In addition, the Debtors shall comply with the following additional reporting requirements:

(a)      The Debtors shall deliver to the Prepetition Agent (a) a Proposed Budget on a bi-weekly (*i.e.*, every two weeks) basis and (b) the Budget Variance Report on a weekly basis, each as more fully set forth in paragraph 4 hereof;

(b)      Subject to applicable confidentiality obligations and restrictions imposed by the Federal Energy Regulatory Commission ("<u>FERC</u>"), the Debtors shall deliver to the Prepetition Agent on a go-forward basis, and solely to the extent permissible, copies of all notices and documents exchanged between the Debtors and FERC, and updates on material developments consistent with Section 5.10(f) of the Credit Agreement (collectively, the "<u>FERC Matters</u>"); and

(c)      The Debtors shall hold a weekly conference call with the Prepetition Agent and the Prepetition Secured Parties who elect to participate to discuss the Proposed Budget, the Budget Variance Report, any FERC Matters (subject to applicable confidentiality obligations), and the process of any sale or other disposition of all or any portion of the Prepetition Collateral.

8.      <u>Insurance</u>.  At all times, the Debtors shall maintain insurance coverage for the Prepetition Collateral and the Postpetition Collateral (as defined herein) on substantially the same basis as maintained prior to the Petition Date.

9.    _Adequate Protection_.  As adequate protection against any postpetition Diminution in Value of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) resulting from: (a) the imposition of the automatic stay or (b) the Debtors' use, sale, or disposition of the Prepetition Collateral (including Cash Collateral) during the Chapter 11 Cases (the "Senior Adequate Protection Obligations"), the Prepetition Agent, for itself and for the benefit of the Prepetition Secured Parties, shall receive the following adequate protection (collectively, the  "Adequate Protection Package"):

(a)    _Adequate Protection Liens_.  Subject only to the Carve-Out (as defined herein) and the terms of this Interim Order, pursuant to sections 361 and 363(e) of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, the Debtors are authorized to grant and hereby grant to the Prepetition Agent, for itself and for the benefit of the Prepetition Secured Parties, additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected, effective as of the Petition Date, postpetition security interests in and liens on (the "Senior Adequate Protection Liens"), without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, all of the right, title and interest of the Debtors and their estates (as created pursuant to section 541(a) of the Bankruptcy Code) in, to, and under all present and after-acquired property and assets of the Debtors of any nature whatsoever, whether real or personal, tangible or intangible, wherever located, including, without limitation, all cash and Cash Collateral of the Debtors, and any investment of such cash and Cash Collateral, accounts receivable and other rights to payment, whether arising before or after the Petition Date, inventory, general intangibles, chattel paper, real property and leaseholds and proceeds thereof (_provided_, _however_, that to the extent that any federal

law, regulation or order thereunder or any Prepetition Secured Lender's internal regulatory or compliance requirements would require the completion of flood due diligence and/or obtaining evidence of applicable flood insurance with respect to any real property or leasehold interest, then in such event the Prepetition Agent shall be granted a lien only on the economic value of, proceeds of sale or other disposition of, and any other proceeds and products of such real property or leasehold interests), plants, fixtures, machinery, equipment, commercial tort claims, deposit accounts, cash and cash equivalents, rights under letters of credit, capital stock and other equity or ownership interests held by the Debtors, including equity interests in subsidiaries and all other investment property, investments, patents, trademarks, trade names, copyrights, licenses, rights under license agreements and other intellectual property, intercompany notes or receivables due to each Debtor, all of the Collateral (as defined in the Credit Agreement), and as to all of the foregoing, all rents, issues, products, proceeds, and profits generated by any of the foregoing, and, subject to entry of the Final Order, all proceeds of Avoidance Actions of the Debtors or their estates (collectively, the "Postpetition Collateral").  The Senior Adequate Protection Liens shall be subject or junior only to (1) the Carve-Out and (2) the Permitted Encumbrances.  The Senior Adequate Protection Liens shall be enforceable against and binding upon the Debtors, their estates and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Debtors' Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Debtors' Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (each, a "Successor Case").  For the avoidance of doubt, this Interim Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of the Senior Adequate Protection Liens, without any further act and without the necessity of the execution, filing, or recording of any financing statement, mortgage,

security agreement, pledge agreement, notice, or other instrument or document, or the registration of liens on any certificates of title, that may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action (including, without limitation, entering into any deposit account control agreement or other act to take possession or control of any Postpetition Collateral) to attach, validate,  perfect, or prioritize such liens and security interests, or to entitle the Prepetition Secured Parties to the priorities granted herein.

(b)      *Allowed Superpriority Claims of the Prepetition Secured Parties.*  Pursuant to section 507(b) of the Bankruptcy Code, the Prepetition Agent, for itself and for the benefit of the Prepetition Secured Parties, effective as of the entry of this Interim Order, is hereby further granted an allowed super-priority administrative expense claim (the "Superpriority Claim") in each of the Chapter 11 Cases or any Successor Case, solely to the extent of any Diminution in Value of the Prepetition Collateral, if any, subsequent to the Petition Date, which claims shall be junior only to the Carve-Out, but shall be senior to and have priority over all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507, 546(c), 552(b), 726, and 1114 of the Bankruptcy Code or otherwise) and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever as set forth in and in accordance with section 507(b) of the Bankruptcy Code.  The Superpriority Claim shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all assets and properties of each of the Debtors; *provided*, *however*, that recourse against the proceeds of Avoidance Actions shall be subject to entry of the Final Order.  The Superpriority Claim shall be valid and enforceable

against the Debtors, their estates, and any successors or assigns thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases.

(c)      *Adequate Protection Payments.*  On a monthly basis, the Debtors shall pay, in cash, to the Prepetition Agent for the benefit of the Prepetition Secured Parties all interest (together, for the avoidance of doubt, with any fees payable under the L/Cs) accruing and becoming due after the Petition Date at the applicable non-default rate under the applicable Loan Document (each such payment, the "Adequate Protection Payment"); *provided* that notwithstanding anything to the contrary set forth herein or in the Approved Budget, the Adequate Protection Payment shall only be paid to the extent that the Debtors maintain a cash balance of $17,500,000 or greater in the Accounts after effectuating any such Adequate Protection Payment.

(d)      *Payment of Agency Fees.*  The Prepetition Agent shall receive from the Debtors current cash payments of all reasonable and documented prepetition and postpetition fees, including agency fees and administrative fees, and out-of-pocket expenses incurred by and payable to the Prepetition Agent under the Loan Documents (the "Agency Fees").

(e)      *Payment of Advisors' Fees and Expenses.*  As further adequate protection, the Debtors shall pay in cash, without the need for the filing of formal fee applications: (i) immediately upon entry of this Interim Order, the reasonable and documented out-of-pocket professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of Mayer Brown LLP, as primary counsel to the Prepetition Agent, Potter Anderson & Corroon LLP, as Delaware counsel to the Prepetition Agent, Goodwin Procter LLP, as Massachusetts counsel to the Prepetition Agent, and PJT Partners LP, as financial advisor to the Prepetition Agent (collectively, the "Advisors")) incurred by the Prepetition Agent in connection with the Loan Documents arising prior to the Petition Date; and (ii) the reasonable and documented

out-of-pocket professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of the Advisors) incurred by the Prepetition Agent in connection with the Loan Documents and arising subsequent to the Petition Date (clauses (i) and (ii), collectively, the "Adequate Protection Fees" and together with the Agency Fees, the "Prepetition Secured Parties' Fees and Expenses").  After seven (7) calendar days from delivery of a monthly summary statement of any requested Adequate Protection Fees (which shall include the total number of hours billed by attorney or other professional but shall not be required to comply with any particular format, may be in summary form only and may include redactions necessary to maintain privilege)[5] to counsel to the Debtors, the U.S. Trustee, and counsel to any Creditors' Committee, the Debtors shall pay such fees, costs, and expenses; *provided*, *however* that the Court shall have jurisdiction over any objections raised by the Debtors, the U.S. Trustee, or any Creditors' Committee to the invoiced amount of the fees, costs, and expenses proposed to be paid, which objections must be raised within seven (7) calendar days from delivery of such invoices to the Debtors, the U.S. Trustee, and counsel to any Creditors' Committee.  In the event that within seven (7) calendar days from delivery of a monthly invoice, the Debtors, the U.S. Trustee, or any Creditors' Committee raises an objection to such invoice, and the parties are unable to resolve such objection, the Court shall hear and determine such dispute.  Any and all amounts paid by the Debtors as Prepetition Secured Parties' Fees and Expenses are deemed permitted uses of Cash Collateral hereunder and not subject to the Approved Budget or any Budget Variance Report.

(f)     *Compliance with the Budget.*  The Debtors shall comply with the Approved Budget on the terms provided herein, subject to the Permitted Variances.

---

[5]     Invoices for such fees, costs, and expenses provided to the Debtors, the U.S. Trustee, and counsel to any Creditors' Committee, shall not be required to include any information subject to attorney-client privilege or any information constituting attorney work product.  Furthermore, the provision of information pursuant to the terms hereof shall in no event constitute a waiver of attorney-client privilege or of any benefits of the attorney work product doctrine.

(g)     *Adequate Protection Reservation.*  The receipt by the Prepetition Secured Parties of the Adequate Protection Package provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.  Further, this Interim Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection, without prejudice to the respective rights of the Debtors, any Creditors' Committee, or any party in interest to contest the seeking of such relief by the Prepetition Secured Parties.  Each of the Debtors shall be jointly and severally liable for the Adequate Protection Package provided for herein, and any amendment or modification to the Adequate Protection Package shall require the prior written consent of the Required Lenders.

10.     <u>Modification of Automatic Stay</u>.  The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the Adequate Protection Package as set forth herein; (b) permit the Debtors to perform such acts as reasonably requested by the Prepetition Agent to assure the perfection and priority of the Senior Adequate Protection Liens granted herein; (c) authorize the Debtors to make, and the Prepetition Agent to retain and apply, payments in accordance with the terms of this Interim Order; and (d) following a draw under any of the L/Cs, authorize the respective issuing banks and lenders thereunder to apply any cash collateral securing such L/Cs in satisfaction of the Debtors' reimbursement obligations, without further order of the Court.

11.     <u>Adequate Protection to IEP</u>.  Solely to the extent the IEP Lien is valid, secured, perfected, and unavoidable as of the Petition Date, as adequate protection against any postpetition diminution in value of IEP's interests in the IEP Prepetition Collateral resulting from: (a) the

imposition of the automatic stay or (b) the Debtors' use, sale, or disposition of the IEP Prepetition Collateral during the Chapter 11 Cases, the Debtors, pursuant to sections 361 and 363(e) of the Bankruptcy Code, hereby grant to IEP, effective as of the Petition Date, postpetition security interests in and replacement liens on the Postpetition Collateral (the "IEP Adequate Protection Liens"), without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents.  The IEP Adequate Protection Liens shall be subject to and junior to the Carve-Out, Permitted Encumbrances, the Prepetition First Priority Liens, and the Senior Adequate Protection Liens.  Pursuant to section 507(b) of the Bankruptcy Code, IEP is hereby granted an allowed superpriority administrative expense claim, which claim shall be subject to and junior to the Superpriority Claim and the Carve-Out, solely to the extent the IEP Adequate Protection Liens are insufficient to satisfy any valid diminution in value claim of IEP.  Solely to the extent the IEP Lien is valid, secured, perfected, and unavoidable as of the Petition Date, the IEP Adequate Protection Liens shall be enforceable against and binding upon the Debtors, their estates and any successors thereto, including any Successor Case and this Interim Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of the IEP Adequate Protection Liens, without any further act and without the necessity of the execution, filing, or recording of any financing statement, mortgage, security agreement, pledge agreement, notice, or other instrument or document, or the registration of liens on any certificates of title, that may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action to attach, validate,  perfect, or prioritize such liens and security interests, or to entitle IEP to the priorities granted herein.  Notwithstanding anything to the contrary set forth herein, all parties'

rights are reserved as to whether and to what extent IEP does, in fact, have valid, secured, enforceable, and unavoidable liens on any of the Debtors' property.

12. <u>Cash Management</u>.    The Debtors shall maintain their cash management arrangements in a manner consistent with the *Interim Order (A) Authorizing (I) Continued Use of Cash Management System, (II) Maintenance of Bank Accounts and Business Forms, (III) Performance of Intercompany Transactions, and (IV) Certain Prepetition Obligations to be Honored; (B) Granting Administrative Expense Priority Status to Postpetition Intercompany Claims; (C) Waiving Strict Compliance with 11 U.S.C. § 345(b) and Certain Operating Guidelines, as Applicable; and (D) Granting Related Relief* entered by this Court.

13. <u>Disposition of Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Prepetition Collateral or the Postpetition Collateral outside of the ordinary course of business, except as contemplated by the "first day" and "second day" orders, as applicable, the Approved Budget, or the Approved Bid Procedures (as defined below), without the prior written consent of the Prepetition Agent, unless such sale, transfer, lease, encumbrance or other disposition is approved by this Court and results in the indefeasible payment in full in cash of the Prepetition Secured Obligations and, with respect to any then undrawn L/Cs, either replacement thereof or the posting of cash collateral in the amount equal to 102.5% of any exposure under such L/Cs.

14. <u>Milestones</u>.  The Prepetition Secured Parties have further conditioned the Debtors' use of Cash Collateral on compliance with the milestones set forth in the RSA (the "<u>Milestones</u>"), as may be extended consistent with the terms of the RSA.

15.    <u>Events of Default</u>.  The occurrence of any of the following events, unless waived in writing by the Required Lenders, shall constitute an event of default hereunder (each, an "<u>Event of Default</u>"):

(a)    termination of the RSA;

(b)    failure to meet or satisfy any of the reporting requirements under this Interim Order, including such requirements identified in paragraph 7 hereof, and such failure shall continue unremedied for a period of two (2) Business Days after the Debtors receive notice of such failure;

(c)    failure to comply with the Approved Budget, subject to the Permitted Variances, or the use of any Cash Collateral or the Carve-Out in a manner not permitted by this Interim Order;

(d)    failure to comply with the Minimum Cash Balance;

(e)    other than the Adequate Protection Package, the payment of professional fees and related expenses of any third party creditor or shareholder (excluding any Creditors' Committee), unless otherwise consented to by the Required Lenders and authorized by an order of this Court;

(f)    filing of a motion, application or other pleading to (a) obtain postpetition financing that has not been previously consented to by the Required Lenders or (b) use Cash Collateral other than as permitted herein or consented to by the Required Lenders;

(g)    except as expressly provided in this Interim Order or the Final Order, entry of an order subjecting or subordinating the Senior Adequate Protection Liens or making the Senior Adequate Protection Liens *pari passu* with (i) any intercompany claim, whether secured or

unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor or (ii) any other lien or security interest under sections 361 or 363 of the Bankruptcy Code;

(h)      entry of an order subjecting the Superpriority Claim to, or making the Superpriority Claim *pari passu* with, any administrative expense claims heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726, and 1114 of the Bankruptcy Code or otherwise), except for the Carve-Out;

(i)      entry of an order or a judgment by this Court or any other court granting relief from the automatic stay, without the consent of the Prepetition Agent, that would allow a third party to recover or obtain possession of any property of the Debtors' estates (other than cash deposits serving as collateral) with a value in excess of $500,000;

(j)      entry of an order or a judgment by this Court or any other court staying, reversing, vacating, amending, rescinding or otherwise modifying any of the terms of this Interim Order, or filing of a motion, application or other pleading by the Debtors seeking such entry, in each case without the consent of the Prepetition Agent;

(k)      the Debtors' continued use of Cash Collateral during the Remedies Notice Period (as defined below) in a manner not permitted by paragraph 16 hereof;

(l)      making of any material payments in respect of prepetition obligations other than as permitted pursuant to the Approved Budget or otherwise approved by the Court; or

(m)      dismissal of any of the Chapter 11 Cases or conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or the appointment of a chapter 11 trustee or an examiner with expanded powers in any of the Chapter 11 Cases.

16.    <u>Exercise of Remedies</u>.  Upon the occurrence and during the continuation of an Event of Default, unless such Event of Default has been waived in writing by the Prepetition Agent, the automatic stay imposed under section 362 of the Bankruptcy Code shall hereby be modified to permit the Prepetition Agent, upon the delivery of written notice (the "<u>Termination Notice</u>"), which may be provided by electronic mail and may include the Carve-Out Trigger Notice (if expressly designated as both a Carve-Out Trigger Notice and a Termination Notice), to counsel to the Debtors, counsel to any Creditors' Committee, and the U.S. Trustee, to at the conclusion of the Remedies Notice Period (as defined below):  (a) terminate and/or revoke the Debtors' right under this Interim Order to use any Cash Collateral of the Prepetition Secured Parties; (b) freeze monies or balances in any accounts subject to a control agreement or otherwise subject to a lien in favor of the Prepetition Secured Parties pursuant to the terms of this Interim Order; (c) take any act to create, validate, evidence, attach, or perfect any lien, security interest, right, or claim in the Postpetition Collateral; and (d) take any action and exercise all rights and remedies provided to it by this Interim Order, the Loan Documents, applicable law, or otherwise; *provided* that, notwithstanding anything in this Interim Order to the contrary, prior to the Prepetition Agent's exercise of any right set forth in clauses (a) through (d) of this paragraph, the automatic stay imposed under section 362 of the Bankruptcy Code shall not be so modified for a period of seven (7) calendar days (the "<u>Remedies Notice Period</u>") from the delivery of the Termination Notice, and, during the Remedies Notice Period, the Debtors shall be entitled to object to the termination of the consensual use of Cash Collateral solely on the basis that no Event of Default has occurred and to seek authority and approval for the non-consensual use of Cash Collateral, subject to the Prepetition Secured Parties' rights to object to, or otherwise oppose, any such non-consensual use of Cash Collateral and seek adequate protection in connection

therewith.  Notwithstanding anything to the contrary set forth herein, during the Remedies Notice Period, the Debtors may use Cash Collateral of the Prepetition Secured Parties to pay the following amounts and expenses:  (a) the Carve-Out; (b) amounts that the Debtors have determined in good faith are necessary for the preservation of the Debtors' business and their estates; and (c) amounts otherwise approved in advance in writing by the Prepetition Agent.  On the first calendar day following the end of the Remedies Notice Period, except as provided herein or unless otherwise ordered by this Court, the Debtors will immediately cease using Cash Collateral hereunder and the Prepetition Agent may thereupon exercise the rights and remedies available under the Loan Documents, this Interim Order or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Postpetition Collateral in order to collect any amounts payable to the Prepetition Secured Parties pursuant to this Interim Order and apply the same to such obligations.  The automatic stay under section 362 of the Bankruptcy Code shall be deemed immediately modified and terminated to the extent necessary to permit such actions.  Any delay or failure of any of the Prepetition Secured Parties to exercise rights under any Loan Document or this Interim Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise.   Notwithstanding the occurrence of a Termination Date, all of the rights, remedies, benefits, and protections provided to the Prepetition Secured Parties under this Interim Order as of such date shall survive the Termination Date.

17.    Carve-Out; Payment of Estate Professionals.

(a)    *Generally.*  As used in this Interim Order, the "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all

reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) to the extent allowed at any time, all accrued or earned but unpaid reasonable fees and expenses, including any earned but unpaid transaction fee(s) (the "Allowed Professional Fees"), of professionals retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") or by any Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons"), at any time before or on the first Business Day after delivery by the Prepetition Agent of a Carve-Out Trigger Notice (as defined herein); and (iv) Allowed Professional Fees (excluding any transaction fee(s)) incurred after the first Business Day following delivery by the Prepetition Agent of a Carve-Out Trigger Notice (as defined herein), to the extent allowed at any time, in an aggregate amount not to exceed $1,250,000 (the amount set forth in clause (iv) being the "Carve-Out Trigger Notice Cap").  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Agent to the Debtors and their counsel, the U.S. Trustee, and counsel to any Creditors' Committee, which notice may be delivered following the occurrence of an Event of Default or the Termination Date, stating that the Carve-Out Trigger Notice Cap has been triggered.

(b)      *Carve-Out Reserves.*  On the day on which a Carve-Out Trigger Notice is delivered by the Prepetition Agent to the Debtors and their counsel, the U.S. Trustee, and counsel to any Creditors' Committee (the "Carve-Out Trigger Date"), the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve (the "Pre-Carve-Out Trigger Notice Reserve") in an amount equal to the then unpaid Allowed Professional Fees, together with the other

obligations set forth in clauses (i) and (ii) of the definition of Carve-Out set forth above. The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees prior to any and all other claims. On the Carve-Out Trigger Date, after funding the Pre-Carve-Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve (the "Post-Carve-Out Trigger Notice Reserve" and, together with the Pre-Carve-Out Trigger Notice Reserve, the "Carve-Out Reserves") in an amount equal to the Carve-Out Trigger Notice Cap. All funds in the Pre-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve-Out set forth above (the "Pre-Carve-Out Amounts"), but not, for the avoidance of doubt, the Carve-Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agent for the benefit of the Prepetition Secured Parties, unless the Prepetition Secured Obligations have been indefeasibly paid in full, in cash. All funds in the Post-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve-Out set forth above (the "Post-Carve-Out Amounts"), and then, to the extent the Post-Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agent for the benefit of the Prepetition Secured Parties, unless the Prepetition Secured Obligations have been indefeasibly paid in full, in cash. Notwithstanding anything to the contrary in the Loan Documents, or this Interim Order, if either of the Carve-Out Reserves is not funded in full in the amounts set forth in this paragraph 17, then, any excess funds in one of the Carve-Out Reserves following the payment of the Pre-Carve-Out Amounts and Post-Carve-Out Amounts, respectively, shall be used to fund the other Carve-Out Reserve, up to the applicable amount set forth in this paragraph 17, prior to making any payments to the Prepetition Agent.

Notwithstanding anything to the contrary in the Loan Documents or this Interim Order, following delivery of a Carve-Out Trigger Notice, the Prepetition Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve-Out Reserves, with any excess paid to the Prepetition Agent as provided above for application in accordance with the Loan Documents.  Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve-Out Reserves shall not constitute Obligations (as defined in the Credit Agreement) or increase or reduce the Prepetition Secured Obligations, (ii) the failure of the Carve-Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out, and (iii) in no way shall the Approved Budget, Carve-Out, Carve-Out Trigger Notice Cap, Carve-Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order or in any Loan Documents, the Carve-Out shall be senior to all liens on and claims against the Prepetition Collateral and Postpetition Collateral, including the Senior Adequate Protection Liens, the IEP Adequate Protection Liens, and the Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Obligations or granted to IEP hereunder.

(c)     *Reservation of Rights.*  The Prepetition Secured Parties reserve their rights to object to the allowance of any fees and expenses, including any fees and expenses sought that are not provided for in the Approved Budget.  The payment of any fees or expenses of the Professional Persons pursuant to the Carve-Out shall not, and shall not be deemed to, (i) reduce any Debtor's obligations owed to any of the Prepetition Secured Parties, or (ii) modify, alter, or

otherwise affect any of the liens and security interests of such parties in the Postpetition Collateral or Prepetition Collateral (or their respective claims against the Debtors) except as provided herein.

(d)  *Payment of Allowed Professional Fees Prior to the Carve-Out Trigger Date.*  Any payment or reimbursement made prior to the occurrence of the Carve-Out Trigger Date in respect of any Allowed Professional Fees shall not reduce the Carve-Out.

(e)  *No Direct Obligation To Pay Allowed Professional Fees.*  None of the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)  *Payment of Carve-Out On or After the Carve-Out Trigger Date.*  Any payment or reimbursement made on or after the occurrence of the Carve-Out Trigger Date in respect of any Allowed Professional Fees from the Carve-Out Reserves (assuming such reserves are fully funded) shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

18.  <u>Release</u>.  Subject to the Challenge, and subject to and upon entry of the Final Order, the Debtors on behalf of themselves and their estates (including any successor trustee or other estate representative in any of the Chapter 11 Cases or Successor Cases) and any party acting by, or through, the Debtors or their estates, hereby, to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully, forever waive and release the Prepetition Agent and each of the other Prepetition Secured Parties, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members,

partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest of any and all "claims" (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights that exist on the date hereof relating to any of the Prepetition Collateral and any of the Loan Documents or the transactions contemplated under any such documents, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, arising at law or in equity, including, without limitation, any so-called "lender liability," any challenge or claim to exercises of remedies, recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, and any and all claims and causes of action regarding the validity, priority, perfection or avoidability of the liens or the claims of the Prepetition Agent and the other Prepetition Secured Parties.

19.    <u>Reversal, Modification, Vacatur, or Stay</u>.  Any reversal, modification, vacatur, or stay of any or all of the provisions of this Interim Order shall not affect the validity or enforceability of any Senior Adequate Protection Liens, any IEP Adequate Protection Liens, or any claim, lien, security interest, or priority authorized or created hereby with respect to any Senior Adequate Protection Obligations or any forms of adequate protection, liens, or claims granted to IEP hereunder, in each case, incurred prior to the effective date of such reversal, modification, vacatur, or stay.  Notwithstanding any reversal, modification, vacatur, or stay (a) this Interim Order shall govern, in all respects, any use of Cash Collateral, Adequate Protection Package, or any forms of adequate protection, liens, or claims granted to IEP hereunder, in each case, incurred by the Debtors prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the Prepetition Secured Parties and IEP shall be entitled to all the benefits and protections granted by

this Interim Order with respect to any such use of Cash Collateral or such Adequate Protection Package or any forms of adequate protection, liens, or claims granted to IEP hereunder, as applicable, incurred by the Debtors.

20.    <u>Reservation of Rights</u>.  Notwithstanding anything to the contrary herein, the entry of this Interim Order and the transactions contemplated hereby shall not constitute an admission nor be deemed an admission by the Prepetition Secured Parties that, absent their consent to the Debtors' use of Cash Collateral under this Interim Order, their interest in the Prepetition Collateral would be adequately protected.  Except as otherwise expressly set forth herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) the Prepetition Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection; or (b) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Parties.

21.    <u>No Waiver for Failure to Seek Relief</u>.  The failure or delay of the Prepetition Secured Parties to seek relief or otherwise exercise any of their rights and remedies under this Interim Order, the Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the Prepetition Secured Parties.

22.    <u>Section 507(b) Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties or IEP hereunder is insufficient to compensate for the Senior Adequate Protection Obligations or the forms of adequate protection granted to IEP hereunder during the Chapter 11 Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Prepetition Secured Parties or IEP, that the adequate protection

granted herein does in fact adequately protect the Prepetition Secured Parties against any Diminution in Value of their interests in and against the Prepetition Collateral (including the Cash Collateral) or IEP against any diminution in value of its interests in the IEP Prepetition Collateral.

23.     <u>Section 552(b) Waiver</u>.  Subject to entry of the Final Order, the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply.

24.     <u>Section 506(c) Waiver</u>.  Subject to entry of the Final Order, the Debtors and their estates waive any claim under section 506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Prepetition Secured Parties upon the Prepetition Collateral or Postpetition Collateral.

25.     <u>No Marshalling/Application of Proceeds</u>.  Subject to the entry of the Final Order, in no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral or Postpetition Collateral or any proceeds thereof.

26.     <u>Good Faith</u>.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, pursuant to sections 105, 361, and 363 of the Bankruptcy Code, the Debtors and the Prepetition Secured Parties are hereby found to be entities that have acted in good faith in connection with the negotiation and entry of this Interim Order and are entitled to the protections afforded by section 363(m) of the Bankruptcy Code.

27.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

28.    <u>No Liability to Third Parties</u>.  In permitting the use of the Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to the Debtors, their creditors or estates, or shall constitute or be deemed to constitute a joint venture or partnership with the Debtors.  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose upon the Prepetition Secured Parties any liability for any claims arising from the prepetition or postpetition activities of the Debtors and/or their affiliates (as defined in section 101(2) of the Bankruptcy Code).

29.    <u>Master Proof of Claim</u>.  The Prepetition Secured Parties will not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases, and the Debtors' stipulations in paragraphs D, E, G, and H herein shall be deemed to constitute a timely filed proof of claim against the applicable Debtors; *provided*, *however*, that the Prepetition Agent (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized in its sole discretion to file (and amend and/or supplement, as it sees fit) a master proof of claim for the claims of the Prepetition Secured Parties arising from the applicable Loan Documents in accordance with any order entered by the Court in relation to the establishment of a bar date in these Chapter 11 Cases; *provided further* that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtors.

30.     <u>Binding Effect of Interim Order</u>.  The provisions of this Interim Order shall be binding upon all parties in interest in the Chapter 11 Cases, including the Prepetition Secured Parties, any statutory committees that may be appointed in any Chapter 11 Cases, and the Debtors and their respective successors and assigns and shall inure to the benefit of the Prepetition Secured Parties, IEP, the Debtors and their respective successors and assigns.  This Interim Order shall bind any trustee hereafter appointed or elected for the Debtors' estates whether in the Chapter 11 Cases or any Successor Cases.  Such binding effect is a benefit of the Prepetition Secured Parties' bargain in connection with the Debtors' use of Cash Collateral and is an integral part of this Interim Order.

31.     <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order: (a) confirming any chapter 11 plan, (b) converting the Chapter 11 Cases to chapter 7 cases, or (c) dismissing the Chapter 11 Cases.  The terms and provisions of this Interim Order, including, for the avoidance of doubt, the provisions in paragraph 5 hereof, as well as the adequate protection granted pursuant to this Interim Order shall continue in full force and effect notwithstanding the entry of any of the foregoing orders, and the claims and liens provided for herein shall maintain their priority as provided by this Interim Order, the Loan Documents and to the maximum extent permitted by law until all of the Prepetition Secured Obligations are indefeasibly paid and satisfied in full in cash.

32.     <u>Effect of Dismissal</u>.  If the Chapter 11 Cases are dismissed or converted, such dismissal or conversion of the Chapter 11 Cases shall not affect the rights of the Prepetition Secured Parties and IEP (to the extent of the adequate protection provided hereunder) under this Interim Order, and all rights and remedies hereunder of the Prepetition Secured Parties and IEP (to the extent of adequate protection provided hereunder) shall remain in full force and effect as if

the Chapter 11 Cases had not been dismissed or converted.  If an order dismissing the Chapter 11 Cases is entered, the adequate protection granted to and conferred upon the Prepetition Secured Parties and IEP as of such date shall continue in full force and effect and this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the adequate protection provided for herein.   The provisions of this Interim Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any chapter 11 plan, dismissing the Chapter 11 Cases or converting the Chapter 11 Cases from chapter 11 to chapter 7.

33.     Findings of Fact and Conclusions of Law.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable effective as of the Petition Date immediately upon the entry thereof.  To the extent that any findings of fact are determined to be conclusions of law, such findings of fact shall be adopted as such; and to the extent that any conclusions of law are determined to be findings of fact, such conclusions of law shall be adopted as such.

34.     Order Effective upon Entry.   Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

35.     Retention of Jurisdiction.  This Court has and will retain jurisdiction and power to enforce this Interim Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order.

36.     Final Hearing.  A hearing on the Debtors' request for a Final Order approving the Motion on a final basis is scheduled for _____, 2022, at __:__ a.m./p.m. (prevailing Eastern time) before this Court.  Within three (3) business days after entry of this Interim Order,

the Debtors shall serve, or cause to be served, by first class mail or other appropriate method of service, a copy of the Motion (to the extent the Motion was not previously served on a party), together with this Interim Order, on (a) the Notice Parties, and (b) counsel to any Creditors' Committee. Any responses or objections to approval of the Motion on a final basis shall be made in writing, conform to the applicable Bankruptcy Rules, be filed with this Court, set forth the name of the objecting party, the basis for the objection, and the specific grounds therefor, and be served so as to be actually received no later than [_____], 2022, at 4:00 p.m. (prevailing Eastern time) by the following parties: (a) proposed counsel to the Debtors, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn.: Brian S. Hermann, bhermann@paulweiss.com, John T. Weber, jweber@paulweiss.com, and Alice Nofzinger, anofzinger@paulweiss.com and (ii) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn.: Pauline K. Morgan, pmorgan@ycst.com and Andrew L. Magaziner, amagaziner@ycst.com; (b) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware, 19801, Attn.: Joseph Cudia (joseph.cudia@usdoj.gov); (c) counsel to the Prepetition Agent, (i) Mayer Brown LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn.: Brian Trust, btrust@mayerbrown.com and Joaquin M. C de Baca, jcdebaca@mayerbrown.com, and (ii) Potter Anderson & Corroon LLP, 1313 North Market Street, P.O. Box 951, Wilmington, Delaware 19801, Attn.: Christopher M. Samis, csamis@potteranderson.com and L. Katherine Good, kgood@potteranderson.com; (d) counsel to IEP, Steptoe & Johnson LLP, 633 West Fifth Street, Suite 1900, Los Angeles, CA 90071, Attn: Jeffrey Reisner, jreisner@steptoe.com and Thomas Watson, twatson@steptoe.com; and (e) proposed counsel to any statutory committee appointed in these Chapter 11 Cases. If no

objections are filed to the Motion, this Court may enter a Final Order without further notice or hearing.

**<u>EXHIBIT A</u>**

**Approved Budget**

29210754.1

**Footprint Power Salem Harbor Development LP**
*13-Week Cash Flow Forecast*
*$ in 000's*

| | F'cst 1 [1] | F'cst 2 | F'cst 3 | F'cst 4 | F'cst 5 | F'cst 6 | F'cst 7 | F'cst 8 | F'cst 9 | F'cst 10 | F'cst 11 | F'cst 12 | F'cst 13 | F'cst Total |
| Week No. / Week Ending | 4/2/22 | 4/9/22 | 4/16/22 | 4/23/22 | 4/30/22 | 5/7/22 | 5/14/22 | 5/21/22 | 5/28/22 | 6/4/22 | 6/11/22 | 6/18/22 | 6/25/22 | 13 Weeks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | |
| Energy/Ancillary | - | - | - | - | 1,467 | - | - | - | 836 | - | - | - | - | 2,303 |
| Capacity | - | - | - | 12,591 | - | - | - | 12,591 | - | - | - | 12,591 | - | 37,774 |
| Other | - | - | 1,455 | - | - | - | - | - | - | - | - | - | - | 1,455 |
| **Total Receipts** | - | - | 1,455 | 12,591 | 1,467 | - | - | 12,591 | 836 | - | - | 12,591 | - | 41,532 |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Fuel | - | - | - | - | (1,294) | - | - | - | (594) | - | - | - | - | (1,888) |
| Transport | - | - | - | - | - | - | - | (1,458) | - | - | - | - | - | (1,458) |
| Emissions | - | - | - | - | - | - | - | - | (720) | - | (750) | - | - | (1,470) |
| Variable O&M | - | (19) | (10) | (25) | (4) | (2) | (2) | (78) | (3) | (2) | (10) | (2) | (12) | (170) |
| Fixed O&M | - | (103) | (783) | (82) | (1,409) | (323) | (323) | (904) | (324) | (323) | (322) | (330) | (888) | (6,115) |
| Major Maintenance | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| G&A | - | (85) | (10) | (96) | (80) | (35) | (10) | (96) | (35) | (2,080) | (10) | (10) | (121) | (2,668) |
| CapEx | - | (22) | (84) | (11) | (11) | (14) | (14) | (14) | (14) | (14) | (14) | (14) | (14) | (236) |
| First Day Relief Payments | - | (27) | - | - | - | - | - | - | - | - | - | - | - | (27) |
| **Total Operating Disbursements** | - | (256) | (887) | (214) | (2,798) | (374) | (349) | (2,549) | (1,690) | (2,419) | (1,106) | (355) | (1,035) | (14,032) |
| | | | | | | | | | | | | | | |
| **Total Cash Flow from Operations** | - | (256) | 568 | 12,377 | (1,330) | (374) | (349) | 10,042 | (854) | (2,419) | (1,106) | 12,236 | (1,035) | 27,500 |
| | | | | | | | | | | | | | | |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | |
| Cash Interest & Financing Fees | (1,161) | - | - | - | (1,157) | - | - | - | - | (1,265) | - | - | - | (3,583) |
| Principal Payments | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Professional Fees | - | - | (725) | - | (9) | (150) | (550) | (2,679) | - | (150) | (550) | - | (1,910) | (6,723) |
| Other Non-Operating | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Non-Operating Disbursements** | (1,161) | - | (725) | - | (1,166) | (150) | (550) | (2,679) | - | (1,415) | (550) | - | (1,910) | (10,306) |
| | | | | | | | | | | | | | | |
| **Net Cash Flow** | (1,161) | (256) | (157) | 12,377 | (2,496) | (524) | (899) | 7,363 | (854) | (3,834) | (1,656) | 12,236 | (2,945) | 17,194 |
| | | | | | | | | | | | | | | |
| **Total Available Cash Balance BoP** | 24,313 | 23,151 | 22,896 | 22,738 | 35,116 | 32,620 | 32,096 | 31,197 | 38,560 | 37,705 | 33,872 | 32,216 | 44,451 | 24,313 |
| Receipts | - | - | 1,455 | 12,591 | 1,467 | - | - | 12,591 | 836 | - | - | 12,591 | - | 41,532 |
| Disbursements | (1,161) | (256) | (1,612) | (214) | (3,964) | (524) | (899) | (5,228) | (1,690) | (3,834) | (1,656) | (355) | (2,945) | (24,338) |
| **Total Available Cash Balance EoP** | 23,151 | 22,896 | 22,738 | 35,116 | 32,620 | 32,096 | 31,197 | 38,560 | 37,705 | 33,872 | 32,216 | 44,451 | 41,507 | 41,507 |

*(1) Week 1 covers the period from March 24, 2022 to April 2, 2022*