## EXHIBIT A

### Bidding Procedures Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SALEM HARBOR POWER DEVELOPMENT LP (f/k/a Footprint Power Salem Harbor Development LP), *et al.*,[1] | Case No. 22-10239 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. No. _____** |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (II) SCHEDULING CERTAIN DATES RELATED THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (V) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Order"): (a) authorizing and approving the proposed bidding procedures attached as **Exhibit 1** to this Order (the "Bidding Procedures"); (b) scheduling dates and deadlines in connection with the sale of all or substantially all of the Debtors' Assets; (c) approving the form and manner of notice thereof, including the Sale Notice, substantially in the form attached hereto as **Exhibit 2**; (d) approving procedures for assuming and assigning the Debtors' executory contracts and unexpired leases in connection with the Sale Transaction, if any, (the "Assumption and Assignment Procedures"), including the Cure Notice, substantially in the form attached hereto as **Exhibit 3**; and (e) granting related relief; all as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP) (1360); Highstar Salem Harbor Holdings GP, LLC (f/k/a Highstar Footprint Holdings GP, LLC) (2253); Highstar Salem Harbor Power Holdings L.P. (f/k/a Highstar Footprint Power Holdings L.P.) (9509); Salem Harbor Power FinCo GP, LLC (f/k/a Footprint Power Salem Harbor FinCo GP, LLC) (N/A); Salem Harbor Power FinCo, LP (f/k/a Footprint Power Salem Harbor FinCo, LP) (9219); and SH Power DevCo GP LLC (f/k/a Footprint Power SH DevCo GP LLC) (9008).  The location of the Debtors' service address is:  c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite 475, Spring, Texas 77380.

[2] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion.

more fully set forth in the Motion; and this Court having considered the Motion and the Mazzucchi

Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and

this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this

Court having found that it may enter a final order consistent with Article III of the United States

Constitution; and this Court having found that venue of this proceeding and the Motion in this

district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the

relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

other parties in interest; and this Court having found that the Debtors' notice of the Motion and

opportunity for a hearing on the Motion were appropriate under the circumstances and no other

notice need be provided; and this Court having reviewed the Motion and having heard the

statements in support of the relief requested therein at a hearing, if any, before this Court

(the "Bidding Procedures Hearing"); and this Court having determined that the legal and factual

bases set forth in the Motion and on the record at the Bidding Procedures Hearing establish just

cause for the relief granted herein; and upon all of the proceedings had before this Court; and after

due deliberation and sufficient cause appearing therefor, **THIS COURT FINDS THAT**:

A.      The findings of fact and conclusions of law herein constitute this Court's

findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable

pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law,

they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted

as such.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory bases for the relief requested in the Motion and provided for herein are sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 2002-1 and 6004-1.

D.      As reflected in the certificate of service filed on [●] [D.I. [●]] (the "Certificate of Service"), the Motion and the notice of the Bidding Procedures Hearing was filed and served on the Court's electronic filing system as set forth in the Motion.  The notice of the Motion and of the Bidding Procedures Hearing is reasonable and sufficient in light of the circumstances and nature of the relief requested in the Motion, and no other or further notice of the Motion or the Bidding Procedures Hearing is necessary.  A reasonable and fair opportunity to object to the Motion and the relief granted in this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties under the circumstances.

E.      The Debtors have articulated good and sufficient reasons for this Court to authorize and approve the Bidding Procedures attached hereto as **Exhibit 1**, which are fair, reasonable, and appropriate under the circumstances and designed to maximize value for the benefit of the Debtors' estates.  The Debtors have demonstrated and proven to the satisfaction of this Court that the Bidding Procedures are reasonable and appropriate and, for purposes of testing market interest in the Assets in connection with the Plan, represent the best available method for maximizing value for the benefit of the Debtors' estates.  The Bidding Procedures balance the Debtors' interests in emerging efficiently from the chapter 11 cases while preserving the opportunity to attract value-maximizing proposals beneficial to the Debtors' estates, their creditors, and other parties in interest.

29233961.2

F.     The Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, including the date, time, and place of the Auction (if one is held), the Bidding Procedures, and certain dates and deadlines related thereto, and no other or further notice of the Auction shall be required.

G.     The Cure Notice is consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006, appropriate and reasonably calculated to provide Contract Counterparties to the Assigned Contracts with proper notice of the intended assumption and assignment of the Assigned Contracts, any cure amounts, and the Assumption and Assignment Procedures, and no other or further notice of such intention, the cure amounts, or the Assumption and Assignment Procedures, shall be required.

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is GRANTED as provided herein.

2.     All objections to the relief requested in the Motion that have not been withdrawn with prejudice, waived, or settled are overruled and denied on the merits with prejudice.

**A.     Important Dates and Deadlines**

3.     The following dates and deadlines are hereby approved, subject to the right of the Debtors to modify the following dates, *provided* that notice is given in accordance with the terms of this Order:

| Date and Time[3] | Event or Deadline |
|---|---|
| **June 3, 2022, at 5:00 p.m. (prevailing Eastern time)** | **Stalking Horse Motion Deadline**:  Deadline by which the Debtors must file a Stalking Horse Motion to be heard on shortened notice |

---

[3]    All dates and deadlines are subject to Bankruptcy Rule 9006.  Capitalized terms used in this summary table shall have the meanings ascribed to such terms in the Bidding Procedures.

| Date and Time[3] | Event or Deadline |
|---|---|
| **June 10, 2022, at 5:00 p.m. (prevailing Eastern time)** | **Bid Deadline**:  Deadline by which parties must submit Bids and submit Deposits |
| **June 13, 2022, at 5:00 p.m. (prevailing Eastern time)** | Deadline by which the Debtors will determine which Bids are Qualified Bids and notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder |
| **June 13, 2022, at 5:00 p.m. (prevailing Eastern time)** | Deadline by which the Debtors will provide each Qualified Bidder a schedule setting forth the Baseline Bid |
| **June 14, 2022, at 10:00 a.m. (prevailing Eastern time)** | **Auction** (if necessary), which will be held at Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 or via remote video |
| **June 21, 2022, at 4:00 p.m. (prevailing Eastern time)** | **Transaction Election Deadline**:  Deadline by which the Debtors will provide notice of the Transaction Election |
| **July 1, 2022, at 4:00 p.m. (prevailing Eastern time)** | **Assigned Contract Objection Deadline**:  Deadline by which all objections to the assumption and assignment of any executory contracts in connection with the Sale Transaction must be filed with the Court and served so as to be ***actually received*** by the appropriate notice parties |
| **July 11, 2022, at [●] (prevailing Eastern time)** <br> *Subject to the Court's availability, on such date the Debtors request. | **Confirmation Hearing**, which will be held before the Honorable Judge Mary F. Walrath, United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19801 or via remote video |

## B.    The Bidding Procedures

4.    The Bidding Procedures, attached hereto as **<u>Exhibit 1</u>**, are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed sale of the Assets.  The Debtors are authorized to solicit bids and conduct the Auction, if necessary, on the terms set forth in the Bidding Procedures. Any party desiring to bid for all or substantially all of the Assets shall comply with the Bidding Procedures

and this Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

5.      Each bidder participating at the Auction (if any) shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale, as set forth in the Bidding Procedures.

6.      The Debtors may, in consultation with the Consultation Parties: (a) determine which Qualified Bid is the highest or otherwise best offer for the Assets; (b) reject at any time before entry of an order of the Court approving the Successful Bid, any bid  that, in the discretion of the Debtors, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors; and (c) at or before the conclusion of the Auction, may impose such other terms and conditions upon Qualified Bidders as the Debtors determine, in consultation with the Consultation Parties, to be in the best interests of the Debtors' estates.

7.      If the Auction is cancelled or any deadline is modified, then the Debtors shall file a notice with the Court of such election within two (2) business days of the determination of such election by the Debtors, after consultation with the Consultation Parties.

8.      The Bidding Procedures and the notice thereof provide all parties in interest with notice of, and the opportunity to participate in, any potential Sale Transaction and/or Auction.

9.      For the avoidance of doubt, in the event the Debtors elect to implement the Sale Transaction, approval and consummation of any such Sale Transaction shall be subject to the entry of the Confirmation Order.

29233961.2

10.     Unless the Court orders otherwise, no person or entity, other than any Stalking Horse Bidder (if any), shall be entitled to any Expense Reimbursement, Breakup Fees, "topping," work, termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature in connection with such bid, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

**C.      The Stalking Horse and Bid Protections**

11.     Pursuant to the Bidding Procedures, the Debtors are authorized, but not directed, to select one or more bidders to act as the Stalking Horse Bidder and enter into a Stalking Horse Agreement with such Stalking Horse Bidder.

12.     In the event the Debtors select a Stalking Horse Bidder, as soon as reasonably practicable following the selection of a Stalking Horse Bidder, and by no later than 5:00 p.m. (prevailing Eastern time) on June 3, 2022, the Debtors shall file a motion (a "Stalking Horse Motion") to be heard on shortened notice seeking approval of such Stalking Horse Bidder, entry into the Stalking Horse Agreement, and provision of the Bid Protections with the Court and serve such motion by overnight mail, email or facsimile on (i) all persons known or reasonably believed to have expressed interest in acquiring the Assets since March 7, 2022, (ii) all non-Debtor parties to any executory contracts and/or unexpired leases proposed to be assumed and assigned pursuant to the Stalking Horse Agreement, and (iii) all parties that have requested notice in these chapter 11 cases as of the date of such motion and the Court shall hear such motion on an expedited basis and, in any case, by no later than June 9, 2022.  The Debtors shall provide at least three (3) business days' notice of any hearing on such motion and are hereby authorized to serve such motion and any applicable related pleadings on shortened notice, with objections due at 4:00 p.m. (prevailing Eastern Time) on the day prior to such hearing.

29233961.2

**D.    Credit Bidding**

13.    Any Qualified Bidder who has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured; *provided further* that any credit bid by a junior Secured Creditor shall contain a cash component sufficient to repay secured claims of any senior Secured Creditor.

14.    Notwithstanding anything to the contrary contained herein and absent a further order of the Court, the Prepetition Agent, on behalf of the Prepetition Secured Parties, shall have the right to credit bid all or any portion of the aggregate amount of the applicable outstanding secured obligations of the Prepetition Secured Parties pursuant to section 363(k) of the Bankruptcy Code and shall be deemed a Qualified Bidder with respect to its rights to acquire the Debtors' Assets by submitting a credit bid at the Auction, if any; *provided*, however, that the Prepetition Agent, on behalf of the Prepetition Secured Parties, shall provide written notice to the Debtors (which may be by email to Paul, Weiss, Rifkind, Wharton & Garrison LLP) by no later than the Bid Deadline affirming that the Prepetition Agent, on behalf of the Prepetition Secured Parties, intends to retain its right to credit bid at the Auction and upon receipt of such written notice, the Prepetition Agent and the Consenting Lenders shall no longer be considered Consultation Parties under the Bidding Procedures; *provided further* that to the extent the Prepetition Agent does not provide such written notice to the Debtors by the Bid Deadline, the Prepetition Agent, on behalf of the Prepetition Secured Parties, shall not be entitled to credit bid at the Auction and the Prepetition Agent and the Consenting Lenders shall continue to be considered Consultation Parties under the Bidding Procedures.  Any such credit bid by the Prepetition Agent, on behalf of the

Prepetition Secured Parties, will be considered a Qualified Bid to the extent it complies with section 363(k) of the Bankruptcy Code and the requirements of the Bidding Procedures; *provided* that nothing herein shall impair or prejudice the rights of any party in interest to object to such credit bid by the Prepetition Agent, on behalf of the Prepetition Secured Parties, at the Confirmation Hearing.

**E.     Notice Procedures**

15.     The form of Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved.

16.     No later than three (3) business days after entry of the Bidding Procedures Order (the "Mailing Date"), the Debtors shall serve the Sale Notice via first class mail, electronic mail, or overnight delivery on the following parties or their respective counsel, if known:  (a) the Office of the United States Trustee for the District of Delaware; (b) the counsel to any official committee of unsecured creditors appointed in these cases; (c) counsel to the Prepetition Agent; (d) all parties who have expressed a written interest in some or all of the Debtors' Assets; (e) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Debtors' Assets; (f) the Internal Revenue Service; (g) the United States Attorney for the District of Delaware; (h) the Environmental Protection Agency and similar state agencies for states in which the Debtors conduct business; (i) the Federal Energy Regulatory Commission; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.

17.     On the Mailing Date, or as soon thereafter as reasonably practicable, the Debtors will serve via first class mail or electronic mail, the Sale Notice, upon all other known creditors of the Debtors and all counterparties to the Debtors' executory contracts and unexpired leases.

29233961.2

18.    Within seven (7) business days of the Mailing Date, the Debtors will publish

the Sale Notice, with any modifications necessary for ease of publication, once in in the national

edition of one of the following newspapers to provide notice to any other potential interested

parties: *The Wall Street Journal*, *The New York Times*, or *USA Today*.  The Debtors shall also post

the Sale Notice, this Order, and the Bidding Procedures on the case website maintained by the

Debtors' claims and noticing agent.

**F.    The Assumption and Assignment Procedures**

19.    The form of Cure Notice, substantially in the form attached hereto as

**Exhibit 3**, is approved.

20.    The Assumption and Assignment Procedures set forth below regarding the

assumption and assignment of the Assigned Contracts proposed to be potentially assumed by the

Debtors and assigned to the Successful Bidder in connection with consummation of the Sale

Transaction (if any) pursuant to the Plan are approved.  For the avoidance of doubt, such

Assumption and Assignment Procedures shall apply solely in the event the Debtors elect to pursue

the Sale Transaction in connection with the Transaction Election.

(a)    **Cure Notice**.  At least seven (7) days in advance of the Assigned
Contract Objection Deadline (defined below) (the "Assumption and
Assignment Service Date"), the Debtors shall file with the Court and
serve via first class mail, electronic mail, or overnight delivery, the
Cure Notice on all Contract Counterparties.

(b)    **Content of Cure Notice**.  The Cure Notice shall notify the
applicable Contract Counterparties that the Assigned Contracts may
be subject to assumption and assignment in connection with the
consummation of the Sale Transaction pursuant to the Plan, and
contain the following information: (i) a list of the Assigned
Contracts; (ii) the applicable Contract Counterparties; (iii) the
Debtors' good faith estimates of the Cure Costs; and (iv) the
deadline by which any Contract Counterparty to an Assigned
Contract may file an objection to the proposed assumption,
assignment, cure, and/or adequate assurance and the procedures
relating thereto; *provided*, that service of a Cure Notice does not

Case 22-10239-MFW    Doc 69-2    Filed 03/31/22    Page 12 of 46

constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid.

(c)    **Objections**.  Objections, if any, to a Cure Notice must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served so as to be **actually received** by the Objection Notice Parties (as defined in the Bidding Procedures) prior to **July 1, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "Assigned Contract Objection Deadline"); *provided*, that the Debtors, subject to consultation with the Consultation Parties, may modify or extend the Assigned Contract Objection Deadline as the Debtors deem appropriate in the exercise of their reasonable business judgment in consultation with the Consultation Parties by filing a notice of such modification or extension on the Court's docket.

(d)    **Dispute Resolution**.  Any objection to the proposed assumption and assignment of an Assigned Contract, or Cure Costs, that remain unresolved as of the Confirmation Hearing, shall be heard at the Confirmation Hearing (or at such later date as may be fixed by the Court).  Upon entry of an order by the Court resolving such Assigned Contract Objection, the assignment, if approved by the Court, shall be deemed effective as of the closing of the Sale Transaction on the Plan Effective Date.  To the extent that any Assigned Contract Objection cannot be resolved by the parties, such Assigned Contract shall be assumed and assigned only upon satisfactory resolution of the Assigned Contract Objection, to be determined in the Successful Bidder's reasonable discretion.  To the extent an Assigned Contract Objection remains unresolved, the Assigned Contract may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Assigned Contract Objection after notice and a hearing.  If an Assigned Contract Objection is not satisfactorily resolved, the Successful Bidder may determine that such Assigned Contract should be rejected and not assigned, in which case the Successful Bidder will not be responsible for any Cure Costs in respect of such contract.

29233961.2

11

(e)     **Supplemental Cure Notice**.  The Debtors reserve the right at any time after the Assumption and Assignment Service Date, to: (i) supplement the Assigned Contract Schedule attached to the Cure Notice with previously omitted Assigned Contracts in accordance with the definitive agreement for the Sale Transaction; (ii) remove any Assigned Contracts from the list of executory contracts and unexpired leases ultimately selected as Assigned Contracts that the Successful Bidder proposes be assumed and assigned to it in connection with the consummation of the Sale Transaction pursuant to the Plan, or add to such list; and/or (iii) modify the previously stated Cure Cost associated with any Assigned Contracts (a "Supplemental Assigned Contracts Schedule").  In the event that the Debtors exercise any of the rights reserved above, the Debtors shall promptly serve a Supplemental Cure Notice by electronic transmission, hand delivery, or overnight mail on the applicable Contract Counterparty, and its counsel, if known, to each impacted Assigned Contract at the last known address available to the Debtors.  Each Supplemental Cure Notice will include the same information with respect to listed Assigned Contracts as was included in the Cure Notice.  Any Contract Counterparty listed on a Supplemental Cure Notice may file a Supplemental Assigned Contract Objection only if such objection is to the proposed assumption and assignment of the applicable Assigned Contract or the proposed Cure Costs, if any.  All Supplemental Assigned Contract Objections must: (i) state with specificity the legal and factual basis thereof as well as what Cure Costs the objecting party believes are required, if any; (ii) include appropriate documentation in support of the objection; and (iii) be filed with the Court and served so as to be **actually received** by the Objection Notice Parties by no later than 4:00 p.m. (prevailing Eastern Time) on the date that is the later of (A) the Assigned Contract Objection Deadline and (B) seven (7) days from the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice (the "Supplemental Assigned Contract Objection Deadline").

(f)     **Supplemental Hearing**.  If a Contract Counterparty files a Supplemental Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors will seek a Supplemental Assigned Contract Hearing to determine the Cure Costs, if any, and approve the assumption of the relevant Assigned Contracts.  If there is no such objection, then the Debtors will obtain entry of an order, including by filing a certification of no objection, fixing the Cure Costs and approving the assumption of any Assigned Contract listed on a Supplemental Cure Notice.

21.     If a Contract Counterparty does not file and serve an Assigned Contract Objection or Supplemental Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Cost, (a) the Cure Costs, if any, set forth in the Cure Notice (or Supplemental Cure Notice) shall be controlling, notwithstanding anything to the contrary in any Assigned Contract or any other document, and (b) the Contract Counterparty will be deemed to have consented to the assumption and assignment of the Assigned Contract and the Cure Costs, if any, and will be forever barred from objecting to the assumption and assignment of such Assigned Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Assigned Contract against the Debtors or the Successful Bidder, or the property of any of them.

22.     Any objections to the Successful Bidder's proposed form of adequate assurance of future performance must be filed no later than the later of the Assigned Contract Objection Deadline or Supplemental Assigned Contract Objection Deadline, as applicable, and such objections will be resolved at the Confirmation Hearing or Supplemental Assigned Contract Hearing, as applicable.  The Debtors may adjourn the resolution of any such objection to a later hearing.

23.     The inclusion of an Assigned Contract on the Assigned Contract Schedule, Supplemental Assigned Contract Schedule, and/or in a Supplemental Cure Notice will not: (a) obligate the Debtors to assume any Assigned Contract listed thereon or obligate the Successful Bidder to take assignment of such Assigned Contract; or (b) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease.  Only those Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to the definitive sale agreement with the Successful Bidder (including amendments or modifications

to such schedules in accordance with such agreement), approved in connection with Plan confirmation, will be assumed and assigned to the Successful Bidder.

**G.    Miscellaneous**

24.    The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such provision.

25.    In the event of any inconsistency between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

26.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

27.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

28.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

29.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

29233961.2

**EXHIBIT 1** to Bidding Procedures Order

**Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SALEM HARBOR POWER DEVELOPMENT LP (f/k/a Footprint Power Salem Harbor Development LP), *et al.*,[1] | Case No. 22-10239 (MFW) |
| Debtors. | (Jointly Administered) |

### BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS

On March 23, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

On [●], the Court entered an order [D.I. [●]] (the "Bidding Procedures Order"), by which the Court approved the following procedures (the "Bidding Procedures").[2]  These Bidding Procedures set forth the process by which the Debtors are authorized, in consultation with the Consultation Parties,[3] to conduct an auction (the "Auction"), if any, for the sale (the "Sale Transaction") of all or substantially all of the Debtors' assets (the "Assets") pursuant to the *Joint Chapter 11 Plan of Reorganization of Salem Harbor Power Development LP and Its Debtor Affiliates* [D.I. [●]] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").

The Plan contemplates a "toggle" structure, whereby the Debtors will elect to pursue either the Standalone Restructuring Transaction (as defined in the Bidding Procedures Motion) or, to the extent the Debtors, in consultation with the Consultation Parties, determine the Sale Transaction

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP) (1360); Highstar Salem Harbor Holdings GP, LLC (f/k/a Highstar Footprint Holdings GP, LLC) (2253); Highstar Salem Harbor Power Holdings L.P. (f/k/a Highstar Footprint Power Holdings L.P.) (9509); Salem Harbor Power FinCo GP, LLC (f/k/a Footprint Power Salem Harbor FinCo GP, LLC) (N/A); Salem Harbor Power FinCo, LP (f/k/a Footprint Power Salem Harbor FinCo, LP) (9219); and SH Power DevCo GP LLC (f/k/a Footprint Power SH DevCo GP LLC) (9008).  The location of the Debtors' service address is:  c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite 475, Spring, Texas 77380.

[2]  All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

[3]  "Consultation Parties" means the Prepetition Agent, on behalf of the Consenting Lenders, and any official committee appointed by the U.S. Trustee in these chapter 11 cases; *provided*, *however*, that during any period in which a Consultation Party has submitted a Qualified Bid and has become a Qualified Bidder, such Consultation Party shall no longer be considered a Consultation Party under these Bidding Procedures until such time such party withdraws its Bid.

(if any) will maximize value to the Debtors' estates and result in greater value than that implied by the Standalone Restructuring Transaction, the Sale Transaction (such election between the Standalone Restructuring Transaction and the Sale Transaction, the "Transaction Election").  The Transaction Election shall occur no later than Transaction Election Deadline (as defined below).

---

**Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Kroll Restructuring Administration LLC by calling toll-free at (844) 205-7534 (Domestic) or +1 (646) 813-2944, emailing salemharborinfo@primeclerk.com, or visiting the Debtors' restructuring website at https://cases.primeclerk.com/Salemharbor.**

---

To the extent that these Bidding Procedures require the Debtors to consult with any Consultation Party in connection with making a determination or taking any action, or in connection with any other matter related to these Bidding Procedures or at the Auction, if any, the Debtors shall do so in a regular and timely manner prior to making such determination or taking any such action; *provided*, *however*, that during any period in which a Consultation Party has submitted a Qualified Bid (as defined below) and has become a Qualified Bidder (as defined below), such Consultation Party shall no longer be considered a Consultation Party under these Bidding Procedures until such time such party withdraws its Bid.

## I.    Key Dates

These Bidding Procedures provide interested parties with the opportunity to qualify for and participate in the Auction to be conducted by the Debtors and to submit competing bids for the Assets.  The Debtors shall assist interested parties in conducting their respective due diligence investigations and shall accept Bids (as defined herein) until **June 10, 2022, at 5:00 p.m. (prevailing Eastern time)** (the "Bid Deadline").

The key dates for the sale process are as follows:[4]

| Date and Time[5] | Event or Deadline |
|---|---|
| **June 3, 2022, at 5:00 p.m. (prevailing Eastern time)** | **Stalking Horse Motion Deadline**:  Deadline by which the Debtors must file a Stalking Horse Motion to be heard on shortened notice |
| **June 10, 2022, at 5:00 p.m. (prevailing Eastern time)** | **Bid Deadline**:  Deadline by which parties must submit Bids and submit Deposits |
| **June 13, 2022, at 5:00 p.m. (prevailing Eastern time)** | Deadline by which the Debtors will determine which Bids are Qualified Bids and notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder |

---

[4]    These dates are subject to extension or adjournment as provided for herein.

[5]    All dates and deadlines are subject to Bankruptcy Rule 9006.  Capitalized terms used in this summary table have the meanings ascribed to such terms elsewhere in these Bidding Procedures.

| Date and Time[5] | Event or Deadline |
|---|---|
| **June 13, 2022, at 5:00 p.m. (prevailing Eastern time)** | Deadline by which the Debtors will provide each Qualified Bidder a schedule setting forth the Baseline Bid |
| **June 14, 2022, at 10:00 a.m. (prevailing Eastern time)** | **Auction** (if necessary), which will be held at Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 or via remote video |
| **June 21, 2022, at 4:00 p.m. (prevailing Eastern time)** | **Transaction Election Deadline**:  Deadline by which the Debtors will provide notice of the Transaction Election |
| **July 1, 2022, at 4:00 p.m. (prevailing Eastern time)** | **Assigned Contract Objection Deadline**:  Deadline by which all objections to the assumption and assignment of any executory contracts in connection with the Sale Transaction must be filed with the Court and served so as to be ***actually received*** by the appropriate notice parties |
| **July 11, 2022, at [●] (prevailing Eastern time)**<br><br>*Subject to the Court's availability, on such date the Debtors request. | **Confirmation Hearing**, which will be held before the Honorable Judge Mary F. Walrath, United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19801 or via remote video |

Except as expressly provided herein, unless otherwise approved by the Court, no modification, extension, waiver, or addition to these Bidding Procedures shall be inconsistent with the Bidding Procedures Order.

## II.     Submissions to the Debtors

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in the Auction, thereby competing to make the highest or otherwise best offer for the Assets.  The Debtors will offer the Assets for sale through the Auction.  The Debtors, in consultation with the Consultation Parties, may consider bids from multiple bidders (including multiple bids submitted by the same bidder) for the Assets.

## III.    Potential Bidder Requirements

To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity (other than the Prepetition Agent, on behalf of the Prepetition Secured Parties) interested in consummating a Sale Transaction (each, a "Potential Bidder") must deliver or have previously delivered to the Debtors the following documents (collectively, the "Preliminary Bid Documents"):

A.  An executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement");

B.  Sufficient evidence of the financial capability to consummate the Sale Transaction that is in a form acceptable to the Debtors, in consultation with the Consultation Parties; and

C.  Any other evidence the Debtors, in consultation with the Consultation Parties, may reasonably request to evaluate the Potential Bidder.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate the proposed Sale Transaction. Promptly after a Potential Bidder delivers Preliminary Bid Documents, the Debtors shall determine and notify each Potential Bidder as to whether such Potential Bidder has submitted acceptable Preliminary Bid Documents. Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors may submit bids to purchase the Debtors' Assets. The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the Preliminary Bid Documents.

## IV.    Due Diligence

Only Potential Bidders shall be eligible to receive due diligence information and access to the Debtors' electronic data room containing non-public information regarding the Debtors. **No Potential Bidder will be permitted to conduct any due diligence that includes confidential information without entering into a Confidentiality Agreement with the Debtors.** The Debtors will provide to each Potential Bidder that satisfies the foregoing commercially reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post all written due diligence provided to any Potential Bidder to the Debtors' electronic data room. For all Potential Bidders, the due diligence period will end on the Bid Deadline, and subsequent to the Bid Deadline, the Debtors shall have no obligation to furnish any due diligence information.

The Debtors shall not furnish any confidential information relating to the Assets, the liabilities of the Debtors, or the Sale Transaction to any person except to a Potential Bidder or to such Potential Bidder's duly authorized representatives to the extent provided in the applicable Confidentiality Agreement. The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided that* the Debtors may decline to provide such information to Potential Bidders who, at such time and in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale Transaction.

The Debtors also reserve the right to withhold any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Potential Bidder that the Debtors determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors.

Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder.

**All due diligence requests must be directed to the Debtors' [proposed] investment bankers, Houlihan Lokey Capital, Inc., 225 S. Sixth Street, Suite #4950, Minneapolis, Minnesota 55402, Attn: Matthew Mazzucchi (MMazzucchi@hl.com) and Spencer Anderson (SJAnderson@hl.com).**

A.    **Communications with Potential Bidders**

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive communications related to the Sale Transaction between and amongst Potential Bidders shall exclusively be through the Debtors and the Debtors' advisors.  Communications between and amongst Potential Bidders is expressly prohibited unless the Debtors expressly consent in writing to such communication.

B.    **Due Diligence of Potential Bidders**

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Potential Bidder to consummate the Sale Transaction.  Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with the Consultation Parties, to determine that such bidder is no longer a Potential Bidder or that a bid made by such Potential Bidder is not a Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures.  Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the chapter 11 cases, in each case in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable confidentiality agreement, the Debtors and the Debtors' advisors may disclose confidential information:  (i) with the prior written consent of such bidder; (ii) to the applicable bidder; (iii) in accordance with these Bidding Procedures, including to any Consultation Party; and (iv) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

V.    **Qualified Bidders**

A.    A "Qualified Bidder" is a Potential Bidder (i) who demonstrates the financial capability to consummate the Sale Transaction (as determined by the Debtors in consultation with the Consultation Parties), (ii) who demonstrates the ability to obtain all necessary governmental, licensing, regulatory, or other approvals necessary to consummate the Sale Transaction in a timely manner (as determined

by the Debtors in consultation with the Consultation Parties), (iii) whose Bid is a Qualified Bid, and (iv) that the Debtors, in consultation with the Consultation Parties, determine should be considered a Qualified Bidder.  Within two (2) business days after the Bid Deadline, the Debtors' advisors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder.

B.      If any Potential Bidder is determined by the Debtors, in consultation with the Consultation Parties, not to be a Qualified Bidder, the Debtors will refund such Qualified Bidder's Deposit and all accumulated interest thereon on or within five (5) business days after the Bid Deadline.

C.      Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, if any, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Without the written consent of the Debtors, in consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase their consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided that* any Qualified Bid may be improved at the Auction, if any, as set forth herein.  Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

## VI.    Stalking Horse Bidders and Bid Protections

The Debtors shall be authorized, but not obligated, in consultation with the Consultation Parties and in an exercise of their business judgment to:  (a) select one or more Qualified Bidders to act as stalking horse bidders in connection with the Sale Transaction (each, a "Stalking Horse Bidder" and any bid submitted by any Stalking Horse Bidder, a "Stalking Horse Bid"), and enter into a purchase agreement(s) with respect to a Sale Transaction with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"); and (b) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder provide (i) a breakup fee (the "Breakup Fee"), (ii) an expense reimbursement (the "Expense Reimbursement"), and/or (iii) other forms of bid protections (together with the Breakup Fee and the Expense Reimbursement, collectively, the "Bid Protections").  As soon as reasonably practicable following the selection of a Stalking Horse Bidder, and by no later than **5:00 p.m. (prevailing Eastern time) on June 3, 2022**, the Debtors shall file a motion (the "Stalking Horse Motion") to be heard on shortened notice seeking approval of such Stalking Horse Bidder, entry into the Stalking Horse Agreement, and provision of the Bid Protections with the Court and serve such motion by overnight mail, email or facsimile on (i) all persons known or reasonably believed to have expressed interest in acquiring the Assets since March 7, 2022, (ii) all non-Debtor parties to any executory contracts and/or unexpired leases proposed to be assumed and assigned pursuant to the Stalking Horse Agreement, and (iii) all parties that have requested notice in these chapter 11 cases as of the date of such motion, and the Court shall hear such motion on an expedited basis and, in any case, by no later than **June 9, 2022**.  The Debtors shall provide at least three (3) business days' notice of any hearing on such motion and shall be authorized to serve such motion and any applicable related pleadings on shortened notice,

with objections due at 4:00 p.m. (prevailing Eastern Time) on the day prior to such hearing.

## VII.    Bid Requirements

A proposal, solicitation, or offer (each, a "<u>Bid</u>") by a Qualified Bidder that is submitted in writing and satisfies each of the following requirements (the "<u>Bid Requirements</u>") as determined by the Debtors, in their reasonable business judgment and after consultation with the Consultation Parties, shall constitute a "<u>Qualified Bid</u>."  Any Stalking Horse Bid shall be deemed a Qualified Bid for all purposes under these Bidding Procedures, and at all times a Stalking Horse Bid shall be deemed a Qualified Bid and a Stalking Horse Bidder (if any) may participate in the Auction with respect to the Debtors' Assets.

    A.    **Assets.**  Each Bid must clearly state which Assets the Qualified Bidder is agreeing to acquire.

    B.    **Assumption of Obligations.**  Each Bid must clearly state which liabilities and obligations of the Debtors the Qualified Bidder is agreeing to assume.

    C.    **Purchase Price.**  Each Bid must clearly set forth the purchase price to be paid for the Assets, including and identifying separately any cash and non-cash components, which non-cash components shall be limited only to assumed liabilities and/or credit bids (the "<u>Purchase Price</u>").

    D.    **Qualified Bid Documents.**  Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid and shall include a schedule of assumed contracts applicable to the Bid, and a copy of the Bidder's Proposed APA (as defined below), including those related to the respective Purchase Price and Assets to be acquired by such Qualified Bidder, as well as all other material documents integral to such bid (the "<u>Qualified Bid Documents</u>").

    E.    **Proposed APA Requirements.**  Each Bid must be accompanied by an executed purchase agreement (the "<u>Proposed APA</u>"), the form of which will be provided by the Debtors to any Potential Bidder prior to the Bid Deadline and, in the case of an Auction with a Stalking Horse Bidder, a markup of the Stalking Horse Agreement, including the exhibits, schedules, and ancillary agreements related thereto, and any other related material documents integral to such Bid pursuant to which the Potential Bidder proposes to effectuate the proposed Sale Transaction, along with copies that are marked to reflect any amendments and modifications from the form purchase agreement provided to such Potential Bidder.  Each Proposed APA must provide a representation that the Qualified Bidder will:  (i) make all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "<u>HSR Act</u>"), if applicable, and submit and pay the fees associated with all such necessary filings under the HSR Act as soon as reasonably practicable; (ii) make all necessary filings with, and obtain all necessary approvals authorizations from, the Federal Energy Regulatory Commission ("<u>FERC</u>") under the Federal Power Act (the "<u>FPA</u>"); (iii) make all necessary filings with, and obtain

all necessary approvals from, any applicable "state commission" as defined in 18 C.F.R. § 1.101(k) (each, a "<u>PUC</u>"), and submit and pay the fees associated with all such necessary obligations to such PUCs, as applicable, as soon as reasonably practicable; (iv) make all necessary filings with, and obtain all necessary approvals from, ISO New England Inc. ("<u>ISO-NE</u>"); (v) make all necessary filings with, and obtain all necessary approvals from, the Federal Communications Commission ("<u>FCC</u>"), and submit and pay the fees associated with all such necessary obligations to the FCC as soon as reasonably practicable; and (vi) make all necessary filings with, and obtain all necessary approvals from, the Committee on Foreign Investment in the United States ("<u>CFIUS</u>"), if applicable, and submit and pay the fees associated with all such necessary obligations to CFIUS, if applicable, as soon as reasonably practicable ((i)-(vi) collectively, the "<u>APA Regulatory Requirements</u>").  For the avoidance of doubt, the timing and likelihood of satisfying the APA Regulatory Requirements shall be a consideration in determining the highest or otherwise best Bid.

F.    **Deposit.**  Each Bid must be accompanied by a cash deposit (the "<u>Deposit</u>") in the amount equal to ten percent (10%) of the cash consideration of the Purchase Price of the Bid, to be held in an interest-bearing escrow account to be identified and established by the Debtors; *provided* that no Deposit shall be required for any Bid that is solely comprised of a credit bid.  To the extent a Qualified Bid is modified before, during, or after the Auction in any manner that increases the Purchase Price contemplated by such Qualified Bid, the Debtors reserve the right to require that such Qualified Bidder increase its Deposit so that it equals ten percent (10%) of the increased cash consideration of the Purchase Price.

G.    **Committed Financing.**  To the extent that a Bid is not accompanied by evidence of the Qualified Bidder's capacity to consummate the sale set forth in its Bid with cash on hand, each Bid must include unconditional committed financing from a reputable financing institution, documented to the satisfaction of the Debtors, in consultation with the Consultation Parties, that demonstrates that the Qualified Bidder has:  (i) received sufficient debt and/or equity funding commitments to satisfy the Qualified Bidder's Purchase Price and other obligations under its Bid; and (ii) adequate working capital financing or resources to finance going-concern operations for the Assets and the proposed transactions.    Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors, in consultation with the Consultation Parties.

H.    **Contingencies; No Financing or Diligence Outs.**  A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall be acceptable to the Debtors in their business judgment, after consultation with the Consultation Parties. The Qualified Bidders are expected to have completed all of their due diligence by the Bid Deadline,

including all business, legal, accounting, and other confirmatory diligence. The extent and nature of any remaining due diligence should be set forth in a specific list attached to each Bid.

I.      **Identity.**  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Qualified Bidder if such Qualified Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such Bid), and the complete terms of any such participation. Each Bid must also fully disclose whether any current or former officer, director, or equity holder of the Debtors, or any entity affiliated with any current or former officer, director, or equity holder of the Debtors, will be bidding or otherwise participating in connection with such Bid. Under no circumstances shall any undisclosed insiders, principals, equity holders, or financial backers of the Debtors be associated with any Bid (including any Overbid at the Auction). Each Bid must also include contact information for the specific persons and counsel whom Houlihan Lokey Capital, Inc. and Paul, Weiss, Rifkind, Wharton & Garrison LLP should contact regarding such Bid. All information disclosed pursuant to this paragraph shall be made available by the Debtors to the Consultation Parties promptly upon the Debtors' receipt thereof, but in any event no later than one (1) business day following the Bid Deadline.

J.      **Demonstrated Financial Capacity.**  A Qualified Bidder must have, in the Debtors' business judgment, after consultation with the Consultation Parties, the necessary financial capacity to consummate the proposed transactions required by its Bid.

K.      **Adequate Assurance of Future Performance.**  Each Bid must: (i) identify the executory contracts and unexpired leases to be assumed and assigned in connection with the proposed Sale Transaction; (ii) provide for the payment of all cure costs related to such executory contracts and unexpired leases by the Qualified Bidder; and (iii) demonstrate, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, that the Qualified Bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases, as required by section 365 of the Bankruptcy Code.

L.      **Time Frame for Closing.**  A Bid by a Qualified Bidder must be reasonably likely (based on availability of financing, antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors, after consultation with the Consultation Parties.

M.      **Binding and Irrevocable.**  A Qualified Bidder's Bid for the Assets shall be irrevocable unless and until the Debtors accept a higher Bid for the Assets and such Qualified Bidder is not selected as the Backup Bidder (as defined below) for the Assets.

N.   **Expenses; Disclaimer of Fees.**  Each Bid, other than a Stalking Horse Bid, if any, must disclaim any right to receive a fee analogous to a Breakup Fee, Expense Reimbursement, termination fee, or any other similar form of compensation.  For the avoidance of doubt, no Qualified Bidder (other than a Stalking Horse Bidder, if any, solely to the extent set forth in such Stalking Horse Agreement) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction, if any, or otherwise, a Breakup Fee, Expense Reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid, each Qualified Bidder is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

O.   **Authorization.**  Each Bid must contain evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors, in consultation with the Consultation Parties) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

P.   **As-Is, Where-Is.**  Each Bid must include a written acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's Proposed APA; and (iv) the sale of the Assets is on an "as-is, where-is" basis.

Q.   **Adherence to Bid Procedures.**  By submitting its Bid, each Qualified Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction, if any.

R.   **Government Approvals.**  Each Bid must include a description of all governmental, licensing, regulatory, or other approvals or consents that are required to close the proposed Sale Transaction (including the APA Regulatory Requirements), together with evidence satisfactory to the Debtors, after consultation with the Consultation Parties, of the ability to obtain such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals.

S.   **Government Approvals Time Frame.**  Each Bid must set forth an estimated time frame for obtaining any required internal, governmental, licensing, regulatory, or other approvals or consents (including the APA Regulatory Requirements) for consummating any proposed Sale Transaction.

T.    **Consent to Jurisdiction.**  The Qualified Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of bids, the Auction, if any, the construction and enforcement of these Bidding Procedures, the Sale Transaction documents, and the consummation of any Sale Transaction, as applicable.

U.    **Bid Deadline.**  Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before **5:00 p.m. (prevailing Eastern Time) on June 10, 2022** by:

(i)    **Debtors' [Proposed] Counsel**.  Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Brian S. Hermann (bhermann@paulweiss.com), John T. Weber (jweber@paulweiss.com), and Alice Nofzinger (anofzinger@paulweiss.com).

(ii)    **Debtors' [Proposed] Financial Advisors**.  AP Services, LLC, 300 N. LaSalle Street, Suite #1900, Chicago, Illinois 60654, Attn: John R. Castellano (jcastellano@alixpartners.com) and David Hindman (dhindman@alixpartners.com).

(iii)    **Debtors' [Proposed] Investment Bankers**.  Houlihan Lokey Capital, Inc., 225 S. Sixth Street, Suite #4950, Minneapolis, Minnesota 55402, Attn: Matthew Mazzucchi (MMazzucchi@hl.com) and Spencer Anderson (SJAnderson@hl.com).

For the avoidance of doubt, the Debtors, in consultation with the Consultation Parties, expressly reserve the right to notify a Potential Bidder that its bid is not a Qualifying Bid (a "Non-Qualifying Bid") and permit a Potential Bidder to revise or supplement a Non-Qualifying Bid to make it a Qualified Bid.  Notwithstanding the foregoing, Qualified Bidders shall be prohibited from including in their Bid a proposed use of any cash component of the Purchase Price that would be received by the Debtors if such Bidder were the Successful Bidder.

## VIII.   Right to Credit Bid

Any Qualified Bidder who has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; *provided that* a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured; and *provided further that* any credit bid by a junior Secured Creditor shall contain a cash component sufficient to repay secured claims of any senior Secured Creditor.

Notwithstanding anything to the contrary contained herein and absent a further order of the Court, the Prepetition Agent, on behalf of the Prepetition Secured Parties, shall have the right to credit bid all or any portion of the aggregate amount of the applicable outstanding secured obligations of the Prepetition Secured Parties pursuant to section 363(k) of the Bankruptcy Code and shall be deemed a Qualified Bidder with respect to its rights to acquire the Debtors' Assets by

29233965.2

submitting a credit bid at the Auction, if any; *provided*, however, that the Prepetition Agent, on behalf of the Prepetition Secured Parties, shall provide written notice to the Debtors (which may be by email to Paul, Weiss, Rifkind, Wharton & Garrison LLP) by no later than the Bid Deadline affirming that the Prepetition Agent, on behalf of the Prepetition Secured Parties, intends to retain its right to credit bid at the Auction and upon receipt of such written notice, the Prepetition Agent and the Consenting Lenders shall no longer be considered Consultation Parties under these Bidding Procedures; *provided further* that to the extent the Prepetition Agent does not provide such written notice to the Debtors by the Bid Deadline, the Prepetition Agent, on behalf of the Prepetition Secured Parties, shall not be entitled to credit bid at the Auction and the Prepetition Agent and the Consenting Lenders shall continue to be considered Consultation Parties under the Bidding Procedures.  Any such credit bid by the Prepetition Agent, on behalf of the Prepetition Secured Parties, will be considered a Qualified Bid to the extent it complies with section 363(k) of the Bankruptcy Code and the requirements of this Section VIII of the Bidding Procedures; *provided that* nothing herein shall impair or prejudice the rights of any party in interest to object to such credit bid by the Prepetition Agent, on behalf of the Prepetition Secured Parties, at the Confirmation Hearing.

## IX.    Auction

The Debtors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' judgment, after consultation with the Consultation Parties, the highest or otherwise best Qualified Bid for the Assets (the "Baseline Bid"), and provide copies of the applicable Qualified Bid Documents supporting the applicable Baseline Bid to each Qualified Bidder at or prior to the Auction.  In the event a Stalking Horse Bidder, if any, is selected, the Baseline Bid shall include the amount provided for in the Stalking Horse Bid, *plus* the amount of the Bid Protections.  When determining the highest or otherwise best Qualified Bid and selecting the winning bidder, as compared to other Qualified Bids, the Debtors may, in consultation with the Consultation Parties, consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the number, type, and nature of any changes to the form of Proposed APA and/or the Stalking Horse Agreement, if applicable, requested by the Qualified Bidder, including the type and amount of Assets sought and obligations to be assumed in the Qualified Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close the Sale Transaction (including obtaining all necessary governmental, licensing, regulatory, or other approvals (including the APA Regulatory Requirements)) and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; and (e) the tax consequences of such Qualified Bid (collectively, the "Bid Assessment Criteria").

If no Qualified Bids other than a Stalking Horse Bid, if any, are received by the Bid Deadline, then the Debtors may cancel the Auction, and may decide, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, to designate such Stalking Horse Bid, if any, as the Successful Bid, and, subject to the Transaction Election, pursue entry of the order approving a sale of the Debtors' Assets to such Stalking Horse Bidder pursuant to the Stalking Horse Agreement.  The Debtors shall promptly file notice of any cancellation of the Auction and designation of such Stalking Horse Bid as the Successful Bid with the Court, subject to the Transaction Election.

The Auction, if any, shall take place at **10:00 a.m. (prevailing Eastern Time) on June 14, 2022** at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 or via remote video, or such later date and time as selected by the Debtors after consultation with the Consultation Parties. The Auction, if any, shall be conducted in a timely fashion according to the following procedures:

### A.    The Debtors Shall Conduct the Auction

The Debtors and their professionals shall direct and preside over the Auction, if any, in consultation with the Consultation Parties. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid for the Assets. The Debtors explicitly reserve the right, in their business judgment and after consultation with the Consultation Parties, to exercise their discretion in conducting the Auction, including determining whether to adjourn the Auction to facilitate separate discussions between Qualified Bidders, the Debtors, and the Consultation Parties, as applicable. The Debtors shall maintain a written transcript of the Auction and all Bids made and announced at the Auction, if any, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

Only Qualified Bidders and their legal and financial advisors and the members and advisors of any official committee appointed by the Office of the United States Trustee pursuant to section 1102 of the Bankruptcy Code, shall be entitled to attend the Auction, if any, and the Qualified Bidders shall appear at the Auction and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders shall be entitled to bid at the Auction, if any.

### B.    Terms of Overbids

"Overbid" means any bid made at the Auction, if any, by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid. Each applicable Overbid must comply with the following conditions:

(i)    **Minimum Overbid Increment.** The initial Overbid(s) for all of the Debtors' Assets shall provide for total consideration to the Debtors with a value that (i) satisfies the Bid Protections, if any, and (ii) exceeds the value of the consideration under the Baseline Bid by an incremental amount that is not less than $1 million, and successive Overbids higher than the previous bid, as the Debtors shall, in consultation with the Consultation Parties, announce at the Auction (the "Minimum Overbid Increment").

The Debtors reserve the right, in consultation with the Consultation Parties, to announce reductions or increases in the Minimum Overbid Increment at any time prior to or during the Auction, if any. Additional consideration in excess of the amount set forth in the respective Baseline Bid may include: (a) cash; and (b) in the case of a Bid by a Secured Creditor, a credit bid of up to the full amount of such Secured Creditor's allowed secured claim; *provided*, *however*, that nothing herein shall impact any parties' rights with respect to challenges to the liens or claims of a Secured Creditor.

(ii) **Conclusion of Each Overbid Round.** Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, after consultation with the Consultation Parties, extend from time to time, the "Overbid Round Deadline") by which time any Overbids must be submitted to the Debtors.

(iii) **Overbid Alterations.** An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Bid or Overbid, as determined in the Debtors' reasonable business judgment after consultation with the Consultation Parties, but shall otherwise comply with the terms of these Bidding Procedures.

(iv) **Announcing Highest Bid.** Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors have identified in the initial applicable Overbid round, an Overbid as being higher or otherwise better than the initial Minimum Overbid, or in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "Prevailing Highest Bid"). The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid, as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

C.    **Consideration of Overbids**

The Debtors reserve the right, in their reasonable business judgment, and after consultation with the Consultation Parties, to adjourn the Auction, if any, one (1) or more times to, among other things: (i) facilitate discussions between and amongst the Debtors, the Qualified Bidders, and the Consultation Parties, as appropriate; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtors and the Consultation Parties with such additional evidence as the Debtors, in their reasonable business judgment, after consultation with the Consultation Parties, may require that the Qualified Bidder has sufficient resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount.

D.    **Closing the Auction**

(i) The Auction, if any, shall continue until there is one (1) Bid for the Assets that the Debtors determine, in their reasonable business judgment, after consultation with the Consultation Parties, to be the highest or otherwise best Bid for all Assets. Such Bid shall be declared the "Successful Bid" and such Qualified Bidder, the "Successful Bidder," at which point the Auction will be closed. The Auction, if any, shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance

by the Debtors of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

(ii)     The Successful Bidder shall, within one (1) business day after the conclusion of the Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Successful Bid. The Successful Bid may not be assigned to any party without the consent of the Debtors after consulting with the Consultation Parties.

(iii)    The Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction, if any, and any such Bids or Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

(iv)     As soon as reasonably practicable after closing the Auction, if any, and in any event not less than one (1) business day following closing of the Auction, the Debtors shall cause a notice of Successful Bid and Successful Bidder, and the Qualified Bid Documents for the Successful Bid and Backup Bid (as defined below), to be filed with the Court.

**E.      No Collusion; Good-Faith *Bona Fide* Offer**

Each Qualified Bidder participating at the Auction, if any, will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

**X.     Backup Bidder**

A.      Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted for the Assets, the Qualified Bidder with the next-highest or otherwise second-best Bid at the Auction for such Asset(s), as determined by the Debtors in the exercise of their reasonable business judgment, after consultation with the Consultation Parties (the "Backup Bid"), shall be required to serve as a backup bidder (the "Backup Bidder") for such Asset(s), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

B.      The identity of the Backup Bidder and the amount and material terms of the Backup Bid shall be announced by the Debtors at the conclusion of the Auction, if any, at the same time the Debtors announce the identity of the Successful Bidder. The Backup Bidder shall be required to keep its Bid (or if the Backup Bidder submits one (1) or more Overbids at the Auction, its final Overbid) open and irrevocable until the closing of the Sale Transaction with the applicable Successful Bidder. The Backup Bidder's Deposit shall be held in escrow until the closing of the Sale Transaction with the applicable Successful Bidder.

C.    If the Successful Bidder fails to consummate the approved Sale Transaction contemplated by its Successful Bid, the Debtors may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed the Successful Bidder for all purposes.  The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party.  In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.  For the avoidance of doubt, to the extent the defaulting Successful Bidder is a Stalking Horse Bidder, no Bid Protections shall be payable by the Debtors to such defaulting Successful Bidder.

All Qualified Bids (other than the Successful Bid and the Backup Bid) shall be deemed rejected by the Debtors on and as of the date of approval of the Successful Bid and Backup Bid by the Court.

## XI.    Return of Deposits

The Deposits of all Qualified Bidders shall be held in one (1) or more interest-bearing segregated accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Court or as expressly provided below.  The Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the Auction.  The Deposit of the Backup Bidder, if any, shall be returned to such Backup Bidder no later than three (3) business days after the closing of the Sale Transaction with the Successful Bidder.  Upon the return of the Deposits, their respective owners shall receive any and all interest that will have accrued thereon.  If the Successful Bidder timely closes on its transaction, its Deposit shall be credited towards the applicable purchase price(s).  If the Successful Bidder (or Backup Bidder, if applicable) fails to consummate the Sale Transaction because of a breach or failure to perform on the part of the Successful Bidder (or Backup Bidder, if applicable), the Debtors will not have any obligation to return the Deposit deposited by the Successful Bidder (or Backup Bidder, if applicable), and such Deposit shall irrevocably become property of the Debtors.

## XII.    Confirmation Hearing; Approval of Assumption/Assignment of Contracts in Connection with Consummation of the Sale Transaction Pursuant to the Plan

Solely to the extent the Transaction Election is made for a Sale Transaction, a hearing to consider approval of the sale of the Assets to the Successful Bidder pursuant to the Plan (the "**Confirmation Hearing**") is presently scheduled to take place on **[●] [a.m.] (prevailing Eastern Time) on July 11, 2022**, or as soon thereafter as counsel may be heard, before the Honorable Mary F. Walrath, in the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19801 or via remote video.

**The Confirmation Hearing may be continued to a later date by the Debtors, after consultation with the Consultation Parties, by sending notice prior to, or making an**

announcement at, the **Confirmation Hearing.  No further notice of any such continuance will be required to be provided to any party.**

At the Confirmation Hearing, the Debtors, in consultation with the Consultation Parties, shall present the Successful Bid to the Court for approval.  The Successful Bidder shall appear at the Confirmation Hearing and be prepared to have a representative testify in support of its Successful Bid and such Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned as part of the proposed Sale Transaction (the "Assigned Contracts").

Objections, if any, to the assumption and assignment of the Assigned Contracts pursuant to the Plan in connection with the Sale Transaction and any related cure amounts (each, an "Assigned Contract Objection"), shall (a) be in writing; (b) comply with the applicable provisions of the Bankruptcy Rules, the Local Rules, and any order governing the administration of these chapter 11 cases; (c) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof, (d) be filed with the Court in accordance with the customary practices of the Court; and (e) be served upon the Objection Notice Parties (as defined below) so as to be actually received by such parties by no later than **July 1, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "Assigned Contract Objection Deadline"); *provided*, *however*, that the Debtors may extend the Assigned Contract Objection Deadline as the Debtors deem appropriate in the exercise of their reasonable business judgment and in consultation with the Consultation Parties.

If a timely Objection cannot otherwise be resolved by the parties, such Objection shall be heard by the Court at the Confirmation Hearing or such other time in accordance with the Bidding Procedures Order.  For purposes of these Bidding Procedures, the "Objection Notice Parties" include:

A.   **Debtors**.   Salem Harbor Power Development, LP, c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite #475, Spring, Texas 77380 Attn: John Lambert (jlambert@tateswood.com).

B.   **Debtors' [Proposed] Counsel**.  Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Brian S. Hermann (bhermann@paulweiss.com), John T. Weber (jweber@paulweiss.com), and Alice Nofzinger (anofzinger@paulweiss.com).

C.   **Debtors' [Proposed] Co-Counsel**.  Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801, Attn: Andrew L. Magaziner (amagaziner@ycst.com) and Katelin Morales (kmorales@ycst.com).

D.   **United States Trustee.**  United States Department of Justice, Office of the United States Trustee, 844 N. King Street, Suite #2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Joseph Cudia.

29233965.2

E.     **Counsel to the Prepetition Agent**. Mayer Brown LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn: Brian Trust (btrust@mayerbrown.com) and Joaquin M. C De Baca (jcdebaca@mayerbrown.com).

F.     **Delaware Counsel to the Prepetition Agent.** Potter Anderson & Corroon LLP, 1313 N. Market Street, P.O. Box 951, Wilmington, Delaware 19801, Attn: Christopher M. Samis (csamis@potteranderson) and L. Katherine Good (kgood@potteranderson.com).

G.     **Counsel to Any Official Committee Appointed by the Office of the United States Trustee, if Any.**

H.     **Such Other Parties as the Court May Order.**

## XIII.   Fiduciary Out

Nothing in these Bidding Procedures shall require the board of managers or such similar governing body of any of the Debtors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of managers or such similar governing body determines, after consulting with counsel, that taking such action, or refraining from taking such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures, through the date of the Auction, nothing in these Bidding Procedures or the Bidding Procedures Order shall diminish the right of the Debtors and their respective managers, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving any or all of the Debtors' Assets (each an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to any Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these chapter 11 cases (including any official committee and the United States Trustee), or any other entity regarding any Alternate Proposals.

## XIV.   Reservation of Rights

The Debtors reserve their rights to modify these Bidding Procedures, in their reasonable business judgment and after consultation with the Consultation Parties, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, if any, additional customary terms and conditions on the sale of the Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction, if any, at the Auction without further notice; (c) modifying the Bidding Procedures and/or adding procedural rules or methods of bidding that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) waiving, or imposing,

additional terms and conditions set forth herein with respect to Potential Bidders; (f) rejecting any or all bids; and (g) managing information provided to certain Potential Bidders where the protection of such information is, in the Debtors' reasonable business judgment, of critical importance to the Debtors in maintaining their competitive position; *provided*, *however*, that any modification, extension, waiver, or addition to the Bidding Procedures shall not be inconsistent with the Bidding Procedures Order, unless otherwise ordered by the Court.

**EXHIBIT 2** to Bidding Procedures Order

**Form of Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SALEM HARBOR POWER DEVELOPMENT LP (f/k/a Footprint Power Salem Harbor Development LP), *et al.*,[1] | Case No. 22-10239 (MFW) |
| | (Jointly Administered) |
| Debtors. | |

### NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' ASSETS

**PLEASE TAKE NOTICE** that on [●], 2022, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (II) Scheduling Certain Dates Related Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief* [D.I. [●]] (the "Bidding Procedures Order"),[2] authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to conduct an auction (the "Auction"), if any, to select the party or parties to purchase all or substantially all of the Debtors' assets (the "Assets" and such transaction, the "Sale Transaction") pursuant to the *Joint Chapter 11 Plan of Reorganization of Salem Harbor Power Development LP and Its Debtor Affiliates* [D.I. [●]] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"). The Auction will be governed by the bidding procedures approved pursuant to the Bidding Procedures Order (attached to the Bidding Procedures Order as Exhibit 1, the "Bidding Procedures").

The Plan contemplates a "toggle" structure, whereby the Debtors will elect to pursue either a standalone restructuring transaction (the "Standalone Restructuring Transaction") or, to the extent the Debtors, in consultation with the Consultation Parties (as defined in the Bidding Procedures), determine the Sale Transaction (if any) will maximize value to the Debtors' estates and result in greater value than that implied by the Standalone Restructuring Transaction, the Sale Transaction (such election between the Standalone Restructuring Transaction and the Sale

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP) (1360); Highstar Salem Harbor Holdings GP, LLC (f/k/a Highstar Footprint Holdings GP, LLC) (2253); Highstar Salem Harbor Power Holdings L.P. (f/k/a Highstar Footprint Power Holdings L.P.) (9509); Salem Harbor Power FinCo GP, LLC (f/k/a Footprint Power Salem Harbor FinCo GP, LLC) (N/A); Salem Harbor Power FinCo, LP (f/k/a Footprint Power Salem Harbor FinCo, LP) (9219); and SH Power DevCo GP LLC (f/k/a Footprint Power SH DevCo GP LLC) (9008). The location of the Debtors' service address is: c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite 475, Spring, Texas 77380.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

—

Transaction, the "<u>Transaction Election</u>").  The Transaction Election shall occur no later than Transaction Election Deadline (as defined in the Bidding Procedures).

> **Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Kroll Restructuring Administration LLC by calling toll-free at (844) 205-7534 (Domestic) or +1 (646) 813-2944 (International), emailing salemharborinfo@primeclerk.com, or visiting the Debtors' restructuring website at https://cases.primeclerk.com/SalemHarbor.**

PLEASE TAKE FURTHER NOTICE that the **Bid Deadline is June 10, 2022 at 5:00 p.m. (prevailing Eastern Time)**, and that any person or entity who wishes to participate in the Auction, if any, must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

PLEASE TAKE FURTHER NOTICE that the Debtors, to the extent necessary, intend to conduct the Auction, if any, at which they will consider proposals submitted to the Debtors and their advisors, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **June 14, 2022 at 10:00 a.m. (prevailing Eastern Time)**, at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 or by remote video, or such later date and time as selected by the Debtors after consultation with the Consultation Parties.

PLEASE TAKE FURTHER NOTICE that the Debtors reserve the right to modify the Bidding Procedures, in their reasonable business judgment in accordance with the Bidding Procedures.

PLEASE TAKE FURTHER NOTICE that **July 11, 2022 at [●], 2022 (prevailing Eastern Time) or as soon thereafter as the Debtors may be heard**, shall be the date and time for the hearing at which the Court will consider approval of the Sale Transaction, if any, in connection with confirmation of the Plan (the "<u>Confirmation Hearing</u>").  The deadline to object to confirmation of the Plan shall be set forth in the Court's order approving the Debtors' **The Confirmation Hearing may be continued to a later date by the Debtors, after consultation with the Consultation Parties, by sending notice prior to, or making an announcement at, the Confirmation Hearing.  No further notice of any such continuance will be required to be provided to any party.**

PLEASE TAKE FURTHER NOTICE that the deadline to object to confirmation of the Plan, including consummation of the proposed Sale Transaction, if any, pursuant to the Plan, shall be set forth in the Court's order approving the *Disclosure Statement for Joint Chapter 11 Plan of Salem Harbor Power Development LP and Its Debtor Affiliates* [D.I. [●]] (as amended, supplemented, or otherwise modified from time to time, the "<u>Disclosure Statement</u>") and related solicitation and notice procedures.

PLEASE TAKE FURTHER NOTICE that, solely to the extent the Transaction Election is made for the Sale Transaction, at the Confirmation Hearing, the Debtors, in consultation with the Consultation Parties, shall present the Successful Bid to the Court for approval.  The Successful Bidder shall appear at the Confirmation Hearing and be prepared to have a representative testify

in support of its Successful Bid and such Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned as part of the proposed Sale Transaction (the "Assigned Contracts").

      **PLEASE TAKE FURTHER NOTICE** that the deadline to object to the assumption and assignment of the Assigned Contracts pursuant to the Plan in connection with the Sale Transaction and any related cure amounts (the "Assigned Contract Objection Deadline") is set for **July 1, 2022 at 4:00 p.m. (prevailing Eastern Time)**.  Any objection must: (a) be in writing; (b) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, and any order governing the administration of these chapter 11 cases; (c) state with specificity the nature of the objection and, if the objection pertains to the proposed cure costs, state the cure amount alleged to be owed to the objecting contract counterparty, together with any applicable and appropriate documentation in support thereof; and (d) be filed with the Court in accordance with the customary practices of the Court and served and **actually received** by the no later than the Assigned Contract Objection Deadline by the Court and the following parties: (i) the Debtors, Salem Harbor Power Development LP, c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite #475, Spring, Texas 77380 Attn: John Lambert (jlambert@tateswood.com); (ii) the Debtors' [proposed] counsel, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Brian S. Hermann (bhermann@paulweiss.com), John T. Weber (jweber@paulweiss.com), and Alice Nofzinger (anofzinger@paulweiss.com); (iii) the Debtors' [proposed] co-counsel, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801, Attn: Andrew L. Magaziner (amagaziner@ycst.com) and Katelin A. Morales (kmorales@ycst.com); (iv) the United States Trustee, United States Department of Justice, Office of the United States Trustee, 844 N. King Street, Suite #2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Joseph Cudia; (v) counsel to the Prepetition Agent, Mayer Brown LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn: Brian Trust (btrust@mayerbrown.com) and Joaquin M. C De Baca (jcdebaca@mayerbrown.com); (vi) Delaware counsel to the Prepetition Agent, Potter Anderson & Corroon LLP, 1313 N. Market Street, P.O. Box 951, Wilmington, Delaware 19801, Attn: Christopher M. Samis (csamis@potteranderson) and L. Katherine Good (kgood@potteranderson.com); and (vii) counsel to the official committee of unsecured creditors appointed by the Office of the United States Trustee, if any.

*[Remainder of page intentionally left blank]*

29233973.2

3

Dated:    [●], 2022
      Wilmington, Delaware

**YOUNG CONAWAY
STARGATT & TAYLOR, LLP**

*/s/*_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Katelin A. Morales (No. 6683)
Timothy R. Powell (No. 6894)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
       amagaziner@ycst.com
       kmorales@ycst.com
       tpowell@ycst.com

- and -

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Brian S. Hermann (admitted *pro hac vice*)
John T. Weber (admitted *pro hac vice*)
Alice Nofzinger (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email: bhermann@paulweiss.com
      jweber@paulweiss.com
      anofzinger@paulweiss.com

*[Proposed] Counsel to the Debtors and
Debtors in Possession*

**EXHIBIT 3 to Bidding Procedures Order**

**Form of Cure Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SALEM HARBOR POWER DEVELOPMENT LP (f/k/a Footprint Power Salem Harbor Development LP), *et al.*,[1] | Case No. 22-10239 (MFW) |
| | (Jointly Administered) |
| Debtors. | |

### NOTICE TO CONTRACT PARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON EXHIBIT A ATTACHED HERETO.**

**PLEASE TAKE NOTICE** that on [●], 2022, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (II) Scheduling Certain Dates Related Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief* [D.I. [●]] (the "Bidding Procedures Order"),[2] authorizing the Debtors to conduct an auction (the "Auction"), if any, to select the party to purchase the Debtors' assets (the "Assets" and such transaction, the "Sale Transaction") pursuant to the *Joint Chapter 11 Plan of Reorganization of Salem Harbor Power Development LP and Its Debtor Affiliates* [D.I. [●]] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"). The Auction will be governed by the bidding procedures approved pursuant to the Bidding Procedures Order (attached to the Bidding Procedures Order as **Exhibit 1**, the "Bidding Procedures").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to the Successful Bidder certain

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP) (1360); Highstar Salem Harbor Holdings GP, LLC (f/k/a Highstar Footprint Holdings GP, LLC) (2253); Highstar Salem Harbor Power Holdings L.P. (f/k/a Highstar Footprint Power Holdings L.P.) (9509); Salem Harbor Power FinCo GP, LLC (f/k/a Footprint Power Salem Harbor FinCo GP, LLC) (N/A); Salem Harbor Power FinCo, LP (f/k/a Footprint Power Salem Harbor FinCo, LP) (9219); and SH Power DevCo GP LLC (f/k/a Footprint Power SH DevCo GP LLC) (9008). The location of the Debtors' service address is: c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite 475, Spring, Texas 77380.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

of the Assigned Contracts listed on the Assigned Contracts Schedule, attached hereto as **Exhibit A**, to which you are a counterparty, upon approval of the Sale Transaction. The Assigned Contracts Schedule can also be viewed on the Debtors' restructuring website (https://cases.primeclerk.com/Salemharbor). The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Assigned Contracts is as set forth on **Exhibit A** attached hereto (the "Cure Costs").

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Costs, object to a proposed assignment to the Successful Bidder of any Assigned Contract, or object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, your objection must: (a) be in writing; (b) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, and any order governing the administration of these chapter 11 cases; (c) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the correct cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (d) be filed with the Court and served and **actually received no later than July 1, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "Cure Objection Deadline") by the Court and the following parties: (i) the Debtors, Salem Harbor Power Development LP, c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite #475, Spring, Texas 77380 Attn: John Lambert (jlambert@tateswood.com); (ii) the Debtors' [proposed] counsel, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Brian S. Hermann (bhermann@paulweiss.com), John T. Weber (jweber@paulweiss.com), and Alice Nofzinger (anofzinger@paulweiss.com); (iii) the Debtors' [proposed] co-counsel, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801, Attn: Andrew L. Magaziner (amagaziner@ycst.com) and Katelin A. Morales (kmorales@ycst.com); (iv) the United States Trustee, United States Department of Justice, Office of the United States Trustee, 844 N. King Street, Suite #2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Joseph Cudia; (v) counsel to the Prepetition Agent, Mayer Brown LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn: Brian Trust (btrust@mayerbrown.com) and Joaquin M. C De Baca (jcdebaca@mayerbrown.com); (vi) Delaware counsel to the Prepetition Agent, Potter Anderson & Corroon LLP, 1313 N. Market Street, P.O. Box 951, Wilmington, Delaware 19801, Attn: Christopher M. Samis (csamis@potteranderson) and L. Katherine Good (kgood@potteranderson.com); and (vii) counsel to the official committee of unsecured creditors appointed by the Office of the United States Trustee, if any.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Costs(s), (b) the proposed assumption and assignment of any Assigned Contract, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance.

**PLEASE TAKE FURTHER NOTICE** that any objection to the proposed assumption and assignment of an Assigned Contract or related Cure Costs in connection with the Successful

29233973.2

2

Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Confirmation Hearing, shall be heard at a later date as may be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Assigned Contract on the Cure Notice does not require or guarantee that such Assigned Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such executory contracts and/or unexpired leases are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Assigned Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Assigned Contract as either rejected or assumed in connection with the Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (a) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract, (b) creates a postpetition contract or agreement, or (c) elevates to administrative expense priority any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract.

[*Remainder of page intentionally left blank*]

Dated:   [●], 2022
        Wilmington, Delaware

**YOUNG CONAWAY
STARGATT & TAYLOR, LLP**

*/s/*_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Katelin A. Morales (No. 6683)
Timothy R. Powell (No. 6894)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
        amagaziner@ycst.com
        kmorales@ycst.com
        tpowell@ycst.com

- and -

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Brian S. Hermann (admitted *pro hac vice*)
John T. Weber (admitted *pro hac vice*)
Alice Nofzinger (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:   (212) 757-3990
Email: bhermann@paulweiss.com
       jweber@paulweiss.com
       anofzinger@paulweiss.com

*[Proposed] Counsel to the Debtors and
Debtors in Possession*

**Exhibit A**

**Assigned Contracts Schedule**