# **EXHIBIT B**

**Mazzucchi Declaration**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SALEM HARBOR POWER DEVELOPMENT LP (f/k/a Footprint Power Salem Harbor Development LP), *et al.*,[1] | Case No. 22-10239 (MFW) |
| | (Jointly Administered) |
| Debtors. | |

**DECLARATION OF MATTHEW A. MAZZUCCHI
IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) APPROVING BIDDING PROCEDURES FOR THE SALE OF ALL OR
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (II) SCHEDULING CERTAIN
DATES RELATED THERETO, (III) APPROVING THE FORM AND MANNER OF
NOTICE THEREOF, (IV) APPROVING CONTRACT ASSUMPTION
AND ASSIGNMENT PROCEDURES, AND (V) GRANTING RELATED RELIEF**

I, Matthew A. Mazzucchi, hereby declare under penalty of perjury:

1. I am a Managing Director at Houlihan Lokey Capital, Inc. ("Houlihan") and Co-Head of Houlihan's Power & Utilities Group. Together with my team from Houlihan, I serve as investment banker to the Debtors. I submit this declaration in support of the *Debtors' Motion for Entry of An Order (I) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (II) Scheduling Certain Dates Related Thereto, (III) Approving the Form and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP) (1360); Highstar Salem Harbor Holdings GP, LLC (f/k/a Highstar Footprint Holdings GP, LLC) (2253); Highstar Salem Harbor Power Holdings L.P. (f/k/a Highstar Footprint Power Holdings L.P.) (9509); Salem Harbor Power FinCo GP, LLC (f/k/a Footprint Power Salem Harbor FinCo GP, LLC) (N/A); Salem Harbor Power FinCo, LP (f/k/a Footprint Power Salem Harbor FinCo, LP) (9219); and SH Power DevCo GP LLC (f/k/a Footprint Power SH DevCo GP LLC) (9008). The location of the Debtors' service address is: c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite 475, Spring, Texas 77380.

29233966.2

*Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief* (the "Bidding Procedures Motion").[2]

2. All facts and opinions set forth in this declaration are based upon: (a) my personal knowledge; (b) information learned from my review of relevant documents; (c) information supplied to me or verified by the Debtors or other members of my team at Houlihan; and/or (d) my experience and knowledge concerning financial restructurings, mergers, acquisitions and dispositions, leveraged buyouts, and capital-raising activities.

3. If called upon to do so, I would testify competently to the facts and opinions set forth herein.

**Professional Qualifications**

4. Houlihan is an internationally recognized investment banking and financial advisory firm, with thirty-eight (38) offices worldwide and more than 2,200 professionals. Houlihan's Financial Restructuring Group, which numbers more than 275 professionals, ranks as one of the leading advisors and investment bankers to unsecured and secured creditors, debtors, acquirers, and other parties in interest involved with financially troubled companies both inside and outside of bankruptcy.

5. Houlihan has participated, and continues to participate, in some of the largest restructuring cases in the United States, including representations of the official committees in Lehman Brothers Holdings Inc., Arcapita Bank B.S.C(c)., Enron Corp., WorldCom, Inc., Delta Air Lines, Inc., General Growth Properties, Capmark, and the debtors in Murphy Energy Corporation (a global oil and gas production company), Mark IV Industries, Buffets

---

[2] Capitalized terms used herein but not otherwise defined shall share the meanings ascribed to such terms in the Bidding Procedures Motion or the Bidding Procedures, as applicable.

29233966.2

2

Holdings, Inc., Bally Total Fitness Holding Corp., XO Communications, Inc., Six Flags, Inc., Granite Broadcasting Corp., and MS Resorts.

6. I have more than twenty-four (24) years of experience consummating transactions and providing strategic advice to companies and creditors in the power and utilities industry in connection with special situations, mergers, acquisitions, and other dispositions, both inside and outside of court. My engagements in the power and utilities sector include Calpine Corp., Covanta Energy Corp., Dynegy Inc., Edison Mission Energy Corp., Empire Generating Co., Enron Corp., Entegra Power Group, Entergy New Orleans, First Energy Solutions, Homer City Generation, IPH Genco, Klamath Falls Cogeneration, Mayflower Energy, Mirant Corp. NorthEast Gas Generation, LLC, NorthWestern Corp., NRG Energy, and Reliant Energy Channelview, among others.

### The Restructuring Transaction

7. As set forth in greater detail in the *Declaration of John R. Castellano in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 9] (the "First Day Declaration"), the Debtors commenced these chapter 11 cases to implement a comprehensive financial restructuring through a pre-arranged chapter 11 plan of reorganization (the "Plan"), the terms of which are set forth in the Restructuring Support Agreement (as may be amended, modified, or supplemented from time to time, the "RSA") attached as Exhibit B to the First Day Declaration. Pursuant to the RSA, the Debtors, the Consenting Lenders (as defined in the RSA), and the Consenting Equity Parties (as defined in the RSA) agreed to support the restructuring transactions that will be set forth in the Plan. The Debtors are pursuing a toggle structure under the Plan that will enable the Debtors to maximize value for the benefit of all stakeholders. The Plan contemplates either (a) a standalone restructuring (the "Standalone Restructuring Transaction") pursuant to which holders of Secured Credit Facility Claims would receive, among other things,

29233966.2

100% of the equity of the reorganized Debtors on account of their Secured Credit Facility Claims or (b) a sale (the "Sale Transaction") of all, or substantially all, of the Debtors' assets (the "Assets") pursuant to which the Debtors' creditors would receive available cash proceeds in accordance with their relative priorities under the Bankruptcy Code. In connection therewith, the Debtors propose to pursue a potential Sale Transaction in accordance with the Bidding Procedures. Specifically, pursuant to and in accordance with the proposed Bidding Procedures, the Debtors will market their Assets to ascertain if there is a Sale Transaction that will maximize value for the Debtors' estates as compared to the Standalone Restructuring Transaction. To the extent the Debtors are able to identify a viable and value-maximizing Sale Transaction, the Debtors have the ability to toggle to implement such Sale Transaction pursuant to the Plan and Confirmation Order.

### The Debtors' Marketing Process

8. Prior to the Petition Date, on March 7, 2022, the Debtors, with the assistance of Houlihan, formally commenced a marketing process to sell the Debtors' Assets (such process, "Phase I"). Prior to the Petition Date, Houlihan reached out to 100 potential acquiring parties (the "Initial Contact Parties") to solicit Non-Binding Indications of Interest. As of the date hereof, the Debtors have entered into approximately 31 confidentiality agreements with potentially interested parties. Such parties have received a confidential information memorandum, as well as access to additional diligence materials to assist them in formulating Non-Binding Indications of Interest.

9. As of the Petition Date, the Phase I process remains ongoing. The Debtors have or will soon advise interested parties that have executed confidentiality agreements that they will have until on or about April 12, 2022 to submit Non-Binding Indications of Interest. The Debtors and their advisors continue to engage in discussions with certain of these parties regarding the submission of Non-Binding Indications of Interest.

10. The Debtors intend to continue the marketing process on a postpetition basis, including completing the Phase I process for submissions of Non-Binding Indications of Interest and commencing the second phase ("Phase II") for solicitation of binding bids pursuant to the Bidding Procedures. As set forth in the Bidding Procedures Motion, the Bidding Procedures establish deadlines by which Potential Bidders must submit binding bids for the Assets and outline the procedures for an Auction process designed to encourage active participation and obtain the highest or otherwise best possible offer for the Assets. In connection with the Phase II process, the Debtors, with the assistance of Houlihan, have established a virtual data room to provide potential acquirors with access to diligence materials necessary to assist them in formulating binding bids. The Debtors, with the assistance of Houlihan, will continue to work closely with interested parties to explore and address transaction structure, diligence questions, timing, and process considerations. To the extent any additional Initial Contact Parties or any other potential interested parties reach out to the Debtors and/or their advisors or any additional potential interested parties are otherwise identified by the Debtors and their advisors, Houlihan will coordinate execution of confidentiality agreements with such parties (to the extent not previously executed), and facilitate such parties' diligence of the Assets over the coming days and weeks in accordance with the Bidding Procedures.

### The Bidding Procedures and Related Timeline

11. In connection with negotiating the RSA and the prepetition marketing process described above, the Debtors and their advisors worked diligently to develop the Bidding Procedures. The Bidding Procedures are designed to ensure that a process is put in place that will maximize the value of the Debtors' estates and maximize recoveries for creditors.

12. In my view, the Bidding Procedures establish an appropriate process to market test the value of the Debtors' Assets and provide for an efficient timeline that is appropriate

29233966.2

5

in light of the circumstances of the Debtors' chapter 11 cases. I believe the market exposure resulting from the prepetition marketing process and the postpetition marketing process contemplated by the Bidding Procedures is the best means for establishing a fair and reasonable value for the Debtors' Assets. The timeline set forth in the Bidding Procedures was calculated to balance the need to provide adequate notice to parties in interest and Potential Bidders while enabling the Debtors to run a robust but efficient postpetition marketing and sale process. Moreover, the timeline specified by the Bidding Procedures aligns with the milestones set forth in the RSA, which provides a roadmap for these chapter 11 cases supported by key stakeholders, including the Consenting Lenders and the Consenting Equity Parties.

13. The key dates and deadlines the Debtors seek to establish pursuant to the Bidding Procedures allow for a clear and open process for the solicitation, receipt, and evaluation of Bids on a timeline that enables the Debtors to consummate a Sale Transaction efficiently, while also affording Potential Bidders a reasonable opportunity to conduct due diligence, submit Bids (including higher or otherwise better offers) to acquire the Assets, and participate in the Auction:

| Date and Time[3] | Event or Deadline |
| --- | --- |
| **June 3, 2022, at 5:00 p.m. (prevailing Eastern time)** | **Stalking Horse Motion Deadline**: Deadline by which the Debtors must file a Stalking Horse Motion to be heard on shortened notice |
| **June 10, 2022, at 5:00 p.m. (prevailing Eastern time)** | **Bid Deadline**: Deadline by which parties must submit Bids and submit Deposits |
| **June 13, 2022, at 5:00 p.m. (prevailing Eastern time)** | Deadline by which the Debtors will determine which Bids are Qualified Bids and notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder |

---

[3] All dates and deadlines are subject to Bankruptcy Rule 9006. Capitalized terms used in this summary table shall have the meanings ascribed to such terms in the Bidding Procedures.

29233966.2

| Date and Time[3] | Event or Deadline |
|---|---|
| **June 13, 2022, at 5:00 p.m. (prevailing Eastern time)** | Deadline by which the Debtors will provide each Qualified Bidder a schedule setting forth the Baseline Bid |
| **June 14, 2022, at 10:00 a.m. (prevailing Eastern time)** | **Auction** (if necessary), which will be held at Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 or via remote video |
| **June 21, 2022, at 4:00 p.m. (prevailing Eastern time)** | **Transaction Election Deadline**: Deadline by which the Debtors will provide notice of the Transaction Election |
| **July 1, 2022, at 4:00 p.m. (prevailing Eastern time)** | **Assigned Contract Objection Deadline**: Deadline by which all objections to the assumption and assignment of any executory contracts in connection with the Sale Transaction must be filed with the Court and served so as to be *actually received* by the appropriate notice parties |
| **July 11, 2022, at [●] (prevailing Eastern time)** *Subject to the Court's availability, on such date the Debtors request. | **Confirmation Hearing**, which will be held before the Honorable Judge Mary F. Walrath, United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19801 or via remote video |

14. The Bidding Procedures are designed to generate the highest or otherwise best available recoveries to the Debtors' stakeholders by encouraging Potential Bidders to submit competitive, value-maximizing bids for the Assets. For example, the Bidding Procedures provide an opportunity for Potential Bidders to serve as a Stalking Horse Bidder and obtain Bid Protections, which I believe creates incentives that will further drive a competitive process. Moreover, I believe the Bidding Procedures will allow the Debtors to conduct the postpetition marketing process and the Auction in a controlled, fair, and open fashion that will attract Qualified Bidders with a demonstrated ability to close the Sale Transaction. In addition, I believe the Bidding Procedures will foster an open marketing process with minimal barriers to entry, and the

timeline contemplated therein affords Potential Bidders ample opportunity to conduct the due diligence necessary to submit a Qualified Bid.

15. I was involved in designing the Bidding Procedures, which I believe are generally consistent with procedures previously approved in cases of similar size and complexity. The Bidding Procedures establish, among other things:[4]

- the requirements Potential Bidders must satisfy to access due diligence materials;

- the deadlines and requirements for submitting Qualified Bids and the methods and criteria by which such Bids are deemed to be timely "Qualified Bids" sufficient to trigger an Auction, if any;

- the manner in which Qualified Bids will be evaluated by the Debtors to determine the Baseline Bid for the Auction, if any;

- the conditions under which the Auction, if any, will take place, as well as the procedures for conducting the Auction; and

- various other matters relating to the Sale Transaction, including the designation of the Backup Bid, the return of any Deposits, and certain reservations of rights.

16. In my opinion, the Bidding Procedures appropriately preserve the Debtors' ability to consider all Qualified Bids made at or prior to the Bid Deadline and likewise preserve the Debtors' right to modify the Bidding Procedures as necessary or appropriate to maximize value of the Debtors' estates.

### The Use of a Stalking Horse and the Bid Protections

17. The Bidding Procedures and Proposed Order provide the Debtors with flexibility to select a Stalking Horse Bidder and provide Bid Protections on market terms, including in the form of a break-up fee and/or an expense reimbursement, subject to Court approval on at

---

[4] The summary that follows is provided solely for purposes of convenience. In the event of any inconsistency with the Bidding Procedures, the Bidding Procedures shall govern in all respects.

29233966.2

8

least three (3) business days' notice. In the event the Debtors enter into a Stalking Horse Agreement, such Stalking Horse Bid will, for the benefit of the Debtors' estates, establish a floor for further bidding that may increase the consideration received in exchange for the Assets. I believe that the ability to provide Bid Protections contemplated by the Bidding Procedures will induce potential bidders to become a Stalking Horse Bidder. Accordingly, I believe that the ability to designate a Stalking Horse Bidder and provide such Stalking Horse Bidder with Bid Protections will maximize the value of the Debtors' estates and, accordingly, represent a valid and sound exercise of the Debtors' business judgment.

18. As a general matter, Bid Protections will account for a critical component of any Stalking Horse Bidder's commitment. Any Stalking Horse Bidder will have expended, and will continue to expend, significant time and resources negotiating, drafting, and otherwise conducting the due diligence required by the Sale Transaction, despite the fact any Stalking Horse Agreement (and related Bid Protections) will remain subject not only to expedited Court approval, but also to potential Overbids by other Bidders throughout the sale process. In the event the Court does not authorize the Debtors, subject to further Court approval on an expedited basis, to designate a Stalking Horse Bidder and provide such Stalking Horse Bidder Bid Protections, I also believe it likely that any potential Stalking Horse Bidder may elect not to serve as the "stalking horse" to the detriment of the Debtors' estates. Accordingly, I believe that the ability to designate a Stalking Horse Bidder and provide Bid Protections to be heard by the Court on shortened notice as set forth in the Proposed Order and Bidding Procedures represents a valid and sound exercise of the Debtors' business judgment, and that the Court should approve such relief in conjunction with the Bidding Procedures.

**Conclusion**

19.  Accordingly, for all of the foregoing reasons, I believe that the Bidding Procedures: (a) will encourage robust bidding for the Debtors' Assets; (b) are generally consistent with procedures previously approved in cases of similar size and complexity; and (c) appropriately suit the circumstances of these chapter 11 cases.  Given the details regarding the Debtors' Plan and sale process described above—and my experience as a restructuring professional and involvement in other sale processes—I believe the Bidding Procedures are appropriate and that the Court should approve the Bidding Procedures.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: March 31, 2022

By:  /s/ *Matthew A. Mazzucchi*
Matthew A. Mazzucchi
Managing Director
Houlihan Lokey Capital, Inc.

29233966.2