## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SALEM HARBOR POWER DEVELOPMENT LP (f/k/a Footprint Power Salem Harbor Development LP), *et al.*, [1] | Case No. 22-10239 (MFW) |
| | (Jointly Administered) |
| Debtors. | **Docket Ref Nos. 8, 54** |

### FINAL ORDER (A) AUTHORIZING
### THE DEBTORS TO USE CASH COLLATERAL,
### (B) GRANTING ADEQUATE PROTECTION, (C) MODIFYING
### THE AUTOMATIC STAY, AND (D) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases") seeking entry of an interim order (the "Interim Order") and a final order (this "Final Order" and, together with the Interim Order, the "Cash Collateral Orders"), pursuant to sections 105, 361, 362, 363, 503, 506, 507, and 552 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, 7062, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1(b), 4001-2, and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (a) authorizing the Debtors to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code, and all other Prepetition Collateral (as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP) (1360); Highstar Salem Harbor Holdings GP, LLC (f/k/a Highstar Footprint Holdings GP, LLC) (2253); Highstar Salem Harbor Power Holdings L.P. (f/k/a Highstar Footprint Power Holdings L.P.) (9509); Salem Harbor Power FinCo GP, LLC (f/k/a Footprint Power Salem Harbor FinCo GP, LLC) (N/A); Salem Harbor Power FinCo, LP (f/k/a Footprint Power Salem Harbor FinCo, LP) (9219); and SH Power DevCo GP LLC (f/k/a Footprint Power SH DevCo GP LLC) (9008). The location of the Debtors' service address is: c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite 475, Spring, Texas 77380.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

29290413.3

defined herein), in accordance with the terms of this Final Order, (ii) granting adequate protection to MUFG Union Bank, N.A. (including any successor thereto), as administrative agent (in such capacity, the "Administrative Agent"), collateral agent (in such capacity, the "Collateral Agent" and together with the Administrative Agent, the "Prepetition Agent") and depositary bank, under the Credit Agreement (as defined herein), and the other Prepetition Secured Parties (as defined herein), and (iii) granting adequate protection to Iberdrola Energy Projects, Inc. ("IEP") on the terms set forth in paragraph 11 below; (b) granting adequate protection liens on the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, and 550 of the Bankruptcy Code or any other similar state or federal law (collectively, the "Avoidance Actions"); (c) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Cash Collateral Orders; (d) except to the extent of the Carve-Out (as defined herein), waiving all rights to surcharge any Prepetition Collateral or Postpetition Collateral (as defined herein) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law; (e) subject to Challenge (as defined herein and subject to the limitations specified herein), approving certain stipulations by the Debtors with respect to the Credit Agreement and the liens and security interests arising therefrom, and (f) granting related relief, all as more fully set forth herein; and an initial hearing on the Motion having been held by this Court on March 25, 2022 (the "Interim Hearing") and a final hearing having been held by this Court on April 21, 2022 (the "Final Hearing"), and this Court having considered the Motion, the First Day Declaration, and the evidence submitted or adduced and the arguments of counsel made at the Interim Hearing and the Final Hearing; and due and proper notice of the Motion and the Final Hearing having

been given as set forth in the Motion and the Interim Order; and such notice being adequate and appropriate under the applicable Bankruptcy Rules and Local Rules, and it appearing that no other or further notice need be provided; and the Final Hearing to consider the relief requested in the Motion on a final basis having been held and concluded; and all objections, if any, to the relief requested in the Motion on a final basis having been withdrawn, resolved, or overruled by this Court; and it appearing that granting the relief requested in the Motion on a final basis is fair and reasonable, and in the best interests of the Debtors, their estates, creditors, and other parties in interest; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.    <u>Petition Date</u>.  On March 23, 2022 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

B.    <u>Debtors in Possession</u>.  The Debtors continue to manage and operate their business and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.   No trustee or examiner or official committee of unsecured creditors (the "<u>Creditors' Committee</u>") has been appointed in these Chapter 11 Cases.  On April 5, 2022, the Office of the U.S. Trustee for the District of Delaware filed a *Statement that Unsecured Creditors Committee Has Not Been Appointed* [D.I. 71].

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over these proceedings, and the persons and properties affected hereby, pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

D.      <u>Debtors' Stipulations</u>.  In requesting the use of Cash Collateral (as defined below), and in exchange for and as a material inducement to the consent of the Prepetition Secured Parties (as defined below) to the use of their Cash Collateral, subject to the challenge rights set forth in paragraph 5 below (but subject to the limitations thereon contained herein), the Debtors, for themselves, their estates and all representatives of such estates, acknowledge, represent, admit, stipulate, and agree (collectively, the "<u>Debtors' Stipulations</u>") as follows:

(i)      *Loan Documents.*  Prior to the Petition Date, certain of the Prepetition Secured Parties made loans, advances, and other extensions of credit pursuant to that certain Credit Agreement, originally dated as of January 9, 2015 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified, the "<u>Credit Agreement</u>" and, collectively with all agreements, documents, notes, letters of credit, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, including the "Financing Documents" (as defined therein), the "<u>Loan Documents</u>"), by and among Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP), as borrower ("<u>DevCo</u>"), the Lenders (as defined in the Credit Agreement) from time to time party thereto (the "<u>Prepetition Secured Lenders</u>"), and the Prepetition Agent (collectively with the Prepetition Secured Lenders, and any other "Secured

Party" (as defined in the Credit Agreement), the "Prepetition Secured Parties").    Each of the Loan Documents is valid, binding, and, subject to applicable bankruptcy law, enforceable against the applicable Debtors in accordance with its terms.

(ii)    *Prepetition Secured Obligations.*    All indebtedness, liabilities, and obligations owing from time to time under the Loan Documents, specifically to the extent constituting Obligations (as defined in the Credit Agreement), are collectively referred to herein as "Prepetition Secured Obligations".    As of the Petition Date, the applicable Debtors were indebted and liable under the Loan Documents, without defense, counterclaim, or offset of any kind to the Prepetition Secured Lenders in respect of the Prepetition Secured Obligations for (a) an aggregate principal amount of not less than (1) $290 million in respect of the loans made under the Credit Agreement (inclusive of capitalized interest), (2) $41.6 million in respect of the letter of credit (the "Gas Lateral Letter of Credit") issued and outstanding in favor of Algonquin Gas Transmission, LLC for the account of DevCo, if such Gas Lateral Letter of Credit is ultimately drawn, and (3) $4.75 million in respect of the letter of credit (the "CSA Letter of Credit" and together with the Gas Lateral Letter of Credit, the "L/Cs") issued and outstanding in favor of General Electric International, Inc. for the account of DevCo, if such CSA Letter of Credit is ultimately drawn; and (b) accrued and unpaid interest, fees, and costs, expenses (including any attorneys' and financial advisors' fees), charges, indemnities and all other Obligations (as defined in the Credit Agreement) incurred or accrued with respect to the foregoing pursuant to, and in accordance with, the Loan Documents.

(iii)    *Liens and Collateral.*    Pursuant to and as more particularly described in the Loan Documents, the Prepetition Secured Obligations are secured by, among other things, first priority liens and mortgages on, security interests in, and assignments and pledges of

(collectively, the "Prepetition First Priority Liens"), assets of the applicable Debtors as more fully described in the Loan Documents, including (a) all of DevCo's right, title, and interest in all or substantially all of DevCo's property, including real property, personal property, and fixtures, (b) all of SH Power DevCo GP LLC's (f/k/a Footprint Power SH DevCo GP LLC) interests in DevCo, and (c) all of Salem Harbor Power FinCo, LP's (f/k/a Footprint Power Salem Harbor FinCo, LP) interests in DevCo and SH Power DevCo GP LLC (such collateral, collectively, the "Prepetition Collateral"), and, as of the Petition Date, such Prepetition First Priority Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to liens senior by operation of law or otherwise permitted by the Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition First Priority Liens as of the Petition Date, or valid, non-avoidable, senior priority liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, collectively, the "Permitted Encumbrances").[4] For the avoidance of doubt, any and all of the Debtors' cash, whether existing as of the Petition Date or thereafter, wherever located constitutes "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral") (including, without limitation, cash or cash equivalents generated by the sale or other disposition of Prepetition Collateral or on deposit or maintained by the Debtors in any account or accounts over which the Prepetition Secured Parties have control, and all income, proceeds, products, rents, or profits of any Prepetition Collateral).

---

[4]    ISO-NE's interest in the ISO-NE Account, as defined in the *Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing (I) Continued Use of Cash Management System, (II) Maintenance of Bank Accounts and Business Forms, (III) Performance of Intercompany Transactions, and (IV) Certain Prepetition Obligations to be Honored; (B) Granting Administrative Expense Priority Status to Postpetition Intercompany Claims; (C) Waiving Strict Compliance with 11 U.S.C. § 345(b) and Certain Operating Guidelines, as Applicable; and (D) Granting Related Relief* [D.I. 3], shall constitute a "Permitted Encumbrance."

(iv)    *Validity of Prepetition First Priority Liens and Prepetition Secured Obligations.*  The Prepetition First Priority Liens are (a) valid, binding, perfected, duly recorded, and enforceable liens on, and security interests in the Prepetition Collateral, and (b) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, set-off, offset, recoupment, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity.  The Prepetition First Priority Liens were granted for fair consideration and reasonably equivalent value, and were granted in consideration of the making and/or continued making of loans, commitments, and/or other financial accommodations under the Loan Documents.  The Prepetition Secured Obligations owing to the Prepetition Secured Parties constitute legal, valid, and binding obligations of the applicable Debtors, enforceable against them in accordance with their respective terms, and no portion of the Prepetition Secured Obligations or any payments made to the Prepetition Secured Parties or applied to or paid on account of the Obligations owing under the Loan Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, set-off, offset, subordination (whether equitable, contractual, or otherwise), recharacterization, avoidance, or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code or applicable nonbankruptcy law.  The Prepetition Secured Obligations constitute allowed secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(v)    *No Control*.  Prior to and as of the date hereof, none of the Prepetition Secured Parties control the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted, or is a control person or

insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Interim Order, this Final Order, or the Loan Documents.

(vi)    *No Challenges/Claims*.    No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition First Priority Liens or Prepetition Secured Obligations exist, and no facts or occurrence supporting or giving rise to any offset, challenge, objection, defense, claim or counterclaim of any kind or nature to any of the Prepetition First Priority Liens or Prepetition Secured Obligations exist.  The Debtors do not possess, and shall not assert, any claim, counterclaim, setoff, objection, challenge or defense of any kind, nature or description that would in any way affect the validity, priority, enforceability or non-avoidability of any Prepetition Secured Obligations.

(vii)    *Adequate Protection for the Prepetition Secured Parties.*    The Prepetition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code for any diminution in the value, from and after the Petition Date, of their interests in the Prepetition Collateral (including the Cash Collateral) resulting from the imposition of the automatic stay and/or from the Debtors' use, sale or lease of the Prepetition Collateral (collectively, the "Diminution in Value") during the Chapter 11 Cases.  As adequate protection therefor, the Prepetition Secured Parties will receive the adequate protection described in this Final Order (including the adequate protection set forth in paragraph 9 hereof).  In exchange for such adequate protection, the Prepetition Secured Parties have consented to the Debtors' use of the Cash Collateral, solely on the terms and conditions set forth in the Interim Order and this Final Order.  The adequate protection provided herein and other benefits and

29290413.3

privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary to obtain such consent.

E. <u>Necessity for Relief Requested</u>. The Debtors have a critical need to use the Cash Collateral to, among other things, preserve and maximize the value of the Debtors' assets, absent which serious and irreparable harm will result to the Debtors, their estates, and creditors. The preservation and maintenance of the Debtors' assets, business, and operations are vital to maximize value available for distribution to creditors. Absent the Debtors' ability to use Cash Collateral, the Debtors would not have any available sources of working capital and would be unable to pay their operating expenses or maintain their assets, to the detriment of the Debtors' estates and creditors. The relief requested in the Motion is therefore necessary and appropriate to avoid serious and irreparable harm to the Debtors, their estates, and creditors. Additionally, the use of Cash Collateral avoids the need for the Debtors to obtain postpetition financing, which would require the Debtors to, among other things, incur fees in connection with such financing and otherwise would result in additional expense for the Debtors and their estates. The Prepetition Secured Parties and the Debtors have negotiated at arms' length and in good faith regarding the Debtors' use of Cash Collateral during the pendency of these Chapter 11 Cases. Accordingly, the relief requested in the Motion on a final basis and entry of this Final Order are (a) critical to the Debtors' ability to maximize the value of their chapter 11 estates, (b) in the best interests of the Debtors and their estates, and (c) necessary, essential, and appropriate to avoid serious and irreparable harm to the Debtors and their estates.

F. <u>IEP Lien</u>. On March 23, 2022, shortly before the commencement of the Chapter 11 Cases, IEP recorded a judicial lien in the land records with the Southern Essex District Registry of Deeds in Massachusetts with respect to its judgment claim against Debtor

DevCo (the "IEP Lien" and the property subject to such lien, the "IEP Prepetition Collateral"). Pursuant to that certain Standstill and Coordination Agreement, dated as of January 18, 2022, by and between DevCo and IEP (the "Standstill Agreement"), IEP agreed, to the extent it obtains a lien (or purports to obtain a lien) on any of the Debtors' property, including Cash Collateral, not to raise, join or support any objection to, or in any manner oppose, or seek to modify the Debtors' use of Cash Collateral, in its purported capacity as a secured creditor, if such use is otherwise consented to by the Required Lenders (as defined in the Credit Agreement) or raise, join or support any objection to, or in any manner oppose, or seek to modify the adequate protection provided in connection therewith to the Prepetition Secured Parties; provided that any adequate protection provided to IEP shall be limited at all times to the provision by the Debtors of adequate protection liens and adequate protection administrative expense claims, in each case, consistent with the priority attributable to the IEP Lien as compared to the Prepetition First Priority Liens; provided, further, that, notwithstanding the foregoing, nothing in the Standstill Agreement limits or otherwise prevents IEP, solely in any unsecured creditor capacity, from objecting to or otherwise contesting any aspect of the Debtors' use of Cash Collateral in this Chapter 11 Case, or limit or prevent IEP, in any capacity, from contesting the validity or priority of any claims, liens or security interests maintained by the Prepetition Agents for the benefit of the Prepetition Secured Lenders, other than as provided as adequate protection as set forth therein.

G.    Proper Exercise of Business Judgment.   Based on the Motion, the First Day Declaration, and the record presented to the Court at the Interim Hearing and the Final Hearing, (a) the terms of adequate protection to be granted to the Prepetition Secured Parties and IEP hereunder, (b) the terms on which the Debtors may continue to use Prepetition Collateral

(including Cash Collateral) as reflected herein, and (c) the Cash Collateral arrangements described herein pursuant to this Final Order, (i) are fair, reasonable, and the best available to the Debtors under the circumstances; (ii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties; and (iii) are supported by reasonably equivalent value and fair consideration.  The Debtors' use of Prepetition Collateral (including Cash Collateral) during the pendency of these Chapter 11 Cases as contemplated by this Final Order was negotiated in good faith and at arm's length among the Debtors and the Prepetition Secured Parties.

H.      <u>Good Cause</u>.  Good cause has been shown for entry of this Final Order, and the entry of this Final Order is in the best interests of the Debtors and their estates and creditors. Among other things, the relief granted herein will permit the Debtors to preserve and maintain the value of their assets.  The terms of the Debtors' use of Cash Collateral and proposed adequate protection arrangements, as set forth in this Final Order, are fair and reasonable under the circumstances, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

I.      <u>Good Faith</u>.    The Debtors' use of Prepetition Collateral (including Cash Collateral) during the pendency of these Chapter 11 Cases as contemplated by the Interim Order and this Final Order has been negotiated in good faith and at arms' length among the Debtors and the Prepetition Secured Parties, and the Prepetition Secured Parties consent to the Debtors' use of Cash Collateral shall be deemed to have been made in good faith.

J.      <u>Sections 506(c) and 552(b) Waivers</u>.  The Prepetition Secured Parties are each entitled to a waiver of (a) any "equities of the case" claims under section 552(b) of the Bankruptcy Code, (b) the provisions of section 506(c) of the Bankruptcy Code, and (c) the equitable doctrine of "marshalling" or any similar doctrine.

K.      Notice.    The Debtors have caused notice of the Motion, the relief requested therein on a final basis, and the Final Hearing to be served, whether by facsimile, email, first-class mail, overnight courier, or hand delivery, on the following parties (collectively, the "Notice Parties"): (a) the Office of the U.S. Trustee for the District of Delaware (Attn: Joseph Cudia); (b) the holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the District of Delaware; (e) counsel to the Prepetition Agent; (f) the Environmental Protection Agency and similar state agencies for states in which the Debtors conduct business; (g) the Federal Energy Regulatory Commission; (h) counsel to IEP; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.   The notice given by the Debtors of the Motion, the final relief requested therein, and of the Final Hearing complies with Bankruptcy Rules 2002, 4001(b), and (d), and no other or further notice is required.

L.      Relief Essential.    This Court concludes that entry of this Final Order is necessary to avoid material harm to the Debtors' estates, is in the best interests of the Debtors' estates, and is necessary, essential, and appropriate for the continued operation of the Debtors' business and the management and preservation of their assets and properties.

**BASED UPON THE STIPULATED TERMS AND FINDINGS OF FACT AND CONCLUSIONS OF LAW SET FORTH HEREIN, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.      Motion Granted.    The Motion is GRANTED on a final basis.   Any objection to the relief requested in the Motion to the extent not withdrawn or resolved is hereby overruled.

2.      Authorization to Use Cash Collateral.    The use of proceeds of the Prepetition Collateral (including Cash Collateral) is ratified, authorized, and approved on a final basis during

the period beginning with the Petition Date and ending on the Termination Date (as defined herein), in accordance with the 13-week cash disbursements and receipts budget attached as Exhibit A to the Interim Order, as updated by the Current Approved Budget (as defined below) attached hereto as Exhibit A, (as such budget may be amended and extended from time to time as set forth herein, the "Approved Budget"), subject to the Permitted Variances (as defined herein).

3.    No Effect of Debtors' Name Change on Collateral.  No postpetition change or attempted change by any of the Debtors of its name or other trade and identifying information shall affect the extent, validity, priority, perfection or enforceability of the Prepetition First Priority Liens or the IEP Lien.

4.    Budget.

(a)    Subject to the provisions of this Final Order, including the Approved Budget and the Permitted Variances, Cash Collateral may be used by the Debtors for general corporate and working capital purposes, to pay costs in connection with the administration of the Chapter 11 Cases and claims or amounts approved by this Court or as required under the Bankruptcy Code, to make Adequate Protection Payments and pay Prepetition Secured Parties' Fees and Expenses (each as defined herein), and for other purposes as set forth in the Approved Budget.

(b)    The Debtors' projected cash receipts and cash disbursements shall be set forth in the Approved Budget and the Debtors' use of Cash Collateral shall be subject to compliance with the Approved Budget as described herein; *provided* that the payment of Allowed Professional Fees (as defined in paragraph 17(a) hereof), amounts owed to the U.S. Trustee, and the Prepetition Secured Parties' Fees and Expenses (as defined in paragraph 9(e) hereof) shall not be subject to the Approved Budget.

(c)    Beginning on the Wednesday during the second full week following the Petition Date, the Debtors shall provide a revised budget (the "Proposed Budget") to the Prepetition Agent by 5:00 p.m. (prevailing Eastern Time) every other Wednesday, which Proposed Budget shall be reasonably acceptable to the Debtors and the Prepetition Agent.  If the Prepetition Agent does not object to the Proposed Budget by 11:59 p.m. (prevailing Eastern Time) on the immediately following Friday, such Proposed Budget shall be considered the new Approved Budget (the "Current Approved Budget") for the period covered thereby.  If the Prepetition Agent does object to the Proposed Budget by 11:59 p.m. (prevailing Eastern Time) on the Friday immediately following delivery of the Proposed Budget, the Current Approved Budget—for variance testing purposes—shall continue in effect and remain unchanged until an updated budget is agreed to.  Copies of each Approved Budget shall promptly be provided to IEP's counsel and the advisors to any Creditors' Committee (if appointed).

(d)    Beginning on the Wednesday during the third full week following the Petition Date, the Debtors shall deliver a budget variance report (the "Budget Variance Report") to the Prepetition Agent by 5:00 p.m. (prevailing Eastern Time) each Wednesday.  The Budget Variance Report shall show line item variances relative to the Current Approved Budget for the prior week and the prior cumulative two-week period, as applicable.  The Budget Variance Report for testing purposes shall measure disbursements relative to the Current Approved Budget for the prior cumulative two-week period (the "Testing Period") and shall show cash balances. Copies of each Budget Variance Report shall promptly be provided to IEP's counsel and the advisors to any Creditors' Committee (if appointed).

(e)    Notwithstanding the Approved Budget, the following limited variances shall be permitted (each such variance, a "Permitted Variance" and collectively, the "Permitted

Variances"), each measured at the end of each applicable Testing Period beginning with the first two full weeks following the Petition Date: (i) the actual total receipts during such Testing Period shall not be less than eighty-five percent (85%) of the total projected receipts set forth in the last Approved Budget for such Testing Period; and (ii) the actual total disbursements during such Testing Period shall not exceed one hundred fifteen percent (115%) of the projected disbursements set forth in the Approved Budget for such Testing Period (excluding for purposes of testing set forth in this paragraph 4(e), Allowed Professional Fees, the Prepetition Secured Parties' Fees and Expenses, and payments to the U.S. Trustee). Without limiting the generality of the foregoing, the Debtors' total cash retained across various Accounts (as defined in the Credit Agreement) shall not be less than $7,500,000 (the "Minimum Cash Balance"). The Debtors' compliance with the Minimum Cash Balance shall be measured on the 25th day of each calendar month; *provided*, *however*, that if the 25th day of a calendar month is not a business day (as used in the Credit Agreement, each a "Business Day"), then compliance with the Minimum Cash Balance shall be measured on the first Business Day following the 25th day of such calendar month.

(f)      Notwithstanding anything herein to the contrary, the Debtors shall not be permitted to use funds securing the L/Cs[5] and cash in protected accounts such as the Debt Service Reserve Account and the Warranty Reserve Account (each as defined in the Loan Documents), absent prior written consent of the Gas Lateral LC Lenders (as defined in the Credit Agreement) in respect of the Gas Lateral Letter of Credit, MUFG Union Bank, N.A. in respect of the CSA Letter of Credit, and the Required Lenders.

---

[5]      For the avoidance of doubt, this reference to funds securing the L/Cs shall not be construed as an acknowledgement that such funds constitute Cash Collateral.

(g)      Notwithstanding anything to the contrary set forth in this Final Order, Cash Collateral and the Carve-Out (as defined herein) may not be used: (i) to investigate (except as expressly provided herein), initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type (A) against the Prepetition Secured Parties, or seek relief that would impair the rights and remedies of the Prepetition Secured Parties under the Loan Documents, the Interim Order, or this Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or any Creditors' Committee (if appointed) in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration, or similar relief that would impair the ability of the Prepetition Secured Parties to recover on the Prepetition Secured Obligations or seeking affirmative relief against the Prepetition Secured Parties; (B) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Prepetition Secured Obligations or Prepetition First Priority Liens on the Prepetition Collateral; or (C) for monetary, injunctive, or other affirmative relief against the Prepetition Secured Parties or with respect to the Prepetition First Priority Liens on the Prepetition Collateral that would impair the ability of the Prepetition Secured Parties to assert or enforce any lien, claim, right, or security interest or to realize or recover on the Prepetition Secured Obligations (other than as expressly permitted herein); (ii) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition First Priority Liens) held by or on behalf of the Prepetition Secured Parties; (iii) for asserting, commencing, or prosecuting any

claims or causes of action whatsoever, including, without limitation, any Avoidance Actions against the Prepetition Secured Parties; or (iv) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of the Prepetition First Priority Liens, the Prepetition Secured Obligations, or any other rights or interests of the Prepetition Secured Parties under the Loan Documents or herein; *provided, however,* an amount up to $100,000 of Cash Collateral nevertheless may be used exclusively by any Creditors' Committee (if appointed) solely to investigate the foregoing matters within the Challenge Period (as defined herein).

(h)    Notwithstanding anything to the contrary in the Loan Documents, to the extent not cash collateralized prior to the Petition Date, nothing herein shall require the Debtors to cash collateralize the L/Cs other than as provided in paragraph 13 hereof.

5.    Effect of Stipulation on Third Parties.

(a)    *Generally.*    The representations, admissions, stipulations, agreements, releases, and waivers of the Debtors set forth in this Final Order (collectively, the "Prepetition Lien and Claim Matters") are and shall be binding on the Debtors, their estates and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtors), creditors, responsible persons, examiners with expanded powers, any other estate representative, and any other third parties and all of their successors in interest and assigns, including, without limitation, any Creditors' Committee (if appointed), unless, and solely to the extent that, (a) a party in interest either with standing and the requisite authority (other than the Debtors, as to which any Challenge (as defined herein) is irrevocably waived and relinquished) has commenced or has timely filed an appropriate pleading seeking standing and/or authority (the "Standing Motion") to timely commence an appropriate proceeding or contested

matter required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in paragraph 4(g) of this Final Order) challenging (or to the extent challenging) any of the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by no later than, with respect to parties in interest including any Creditors' Committee (if appointed), seventy-five (75) calendar days from entry of the Interim Order (the "Challenge Period"), *provided*, that (i) the timely filing of a motion seeking standing to file a Challenge before the expiration of the Challenge Period, which attaches a draft complaint setting forth the legal and factual bases of the proposed Challenge, shall toll the Challenge Period only as to the party that timely filed such standing motion until such motion is resolved or adjudicated by the Court and only with respect to such Challenge set forth in the draft complaint attached to the motion and (ii) if a chapter 7 trustee or a chapter 11 trustee is appointed or elected, so long as such appointment or election occurs prior to the last day of the then applicable Challenge Period, then such chapter 7 trustee or chapter 11 trustee, as applicable, shall be permitted to Challenge until the later of (x) the last day of the Challenge Period and (y) the date that is twenty (20) calendar days after the date on which such chapter 7 trustee or chapter 11 trustee, as applicable, was appointed or elected during the Challenge Period; and (b) this Court enters judgment (or to the extent judgment has been entered) in favor of the plaintiff or movant in any such timely and properly commenced Challenge, and any such judgment has become final and is not subject to any further review or appeal.  The Prepetition Agent, on behalf of the requisite Prepetition Secured Parties, stipulates and agrees that the Prepetition Agent, on behalf of the requisite Prepetition Secured Parties, will not raise as a defense in connection with any Challenge the ability of creditors to file derivative

suits on behalf of limited liability companies or limited partnerships under the Delaware Limited

Liability Company Act or the Delaware Limited Partnership Act, as applicable.

(b) *Binding Effect.* To the extent no Challenge is timely and properly

commenced during the Challenge Period by a party with requisite standing, or to the extent such

proceeding does not result in a final and non-appealable judgment or order of this Court that is

inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion,

or application to, order of, or hearing before, this Court, and without the need or requirement to

file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to this Final

Order, become binding, conclusive, and final on the Debtors, their estates, all creditors, any

person, entity, or party in interest in the Chapter 11 Cases, and their successors and assigns, and

in any Successor Case (as defined herein) for all purposes and shall not be subject to challenge or

objection by any party in interest, including, without limitation, a trustee, responsible individual,

examiner with expanded powers, or other representative of the Debtors' estates. More

specifically, as to (i) any parties in interest, including any Creditors' Committee (if appointed),

who fails to file a Challenge within the Challenge Period, or if any such Challenge is filed and

overruled, or (ii) any and all Prepetition Lien and Claim Matters that are not expressly the

subject of a timely Challenge: (A) any and all such Challenges by any party (including, without

limitation, any Creditors' Committee (if appointed), any chapter 11 trustee, any examiner or any

other estate representative appointed in these Chapter 11 Cases, or any chapter 7 trustee,

any examiner or any other estate representative appointed in any Successor Cases (as defined

herein)), shall be deemed to be forever waived and barred, (B) all of the findings, Debtors'

Stipulations, waivers, releases, affirmations, and other stipulations hereunder with respect to the

Prepetition Liens and Claims, including as to the priority, extent, validity, and enforceability of

the Prepetition First Priority Liens and the Prepetition Secured Obligations, shall be of full force and effect and forever binding upon the Debtors' estates and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Cases, and (C) the Prepetition Secured Parties and each their respective agents, officers, directors, employees, attorneys, consultants, professionals, successors, and assigns shall be deemed released and discharged from all claims and causes of action arising out of or in any way relating to the Prepetition Lien and Claim Matters and shall not be subject to any further objection or challenge by any party at any time.

(c)    *No Standing.*  Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including any Creditors' Committee (if appointed), standing or authority to pursue any claim or cause of action belonging to the Debtors and/or their estates, including, without limitation, any Challenge with respect to the Loan Documents, the Prepetition First Priority Liens, and/or the Prepetition Secured Obligations, but the rights of any party in interest (including any Creditors' Committee (if appointed)) to seek standing and/or the authority to pursue any claims or causes of action of the Debtors' estates are expressly preserved.

6.    <u>Termination Date</u>.  Unless otherwise ordered by this Court, the Debtors' authorization, and the Prepetition Secured Parties' consent, to use Cash Collateral in accordance with this Final Order shall terminate on the earliest to occur of (the "<u>Termination Date</u>"):  (a) the date that is 185 days after the Petition Date, unless such date is extended pursuant to the written consent by the Required Lenders; (b) the entry of an order approving a postpetition financing facility that has not been consented to by the Required Lenders; (c) the occurrence of an effective date of a confirmed chapter 11 plan; and (d) the delivery of a Termination Notice (as defined herein) by the Prepetition Agent, as and to the extent set forth in paragraph 16 hereof.

7.      <u>Reporting Requirements</u>.  The Debtors shall provide the Prepetition Agent with all reporting and other information required to be provided to the Prepetition Agent under and in accordance with the terms of the Loan Documents, respectively.  In addition, the Debtors shall comply with the following additional reporting requirements:

(a)      The Debtors shall deliver to the Prepetition Agent (a) a Proposed Budget on a bi-weekly (*i.e.*, every two weeks) basis and (b) the Budget Variance Report on a weekly basis, each as more fully set forth in paragraph 4 hereof;

(b)      Subject to applicable confidentiality obligations and restrictions imposed by the Federal Energy Regulatory Commission ("<u>FERC</u>"), the Debtors shall deliver to the Prepetition Agent on a go-forward basis, and solely to the extent permissible, copies of all notices and documents exchanged between the Debtors and FERC, and updates on material developments consistent with Section 5.10(f) of the Credit Agreement (collectively, the "<u>FERC Matters</u>"); and

(c)      The Debtors shall hold a weekly conference call with the Prepetition Agent and the Prepetition Secured Parties who elect to participate to discuss the Proposed Budget, the Budget Variance Report, any FERC Matters (subject to applicable confidentiality obligations), and the process of any sale or other disposition of all or any portion of the Prepetition Collateral.

8.      <u>Insurance</u>.  At all times, the Debtors shall maintain insurance coverage for the Prepetition Collateral and the Postpetition Collateral (as defined herein) on substantially the same basis as maintained prior to the Petition Date.

9.      <u>Adequate Protection</u>.  As adequate protection against any postpetition Diminution in Value of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash

Collateral) resulting from: (a) the imposition of the automatic stay or (b) the Debtors' use, sale, or disposition of the Prepetition Collateral (including Cash Collateral) during the Chapter 11 Cases (the "Senior Adequate Protection Obligations"), the Prepetition Agent, for itself and for the benefit of the Prepetition Secured Parties, shall receive the following adequate protection (collectively, the "Adequate Protection Package"):

(a)    *Adequate Protection Liens.*    Subject only to the Carve-Out (as defined herein) and the terms of this Final Order, pursuant to sections 361 and 363(e) of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, the Debtors are authorized to grant and hereby grant to the Prepetition Agent, for itself and for the benefit of the Prepetition Secured Parties, additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected, effective as of the Petition Date, postpetition security interests in and liens on (the "Senior Adequate Protection Liens"), without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, all of the right, title and interest of the Debtors and their estates (as created pursuant to section 541(a) of the Bankruptcy Code) in, to, and under all present and after-acquired property and assets of the Debtors of any nature whatsoever, whether real or personal, tangible or intangible, wherever located, including, without limitation, all cash and Cash Collateral of the Debtors, and any investment of such cash and Cash Collateral, accounts receivable and other rights to payment, whether arising before or after the Petition Date, inventory, general intangibles, chattel paper, real property and leaseholds and proceeds thereof (*provided*, *however*, that to the extent that any federal law, regulation or order thereunder or any Prepetition Secured Lender's internal regulatory or compliance requirements would require the completion of flood due diligence

and/or obtaining evidence of applicable flood insurance with respect to any real property or leasehold interest, then in such event the Prepetition Agent shall be granted a lien only on the economic value of, proceeds of sale or other disposition of, and any other proceeds and products of such real property or leasehold interests), plants, fixtures, machinery, equipment, commercial tort claims, deposit accounts, cash and cash equivalents, rights under letters of credit, capital stock and other equity or ownership interests held by the Debtors, including equity interests in subsidiaries and all other investment property, investments, patents, trademarks, trade names, copyrights, licenses, rights under license agreements and other intellectual property, intercompany notes or receivables due to each Debtor, all of the Collateral (as defined in the Credit Agreement), and as to all of the foregoing, all rents, issues, products, proceeds, and profits generated by any of the foregoing, and all proceeds of Avoidance Actions of the Debtors or their estates (collectively, the "Postpetition Collateral"); provided, however, that the Postpetition Collateral shall not include any proceeds recovered by the Debtors' estates on account of (i) any Avoidance Actions or other causes of action of the Debtors' estates against the Prepetition Secured Parties or (ii) any Avoidance Actions or other causes of action of the Debtors' estates against the holders of equity interests in the Debtors solely to the extent such recovery is found by a final non-appealable order to be based in whole or in substantial part on actions related to Debtor DevCo's contractual relationships with IEP.  The Senior Adequate Protection Liens shall be subject or junior only to (1) the Carve-Out and (2) the Permitted Encumbrances.  The Senior Adequate Protection Liens shall be enforceable against and binding upon the Debtors, their estates and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Debtors' Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Debtors' Chapter 11 Cases, or in any other

proceedings superseding or related to any of the foregoing (each, a "Successor Case").  For the avoidance of doubt, this Final Order, together with the Interim Order, shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of the Senior Adequate Protection Liens, without any further act and without the necessity of the execution, filing, or recording of any financing statement, mortgage, security agreement, pledge agreement, notice, or other instrument or document, or the registration of liens on any certificates of title, that may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action (including, without limitation, entering into any deposit account control agreement or other act to take possession or control of any Postpetition Collateral) to attach, validate, perfect, or prioritize such liens and security interests, or to entitle the Prepetition Secured Parties to the priorities granted herein.

(b)     *Allowed Superpriority Claims of the Prepetition Secured Parties.* Pursuant to section 507(b) of the Bankruptcy Code, the Prepetition Agent, for itself and for the benefit of the Prepetition Secured Parties, effective as of the entry of the Interim Order, is hereby further granted an allowed super-priority administrative expense claim (the "Superpriority Claim") in each of the Chapter 11 Cases or any Successor Case, solely to the extent of any Diminution in Value of the Prepetition Collateral, if any, subsequent to the Petition Date, which claims shall be junior only to the Carve-Out, but shall be senior to and have priority over all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726, and 1114 of the Bankruptcy Code or otherwise) and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever as set forth in and in accordance with

section 507(b) of the Bankruptcy Code.  The Superpriority Claim shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all Postpetition Collateral.  The Superpriority Claim shall be valid and enforceable against the Debtors, their estates, and any successors or assigns thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases.

(c)    *Adequate Protection Payments.*  On a monthly basis, the Debtors shall pay, in cash, to the Prepetition Agent for the benefit of the Prepetition Secured Parties all interest (together, for the avoidance of doubt, with any fees payable under the L/Cs) accruing and becoming due after the Petition Date at the applicable non-default rate under the applicable Loan Document (each such payment, the "Adequate Protection Payment"); *provided* that notwithstanding anything to the contrary set forth herein or in the Approved Budget, the Adequate Protection Payment shall only be paid to the extent that the Debtors maintain a cash balance of $17,500,000 or greater in the Accounts after effectuating any such Adequate Protection Payment.

(d)    *Payment of Agency Fees.*  The Prepetition Agent shall receive from the Debtors current cash payments of all reasonable and documented prepetition and postpetition fees, including agency fees and administrative fees, and out-of-pocket expenses incurred by and payable to the Prepetition Agent under the Loan Documents (the "Agency Fees").

(e)    *Payment of Advisors' Fees and Expenses.*  As further adequate protection, the Debtors shall pay in cash, without the need for the filing of formal fee applications:  (i) the reasonable and documented out-of-pocket professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of Mayer Brown LLP, as primary counsel to the Prepetition Agent, Potter Anderson & Corroon LLP, as Delaware counsel

to the Prepetition Agent, Goodwin Procter LLP, as Massachusetts counsel to the Prepetition Agent, and PJT Partners LP, as financial advisor to the Prepetition Agent (collectively, the "Advisors")) incurred by the Prepetition Agent in connection with the Loan Documents arising prior to the Petition Date; and (ii) the reasonable and documented out-of-pocket professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of the Advisors) incurred by the Prepetition Agent in connection with the Loan Documents and arising subsequent to the Petition Date (clauses (i) and (ii), collectively, the "Adequate Protection Fees" and together with the Agency Fees, the "Prepetition Secured Parties' Fees and Expenses").   After seven (7) calendar days from delivery of a monthly summary statement of any requested Adequate Protection Fees (which shall include the total number of hours billed by attorney or other professional but shall not be required to comply with any particular format, may be in summary form only and may include redactions necessary to maintain privilege)[6] to counsel to the Debtors, the U.S. Trustee, and counsel to any Creditors' Committee (if appointed), the Debtors shall pay such fees, costs, and expenses; *provided*, *however* that the Court shall have jurisdiction over any objections raised by the Debtors, the U.S. Trustee, or any Creditors' Committee (if appointed) to the invoiced amount of the fees, costs, and expenses proposed to be paid, which objections must be raised within seven (7) calendar days from delivery of such invoices to the Debtors, the U.S. Trustee, and counsel to any Creditors' Committee (if appointed).   In the event that within seven (7) calendar days from delivery of a monthly invoice, the Debtors, the U.S. Trustee, or any Creditors' Committee (if appointed) raises an objection to such invoice, and the parties are unable to resolve such

---

[6] Invoices for such fees, costs, and expenses provided to the Debtors, the U.S. Trustee, and counsel to any Creditors' Committee (if appointed), shall not be required to include any information subject to attorney-client privilege or any information constituting attorney work product.  Furthermore, the provision of information pursuant to the terms hereof shall in no event constitute a waiver of attorney-client privilege or of any benefits of the attorney work product doctrine.

objection, the Court shall hear and determine such dispute.  Any and all amounts paid by the

Debtors as Prepetition Secured Parties' Fees and Expenses are deemed permitted uses of Cash

Collateral hereunder and not subject to the Approved Budget or any Budget Variance Report.

(f)      *Compliance with the Budget.*    The Debtors shall comply with the

Approved Budget on the terms provided herein, subject to the Permitted Variances.

(g)      *Adequate Protection Reservation.*  The receipt by the Prepetition Secured

Parties of the Adequate Protection Package provided herein shall not be deemed an admission

that the interests of the Prepetition Secured Parties are adequately protected.  Further, this Final

Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional

relief with respect to the use of Cash Collateral or for additional adequate protection, without

prejudice to the respective rights of the Debtors, any Creditors' Committee (if appointed), or any

party in interest to contest the seeking of such relief by the Prepetition Secured Parties.  Each of

the Debtors shall be jointly and severally liable for the Adequate Protection Package provided for

herein, and any amendment or modification to the Adequate Protection Package shall require the

prior written consent of the Required Lenders.

10.      <u>Modification of Automatic Stay</u>.  The automatic stay under section 362(a) of the

Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of

the Interim Order and this Final Order, including, without limitation, to: (a) permit the Debtors to

grant the Adequate Protection Package as set forth herein; (b) permit the Debtors to perform such

acts as reasonably requested by the Prepetition Agent to assure the perfection and priority of the

Senior Adequate Protection Liens granted herein; (c) authorize the Debtors to make, and the

Prepetition Agent to retain and apply, payments in accordance with the terms of the Interim

Order or this Final Order, as applicable; (d) following a draw under any of the L/Cs, authorize

the respective issuing banks and lenders thereunder to apply any cash collateral securing such L/Cs in satisfaction of the Debtors' reimbursement obligations, without further order of the Court; and (e) in an abundance of caution, permit the Prepetition Agent to make any filings or perform other acts in accordance with applicable non-bankruptcy law necessary to retain the perfection and priority of the Prepetition First Priority Liens in respect of any postpetition change or attempted change of any of the Debtors' name or other trade and identifying information.

11.    <u>Adequate Protection to IEP</u>.    As adequate protection against any postpetition diminution in value of IEP's interests in the IEP Prepetition Collateral resulting from: (a) the imposition of the automatic stay or (b) the Debtors' use, sale, or disposition of the IEP Prepetition Collateral during the Chapter 11 Cases, the Debtors, pursuant to sections 361 and 363(e) of the Bankruptcy Code, hereby grant to IEP, effective as of the Petition Date, postpetition security interests in and replacement liens on the Postpetition Collateral (the "<u>IEP Adequate Protection Liens</u>"), without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents.    Without limiting the challenge provisions in paragraph 5 hereof, the IEP Adequate Protection Liens shall be subject to and junior to the Carve-Out, Permitted Encumbrances, the Prepetition First Priority Liens, and the Senior Adequate Protection Liens.    Pursuant to section 507(b) of the Bankruptcy Code, IEP is hereby granted an allowed superpriority administrative expense claim, which claim shall be subject to and junior to the Superpriority Claim and the Carve-Out, solely to the extent the IEP Adequate Protection Liens are insufficient to satisfy any valid diminution in value claim of IEP. Solely to the extent the IEP Lien is valid, secured, perfected, and unavoidable as of the Petition Date, the IEP Adequate Protection Liens shall be enforceable against and binding upon the

Debtors, their estates and any successors thereto, including any Successor Case, and this Final Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of the IEP Adequate Protection Liens, without any further act and without the necessity of the execution, filing, or recording of any financing statement, mortgage, security agreement, pledge agreement, notice, or other instrument or document, or the registration of liens on any certificates of title, that may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action to attach, validate, perfect, or prioritize such liens and security interests, or to entitle IEP to the priorities granted herein.  Notwithstanding anything to the contrary set forth herein, all parties' rights are reserved as to whether and to what extent IEP does, in fact, have valid, secured, enforceable, and unavoidable liens on any of the Debtors' property.

12.    <u>Cash Management</u>.    The Debtors shall maintain their cash management arrangements in a manner consistent with the *Final Order (A) Authorizing (I) Continued Use of Cash Management System, (II) Maintenance of Bank Accounts and Business Forms, (III) Performance of Intercompany Transactions, and (IV) Certain Prepetition Obligations to be Honored; (B) Granting Administrative Expense Priority Status to Postpetition Intercompany Claims; (C) Waiving Strict Compliance with 11 U.S.C. § 345(b) and Certain Operating Guidelines, as Applicable; and (D) Granting Related Relief* entered by this Court.

13.    <u>Disposition of Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any material portion of the Prepetition Collateral or the Postpetition Collateral outside of the ordinary course of business, except as contemplated by the "first day" and "second day" orders, as applicable, the Approved Budget, or the Approved Bid Procedures (as defined below), without the prior written consent of the Prepetition Agent, unless such sale,

transfer, lease, encumbrance or other disposition is approved by this Court and results in the indefeasible payment in full in cash of the Prepetition Secured Obligations and, with respect to any then undrawn L/Cs, either replacement thereof or the posting of cash collateral in the amount equal to 102.5% of any exposure under such L/Cs.

14.    <u>Milestones</u>.    The Prepetition Secured Parties have further conditioned the Debtors' use of Cash Collateral on compliance with the milestones set forth in the RSA (the "<u>Milestones</u>"), as may be extended or modified thereunder and consistent with the terms of the RSA.

15.    <u>Events of Default</u>.  The occurrence of any of the following events, unless waived in writing by the Required Lenders, shall constitute an event of default hereunder (each, an "<u>Event of Default</u>"):

(a)    termination of the RSA;

(b)    failure to meet or satisfy any of the reporting requirements under this Final Order, including such requirements identified in paragraph 7 hereof, and such failure shall continue unremedied for a period of two (2) Business Days after the Debtors receive notice of such failure;

(c)    failure to comply with the Approved Budget, subject to the Permitted Variances, or the use of any Cash Collateral or the Carve-Out in a manner not permitted by this Final Order;

(d)    failure to comply with the Minimum Cash Balance;

(e)    other than the Adequate Protection Package, the payment of professional fees and related expenses of any third party creditor or shareholder (excluding any Creditors'

Committee (if appointed)), unless otherwise consented to by the Required Lenders and authorized by an order of this Court;

(f)     filing of a motion, application or other pleading to (a) obtain postpetition financing that has not been previously consented to by the Required Lenders or (b) use Cash Collateral other than as permitted herein or consented to by the Required Lenders;

(g)     except as expressly provided in this Final Order, entry of an order subjecting or subordinating the Senior Adequate Protection Liens or making the Senior Adequate Protection Liens *pari passu* with (i) any intercompany claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor or (ii) any other lien or security interest under sections 361 or 363 of the Bankruptcy Code;

(h)     entry of an order subjecting the Superpriority Claim to, or making the Superpriority Claim *pari passu* with, any administrative expense claims heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726, and 1114 of the Bankruptcy Code or otherwise), except for the Carve-Out;

(i)     entry of a final order or a judgment by this Court or any other court granting relief from the automatic stay, without the consent of the Prepetition Agent, that would allow a third party to recover or obtain possession of any property of the Debtors' estates (other than cash deposits serving as collateral) with a value in excess of $500,000;

(j)     entry of an order or a judgment by this Court or any other court staying, reversing, vacating, amending, rescinding or otherwise modifying any of the terms of the Interim

Order or this Final Order, as applicable, or filing of a motion, application or other pleading by the Debtors seeking such entry, in each case without the consent of the Prepetition Agent;

(k)     the Debtors' continued use of Cash Collateral during the Remedies Notice Period (as defined below) in a manner not permitted by paragraph 16 hereof;

(l)     making of any material payments in respect of prepetition obligations other than as permitted pursuant to the Approved Budget or otherwise approved by the Court; or

(m)     dismissal of any of the Chapter 11 Cases or conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or the appointment of a chapter 11 trustee or an examiner with expanded powers in any of the Chapter 11 Cases.

16.     <u>Exercise of Remedies</u>.  Upon the occurrence and during the continuation of an Event of Default, unless such Event of Default has been waived in writing by the Prepetition Agent, the automatic stay imposed under section 362 of the Bankruptcy Code shall hereby be modified to permit the Prepetition Agent, upon the delivery of written notice (the "<u>Termination Notice</u>"), which may be provided by electronic mail and may include the Carve-Out Trigger Notice (if expressly designated as both a Carve-Out Trigger Notice and a Termination Notice), to counsel to the Debtors, counsel to any Creditors' Committee (if appointed), and the U.S. Trustee, to at the conclusion of the Remedies Notice Period (as defined below):  (a) terminate and/or revoke the Debtors' right under this Final Order to use any Cash Collateral of the Prepetition Secured Parties; (b) freeze monies or balances in any accounts subject to a control agreement or otherwise subject to a lien in favor of the Prepetition Secured Parties pursuant to the terms of this Final Order; (c) take any act to create, validate, evidence, attach, or perfect any lien, security interest, right, or claim in the Postpetition Collateral; and (d) take any action and exercise all rights and remedies provided to it by this Final Order, the Loan Documents,

applicable law, or otherwise; *provided* that, notwithstanding anything in this Final Order to the contrary, prior to the Prepetition Agent's exercise of any right set forth in clauses (a) through (d) of this paragraph, the automatic stay imposed under section 362 of the Bankruptcy Code shall not be so modified for a period of seven (7) calendar days (the "Remedies Notice Period") from the delivery of the Termination Notice, and, during the Remedies Notice Period, the Debtors shall be entitled to object to the termination of the consensual use of Cash Collateral solely on the basis that no Event of Default has occurred and to seek authority and approval for the non-consensual use of Cash Collateral, subject to the Prepetition Secured Parties' rights to object to, or otherwise oppose, any such non-consensual use of Cash Collateral and seek adequate protection in connection therewith.  Notwithstanding anything to the contrary set forth herein, during the Remedies Notice Period, the Debtors may use Cash Collateral of the Prepetition Secured Parties to pay the following amounts and expenses:  (a) the Carve-Out; (b) amounts that the Debtors have determined in good faith are necessary for the preservation of the Debtors' business and their estates; and (c) amounts otherwise approved in advance in writing by the Prepetition Agent.  On the first calendar day following the end of the Remedies Notice Period, except as provided herein or unless otherwise ordered by this Court, the Debtors will immediately cease using Cash Collateral hereunder and the Prepetition Agent may thereupon exercise the rights and remedies available under the Loan Documents, this Final Order or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Postpetition Collateral in order to collect any amounts payable to the Prepetition Secured Parties pursuant to the Interim Order or this Final Order and apply the same to such obligations.  The automatic stay under section 362 of the Bankruptcy Code shall be deemed immediately modified and terminated to the extent necessary to permit

such actions.  Any delay or failure of any of the Prepetition Secured Parties to exercise rights under any Loan Document, the Interim Order, or this Final Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise.  Notwithstanding the occurrence of a Termination Date, all of the rights, remedies, benefits, and protections provided to the Prepetition Secured Parties under the Interim Order or this Final Order as of such date shall survive the Termination Date.

17.    Carve-Out; Payment of Estate Professionals.

(a)    *Generally.*  As used in this Final Order, the "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) to the extent allowed at any time, all accrued or earned but unpaid reasonable fees and expenses, including any earned but unpaid transaction fee(s) (the "Allowed Professional Fees"), of professionals retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") or by any Creditors' Committee (if appointed) pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons"), at any time before or on the first Business Day after delivery by the Prepetition Agent of a Carve-Out Trigger Notice (as defined herein); and (iv) Allowed Professional Fees (excluding any transaction fee(s)) incurred after the first Business Day following delivery by the Prepetition Agent of a Carve-Out Trigger Notice (as defined herein), to the extent allowed at any time, in an aggregate amount not to exceed $1,250,000 (the amount set forth in clause (iv) being the "Carve-Out Trigger Notice Cap").  For purposes of the foregoing, "Carve-Out Trigger Notice" shall

mean a written notice delivered by email (or other electronic means) by the Prepetition Agent to the Debtors and their counsel, the U.S. Trustee, and counsel to any Creditors' Committee (if appointed), which notice may be delivered following the occurrence of an Event of Default or the Termination Date, stating that the Carve-Out Trigger Notice Cap has been triggered.

(b)    *Carve-Out Reserves.*  On the day on which a Carve-Out Trigger Notice is delivered by the Prepetition Agent to the Debtors and their counsel, the U.S. Trustee, and counsel to any Creditors' Committee (if appointed) (the "Carve-Out Trigger Date"), the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve (the "Pre-Carve-Out Trigger Notice Reserve") in an amount equal to the then unpaid Allowed Professional Fees, together with the other obligations set forth in clauses (i) and (ii) of the definition of Carve-Out set forth above.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees prior to any and all other claims.  On the Carve-Out Trigger Date, after funding the Pre-Carve-Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve (the "Post-Carve-Out Trigger Notice Reserve" and, together with the Pre-Carve-Out Trigger Notice Reserve, the "Carve-Out Reserves") in an amount equal to the Carve-Out Trigger Notice Cap.  All funds in the Pre-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve-Out set forth above (the "Pre-Carve-Out Amounts"), but not, for the avoidance of doubt, the Carve-Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agent for the benefit of the Prepetition Secured Parties, unless the Prepetition Secured Obligations have been indefeasibly

paid in full, in cash.  All funds in the Post-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve-Out set forth above (the "Post-Carve-Out Amounts"), and then, to the extent the Post-Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agent for the benefit of the Prepetition Secured Parties, unless the Prepetition Secured Obligations have been indefeasibly paid in full, in cash.  Notwithstanding anything to the contrary in the Loan Documents, or this Final Order, if either of the Carve-Out Reserves is not funded in full in the amounts set forth in this paragraph 17, then, any excess funds in one of the Carve-Out Reserves following the payment of the Pre-Carve-Out Amounts and Post-Carve-Out Amounts, respectively, shall be used to fund the other Carve-Out Reserve, up to the applicable amount set forth in this paragraph 17, prior to making any payments to the Prepetition Agent.  Notwithstanding anything to the contrary in the Loan Documents or this Final Order, following delivery of a Carve-Out Trigger Notice, the Prepetition Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve-Out Reserves, with any excess paid to the Prepetition Agent as provided above for application in accordance with the Loan Documents.  Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve-Out Reserves shall not constitute Obligations (as defined in the Credit Agreement) or increase or reduce the Prepetition Secured Obligations, (ii) the failure of the Carve-Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out, and (iii) in no way shall the Approved Budget, Carve-Out, Carve-Out Trigger Notice Cap, Carve-Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees

due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order or in any Loan Documents, the Carve-Out shall be senior to all liens on and claims against the Prepetition Collateral and Postpetition Collateral, including the Senior Adequate Protection Liens, the IEP Adequate Protection Liens, and the Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Obligations or granted to IEP hereunder.

(c)      *Reservation of Rights.*  The Prepetition Secured Parties reserve their rights to object to the allowance of any fees and expenses, including any fees and expenses sought that are not provided for in the Approved Budget.  The payment of any fees or expenses of the Professional Persons pursuant to the Carve-Out shall not, and shall not be deemed to, (i) reduce any Debtor's obligations owed to any of the Prepetition Secured Parties, or (ii) modify, alter, or otherwise affect any of the liens and security interests of such parties in the Postpetition Collateral or Prepetition Collateral (or their respective claims against the Debtors) except as provided herein.

(d)      *Payment of Allowed Professional Fees Prior to the Carve-Out Trigger Date.*  Any payment or reimbursement made prior to the occurrence of the Carve-Out Trigger Date in respect of any Allowed Professional Fees shall not reduce the Carve-Out.

(e)      *No Direct Obligation To Pay Allowed Professional Fees.*  None of the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in the Interim Order, this Final Order, or otherwise shall be construed to obligate the Prepetition Secured Parties, in

29290413.3

37

any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)     *Payment of Carve-Out On or After the Carve-Out Trigger Date.* Any payment or reimbursement made on or after the occurrence of the Carve-Out Trigger Date in respect of any Allowed Professional Fees from the Carve-Out Reserves (assuming such reserves are fully funded) shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

18.     <u>Release</u>.  Subject to the Challenge, the Debtors on behalf of themselves and their estates (including any successor trustee or other estate representative in any of the Chapter 11 Cases or Successor Cases) and any party acting by, or through, the Debtors or their estates, hereby, to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully, forever waive and release the Prepetition Agent and each of the other Prepetition Secured Parties, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest of any and all "claims" (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights that exist on the date hereof relating to any of the Prepetition Collateral and any of the Loan Documents or the transactions contemplated under any such documents, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, arising at law or in equity, including, without limitation, any so-called "lender liability," any challenge or claim to exercises of remedies, recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, and any and all claims and causes of action

regarding the validity, priority, perfection or avoidability of the liens or the claims of the Prepetition Agent and the other Prepetition Secured Parties.

19.     <u>Reversal, Modification, Vacatur, or Stay</u>.  Any reversal, modification, vacatur, or stay of any or all of the provisions of this Final Order shall not affect the validity or enforceability of any Senior Adequate Protection Liens, any IEP Adequate Protection Liens, or any claim, lien, security interest, or priority authorized or created hereby with respect to any Senior Adequate Protection Obligations or any forms of adequate protection, liens, or claims granted to IEP hereunder, in each case, incurred prior to the effective date of such reversal, modification, vacatur, or stay.  Notwithstanding any reversal, modification, vacatur, or stay (a) this Final Order shall govern, in all respects (and for the avoidance of doubt, over the Interim Order), any use of Cash Collateral, Adequate Protection Package, or any forms of adequate protection, liens, or claims granted to IEP hereunder, in each case, incurred by the Debtors prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the Prepetition Secured Parties and IEP shall be entitled to all the benefits and protections granted by this Final Order with respect to any such use of Cash Collateral or such Adequate Protection Package or any forms of adequate protection, liens, or claims granted to IEP hereunder, as applicable, incurred by the Debtors.

20.     <u>Reservation of Rights</u>.  Notwithstanding anything to the contrary herein, the entry of this Final Order and the transactions contemplated hereby shall not constitute an admission nor be deemed an admission by the Prepetition Secured Parties that, absent their consent to the Debtors' use of Cash Collateral under this Final Order, their interest in the Prepetition Collateral would be adequately protected.  Except as otherwise expressly set forth herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly,

29290413.3

or otherwise impair: (a) the Prepetition Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection; or (b) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Parties.

21.     <u>No Waiver for Failure to Seek Relief</u>.  The failure or delay of the Prepetition Secured Parties to seek relief or otherwise exercise any of their rights and remedies under the Interim Order, this Final Order, the Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the Prepetition Secured Parties.

22.     <u>Section 507(b) Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties or IEP hereunder is insufficient to compensate for the Senior Adequate Protection Obligations or the forms of adequate protection granted to IEP hereunder during the Chapter 11 Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Prepetition Secured Parties or IEP, that the adequate protection granted herein does in fact adequately protect the Prepetition Secured Parties against any Diminution in Value of their interests in and against the Prepetition Collateral (including the Cash Collateral) or IEP against any diminution in value of its interests in the IEP Prepetition Collateral.

23.     <u>Section 552(b) Waiver</u>.  The Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply.

24.    <u>Section 506(c) Waiver</u>.  The Debtors and their estates waive any claim under section 506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Prepetition Secured Parties upon the Prepetition Collateral or Postpetition Collateral.

25.    <u>No Marshalling/Application of Proceeds</u>.  In no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral or Postpetition Collateral or any proceeds thereof.

26.    <u>Good Faith</u>.  Based on the findings set forth in this Final Order and the record made during the Interim and Final Hearings, pursuant to sections 105, 361, and 363 of the Bankruptcy Code, the Debtors and the Prepetition Secured Parties are hereby found to be entities that have acted in good faith in connection with the negotiation and entry of the Cash Collateral Orders and are entitled to the protections afforded by section 363(m) of the Bankruptcy Code.

27.    <u>Governmental Units</u>.

(a)    Notwithstanding anything in this Final Order, nothing herein shall modify, impair, or affect any governmental unit's recoupment or setoff rights, claims, or defenses to the extent otherwise valid and enforceable.

(b)    Notwithstanding anything to the contrary in the Interim Order, this Final Order, or the Loan Documents, nothing in this Final Order, the Interim Order, or the Loan Documents shall relieve the Debtors of any of their respective obligations under federal, state, or local police or regulatory laws or under 28 U.S.C. § 959(b); *provided* that nothing in the Interim Order, this Final Order, or the Loan Documents shall limit or impair the Debtors' rights to assert

defenses under applicable law, but nothing herein shall create new defenses to such obligations under police or regulatory laws or 28 U.S.C. § 959(b).

(c)        Paragraphs D(v) and 28 of the Interim Order and Paragraphs D(v) and 29 of this Final Order shall apply to environmental liabilities to governmental units only so long as the actions of the Prepetition Secured Parties have not constituted and do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by the Debtors, or otherwise caused lender liability to arise or the status of control, responsible person, owner, or operator to exist under applicable federal, state, or local law.

(d)        Notwithstanding anything to the contrary in the Interim Order, this Final Order, or the Loan Documents, nothing in this Final Order, the Interim Order, or the Loan Documents shall:   (i) impair or adversely affect any right under applicable law of any governmental unit with respect to any financial assurance, letter of credit, trust, surety bond, or insurance proceeds;  or (ii) waive, impair, or adversely affect the United States' rights (if any), state's rights (if any), or the rights of an Indian tribe (if any), under applicable law, to refuse to provide its consent to the proposed assumption and/or assignment of any lease or executory contract; or (iii) limit any governmental unit in the exercise of its police powers in accordance with 11 U.S.C. § 362(b)(4).

28.    No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

29.    No Liability to Third Parties.  In permitting the use of the Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to the Interim Order or this

Final Order, the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to the Debtors, their creditors or estates, or shall constitute or be deemed to constitute a joint venture or partnership with the Debtors.  Furthermore, nothing in the Cash Collateral Orders shall in any way be construed or interpreted to impose upon the Prepetition Secured Parties any liability for any claims arising from the prepetition or postpetition activities of the Debtors and/or their affiliates (as defined in section 101(2) of the Bankruptcy Code).

30. <u>Master Proof of Claim</u>.  The Prepetition Secured Parties will not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases, and the Debtors' stipulations in paragraphs D, E, G, and H herein shall be deemed to constitute a timely filed proof of claim against the applicable Debtors; *provided*, *however*, that the Prepetition Agent (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized in its sole discretion to file (and amend and/or supplement, as it sees fit) a master proof of claim for the claims of the Prepetition Secured Parties arising from the applicable Loan Documents in accordance with any order entered by the Court in relation to the establishment of a bar date in these Chapter 11 Cases; *provided further* that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtors.

31. <u>Binding Effect of Final Order</u>.  The provisions of this Final Order shall be binding upon all parties in interest in the Chapter 11 Cases, including the Prepetition Secured Parties, any statutory committees that may be appointed in any Chapter 11 Cases, and the Debtors and their

respective successors and assigns and shall inure to the benefit of the Prepetition Secured Parties, IEP, the Debtors and their respective successors and assigns.  This Final Order shall bind any trustee hereafter appointed or elected for the Debtors' estates whether in the Chapter 11 Cases or any Successor Cases.  Such binding effect is a benefit of the Prepetition Secured Parties' bargain in connection with the Debtors' use of Cash Collateral and is an integral part of this Final Order.

32.    <u>Survival</u>.  The provisions of the Interim Order or this Final Order, as applicable, and any actions taken pursuant thereto or hereto shall survive the entry of any order: (a) confirming any chapter 11 plan, (b) converting the Chapter 11 Cases to chapter 7 cases, or (c) dismissing the Chapter 11 Cases.  The terms and provisions of the Interim Order and this Final Order, including, for the avoidance of doubt, the provisions in paragraph 5 hereof and thereof, as well as the adequate protection granted pursuant thereto shall continue in full force and effect notwithstanding the entry of any of the foregoing orders, and the claims and liens provided for herein shall maintain their priority as provided by this Final Order, the Loan Documents and to the maximum extent permitted by law until all of the Prepetition Secured Obligations are indefeasibly paid and satisfied in full in cash.

33.    <u>Effect of Dismissal</u>.  If the Chapter 11 Cases are dismissed or converted, such dismissal or conversion of the Chapter 11 Cases shall not affect the rights of the Prepetition Secured Parties and IEP (to the extent of the adequate protection provided hereunder) under the Interim Order or this Final Order, as applicable, and all rights and remedies hereunder or thereunder, as applicable, of the Prepetition Secured Parties and IEP (to the extent of adequate protection provided hereunder) shall remain in full force and effect as if the Chapter 11 Cases had not been dismissed or converted.  If an order dismissing the Chapter 11 Cases is entered, the adequate protection granted to and conferred upon the Prepetition Secured Parties and IEP as of

such date shall continue in full force and effect and this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the adequate protection provided for herein. The provisions of this Final Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any chapter 11 plan, dismissing the Chapter 11 Cases or converting the Chapter 11 Cases from chapter 11 to chapter 7.

34. <u>Findings of Fact and Conclusions of Law</u>. This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable effective as of the Petition Date immediately upon the entry thereof. To the extent that any findings of fact are determined to be conclusions of law, such findings of fact shall be adopted as such; and to the extent that any conclusions of law are determined to be findings of fact, such conclusions of law shall be adopted as such.

35. <u>Order Effective upon Entry</u>. Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

36. <u>Retention of Jurisdiction</u>. This Court has and will retain jurisdiction and power to enforce this Final Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

37. <u>Debtors' Authorization</u>. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

**Dated: April 22nd, 2022**
**Wilmington, Delaware**

29290413.3

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**