## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SALEM HARBOR POWER DEVELOPMENT LP (f/k/a Footprint Power Salem Harbor Development LP), *et al.*,[1] | Case No. 22-10239 (MFW) |
| Debtors. | (Jointly Administered) |

## <u>CERTIFICATE OF PUBLICATION</u>

I, Kenny Crespin, do declare and state as follows:

I am employed by Kroll Restructuring Administration LLC ("***Kroll***")[2], the claims and noticing agent for the Debtor in the above-captioned chapter 11 case.

This Certificate of Publication includes a sworn statement verifying that the *Notice of Entry of Bar Date Order Establishing Deadlines for Filing Proofs of Claim (Including 503(b)(9) Claims) Against the Debtors*, as confirmed for publication, was published (1) in the national edition of *The New York Times*, on April 27, 2022, as described in the sworn statement attached hereto as **<u>Exhibit A</u>**; and (2) in *The Boston Globe*, on April 27, 2022, as described in the sworn statement attached hereto as **<u>Exhibit B</u>**.

*[Remainder of Page Intentionally Left Blank]*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP) (1360); Highstar Salem Harbor Holdings GP, LLC (f/k/a Highstar Footprint Holdings GP, LLC) (2253); Highstar Salem Harbor Power Holdings L.P. (f/k/a Highstar Footprint Power Holdings L.P.) (9509); Salem Harbor Power FinCo GP, LLC (f/k/a Footprint Power Salem Harbor FinCo GP, LLC) (N/A); Salem Harbor Power FinCo, LP (f/k/a Footprint Power Salem Harbor FinCo, LP) (9219); and SH Power DevCo GP LLC (f/k/a Footprint Power SH DevCo GP LLC) (9008). The location of the Debtors' service address is: c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite 475, Spring, Texas 77380.

2 On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

Dated: May 4, 2022

/s/ Kenny Crespin
Kenny Crespin

State of New York
County of New York

Subscribed and sworn (or affirmed) to me on May 4, 2022, by Kenny Crespin, proved to me on the bases of satisfactory evidence to be the person who executed this affidavit.

/s/ HERBERT BAER
Notary Public, State of New York
No BA6205563
Qualified in Westchester County
Commission Expires May 11, 2025

**Exhibit A**



# PROOF OF PUBLICATION

Apr-27, 2022

I, Edgar Noblesala, in my capacity as a Principal Clerk of the Publisher of The New York Times a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on

Apr 27, 2022, NYT & Natl, pg B3

Sworn to me this 27th day
of April, 2022

Ellen Herb

Notary Public

Ellen Herb
Notary Public, State of New York
No. 01HE6163785
Qualified in New York County
Commission Expires April 2, 2023

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| In re: SALEM HARBOR POWER DEVELOPMENT LP (f/k/a Footprint Power Salem Harbor Development LP), *et al.*,[1] Debtors. | Chapter 11<br>Case No. 22-10239 (MFW)<br>(Jointly Administered)<br>**Docket Ref Nos. 66 & 120** |
|---|---|

**NOTICE OF ENTRY OF BAR DATE ORDER ESTABLISHING DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING 503(b)(9) CLAIMS) AGAINST THE DEBTORS**

**PLEASE TAKE NOTICE THAT:**

The United States Bankruptcy Court for the District of Delaware (the "Court") has entered an order (the "Bar Date Order")[2] establishing deadlines to file Proof of Claim for all potential claims (as defined below), including claims pursuant to section 503(b)(9) (each, a "503(b)(9) Claim") of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") against the above-captioned debtors and debtors in possession (collectively, the "Debtors") that arose prior to March 23, 2022 (the "Petition Date").

Pursuant to the terms of the Bar Date Order, and except as otherwise provided herein, each person or entity that holds or asserts a claim against the Debtors (including 503(b)(9) Claims) must file a Proof of Claim with original signature, substantially conforming to the proof of claim form attached hereto, so that it is actually received by Kroll Restructuring Administration LLC ("Kroll"),[3] the Court-approved claims and noticing agent in these chapter 11 cases, on or before the Bar Dates set forth below. Proofs of Claim must be sent by *first-class mail*, *overnight courier*, or *hand-delivery* to: **Salem Harbor Power Development LP, Claims Processing Center, c/o Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC), 850 3rd Avenue, Suite 412, Brooklyn, NY 11232.**

Alternatively, Proofs of Claim may be submitted electronically through the electronic filing system available at https://cases.ra.kroll.com/Salemharbor.

To be properly filed, a Proof of Claim must be filed against the specific Debtor against which the claimant holds or asserts a claim. For example, if a claimant holds or asserts a claim against Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP), the Proof of Claim must specify Salem Harbor Power Development LP. If a claimant wishes to assert a claim against more than one Debtor, separate Proofs of Claim must be filed against each applicable Debtor.

Proofs of claim will be deemed timely filed only if actually received by Kroll on or before the Bar Date associated with such claim. Further, except with respect to the electronic filing system described above, Kroll will not accept Proof of Claim sent by facsimile, telecopy, email, or other electronic submission, and such claims will not be deemed to be properly or timely filed claims.

***General Bar Date.*** **Except as otherwise provided herein, each person or entity holding or asserting a claim (including a 503(b)(9) Claim) against the Debtors that arose prior to the Petition Date must file a Proof of Claim so that it is actually received by Kroll on or before May 23, 2022 at 4:00 p.m. (prevailing Eastern Time) (the "General Bar Date").**

***Governmental Unit Bar Date.*** **Each governmental unit holding or asserting a claim against the Debtors that arose prior to the Petition Date must file a Proof of Claim so that it is actually received by Kroll on or before September 19, 2022 at 4:00 p.m. (prevailing Eastern Time) (the "Governmental Bar Date," and, together with the General Bar Date, the "Bar Dates").**

*Amended Schedules Bar Date.* If, on or after the date on which the Debtors serve this Notice, the Debtors amend or supplement their schedules of assets and liabilities or statements of financial affairs (collectively, the "Schedules") (a) to change the amount, nature, classification or characterization of a claim, or (b) to add a new claim to the Schedules, the affected claimant, if it disagrees with the amount, nature, classification or characterization of such claim, shall file a Proof of Claim or amend any previously filed Proof of Claim in respect of the amended scheduled claim so that the Proof of Claim is actually received by Kroll on or before the later of (y) the General Bar Date or (z) twenty-one (21) days after the claimant is served with notice of the applicable amendment or supplement to the Schedules.

*Rejection Bar Date.* A Proof of Claim relating to the Debtors' rejection of an executory contract or unexpired lease pursuant to a Court order must be filed so that it is actually received by Kroll on or before the later of (a) the General Bar Date or (b) thirty (30) days after the later of (i) the date of service of the Court order authorizing such rejection or (ii) the effective date of such rejection.

For purposes of the Bar Date Order and this Notice, and pursuant to section 101(5) of the Bankruptcy Code, the term "claim" means (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured as of the Petition Date. Further, a "503(b)(9) Claim" is a claim for the value of any goods received by the Debtors within twenty (20) days prior to the Petition Date in which the goods have been sold to the Debtors in the ordinary course of the Debtors' business.

Any person or entity (including, without limitation, any individual, partnership, joint venture, corporation, limited liability company, estate, trust or governmental unit) holding an interest in the Debtors (an "Interest Holder"), which interest is based exclusively upon the ownership of common or preferred stock in the corporation or other equity security (as defined in section 101(16) of the Bankruptcy Code), or warrants or rights to purchase, sell or subscribe to such a security (any such security being referred to in this Notice as an "Interest"), need not file a proof of interest on or before the General Bar Date; provided, however, that Interest Holders who wish to assert claims against the Debtors that arise out of or relate to the ownership or purchase of an Interest, including claims arising out of or relating to the sale, issuance, or distribution of such Interest, must file Proof of Claim on or before the General Bar Date (or, in the case of a governmental unit, the Governmental Bar Date), unless another exception identified in the Bar Date Order applies.

**ANY PERSON OR ENTITY THAT IS REQUIRED TO FILE A TIMELY PROOF OF CLAIM IN THE FORM AND MANNER SPECIFIED BY THE BAR DATE ORDER AND WHO FAILS TO DO SO ON OR BEFORE THE APPLICABLE BAR DATE: (A) SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS, THEIR ESTATES, OR PROPERTY OF THE DEBTORS, OR THEREAFTER FILING A PROOF OF CLAIM WITH RESPECT THERETO IN THE CHAPTER 11 CASES; (B) SHALL NOT, WITH RESPECT TO SUCH CLAIM, BE TREATED AS A CREDITOR OF THE DEBTORS FOR THE PURPOSES OF VOTING UPON ANY PLAN OF REORGANIZATION OR LIQUIDATION IN THESE PROCEEDINGS; AND (C) SHALL NOT RECEIVE OR BE ENTITLED TO RECEIVE ANY PAYMENT OR DISTRIBUTION OF PROPERTY FROM THE DEBTORS OR THEIR SUCCESSORS OR ASSIGNS WITH RESPECT TO SUCH CLAIM; PROVIDED, HOWEVER, THAT A CLAIMANT SHALL BE ABLE TO VOTE UPON, AND RECEIVE DISTRIBUTIONS UNDER, ANY PLAN OF REORGANIZATION OR LIQUIDATION IN THESE CHAPTER 11 CASES TO THE EXTENT, AND IN SUCH AMOUNT, AS ANY UNDISPUTED, NON-CONTINGENT, AND LIQUIDATED CLAIMS IDENTIFIED IN THE SCHEDULES ON BEHALF OF THE CLAIMANT.**

Acts or omissions of the Debtors, if any, that occurred prior to the Petition Date, including acts or omissions related to any indemnity agreements, guarantees, or services provided to or rendered by the Debtors, may give rise to claims against the Debtors notwithstanding the fact that such claims (or any injuries on which they are based) may be contingent or may not have matured or become fixed or liquidated prior to the Petition Date. Therefore, any person or entity that holds or asserts a claim or a potential claim against the Debtors, no matter how remote or contingent, must file a Proof of Claim on or before the General Bar Date.

Questions concerning the contents of this Notice, the Bar Date Order, and requests for Proofs of Claim should be directed via phone to Kroll's at (844) 205-7534 (U.S./Canada, toll-free) or +1 (646) 813-2944 (International), or by email to salemharborinfo@ra.kroll.com. Please note that Kroll's staff is not permitted to give legal advice. You should consult your own attorney for assistance regarding any other inquiries, such as questions concerning the completion or filing of a Proof of Claim. Nothing contained in this Notice shall preclude the Debtors from objecting to any filed claim on any grounds.

Dated: April 22, 2022, Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP,** */s/ Andrew L. Magaziner,* Pauline K. Morgan (No. 3650), Andrew L. Magaziner (No. 5426), Katelin A. Morales (No. 6683), Timothy R. Powell (No. 6894), Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Telephone: (302) 571-6600, Facsimile: (302) 571-1253, Email: pmorgan@ycst.com, amagaziner@ycst.com, kmorales@ycst.com, tpowell@ycst.com -and- **PAUL, WEISS, RIFKIND, HARTON & GARRISON LLP,** Brian S. Hermann (admitted *pro hac vice*), John T. Weber (admitted *pro hac vice*), Alice Nofzinger (admitted *pro hac vice*), 1285 Avenue of the Americas, New York, New York 10019, Tel: (212) 373-3000, Fax: (212) 757-3990, Email: bhermann@paulweiss.com, jweber@paulweiss.com, anofzinger@paulweiss.com, *Counsel to the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP) (1360); Highstar Salem Harbor Holdings GP, LLC (f/k/a Highstar Footprint Holdings GP, LLC) (2253); Highstar Salem Harbor Power Holdings L.P. (f/k/a Highstar Footprint Power Holdings L.P.) (9509); Salem Harbor Power FinCo GP, LLC (f/k/a Footprint Power Salem Harbor FinCo GP, LLC) (N/A); Salem Harbor Power FinCo, LP (f/k/a Footprint Power Salem Harbor FinCo, LP) (9219); and SH Power DevCo GP LLC (f/k/a Footprint Power SH DevCo GP LLC) (9008). The location of the Debtors' service address is: c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite 475, Spring, Texas 77380.

[2] Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to them in the Bar Date Order.

[3] On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

**INTERNATIONAL**

POOL PHOTO BY FINNBARR WEBSTER

**The Hinkley Point nuclear plant in England is expected to go online in 2026.**

# *Nuclear Energy Solution For Europe? Not So Fast.*

FROM FIRST BUSINESS PAGE

war in Ukraine pushes Europe to sever its dependence on Russian natural gas and oil, nuclear power's profile is rising, promising homegrown energy as well as reliable electricity.

Nuclear energy could help solve Europe's looming power crunch, advocates say, complementing a major pivot that was underway before the war to adopt solar and wind power and other renewable technologies to meet ambitious climate-change goals.

"Putin's invasion redefined our energy security considerations in Europe," said Fatih Birol, head of the International Energy Agency. He added, "I would expect that nuclear may well make a step back in Europe and elsewhere as a result of the energy insecurity."

But a nuclear revival is fraught with problems.

The dash to find ready alternatives to Russian fuel has magnified a political divide in Europe over nuclear power, as a bloc of pronuclear countries led by France, Europe's biggest atomic producer, pushes for a buildup while Germany and other like-minded countries oppose it, citing the dangers of radioactive waste. A recent European Commission plan for reducing dependence on Russia pointedly left nuclear power off a list of energy sources to be considered.

The delays and cost overruns dogging the Flamanville-3 project, a state of the art pressurized-water reactor designed to produce 1,600 megawatts of energy, are emblematic of wider technical, logistical and cost challenges facing an expansion.

A quarter of all electricity in the European Union comes from nuclear power produced in a dozen countries from an aging fleet that was mostly built in the 1980s. France, with 56 reactors, produces more than half the total.

A fleet of up to 13 new-generation nuclear reactors planned in France, using a different design from Flamanville's, wouldn't be ready until at least 2035.

Across the channel, Britain recently announced ambitions for up to eight new nuclear plants, but the reality is more sobering. Five of the six existing British reactors are expected to be retired within a decade because of age, while only one new nuclear station, a long-delayed, French-led giant costing 20 billion pounds (about $25 billion) at Hinkley Point in southwest England, is under construction. Its first part is expected to come online in 2026.

Others being considered in Eastern Europe aren't expected to come online before 2030.

"Nuclear is going to take so long" because the projects require at least 10 years for completion, said Jonathan Stern, a senior research fellow at the independent Oxford Institute for Energy Studies. "The big problem is getting off Russian gas, and that problem is now — not in a decade, when maybe we've built another generation of nuclear reactors," he added.

Advocates say nuclear power can be a solution if the political will is there.

Belgium's government, in agreement with the country's Green party, reversed a decision to phase out nuclear energy by 2025 and extended the life of two reactors for another decade as Russia intensified attacks on Ukraine in March. The energy will help Belgium avoid relying on Russian gas as it builds renewable power sources, including wind turbines and solar fields, to meet European climate goals by 2035.

"The invasion of Ukraine was a life changer," Belgium's energy minister, Tinne Van der Straeten, said last week, explaining the government's U-turn. "We wanted to reduce our imports from Russia."

But in Germany, which is more dependent than any other European country on Russian gas and coal, the idea of using nuclear power to bridge an energy crunch appears to be going nowhere.

Germany is scheduled to close its last three nuclear plants by the end of the year, the final chapter in a program that lawmakers approved to phase out the country's fleet of 17 reactors after the nuclear disaster in Fukushima, Japan, in 2011.

Two of Germany's largest energy companies said they were open to postponing the shutdown to help ease the nation's reliance on Russia. But the Green party, part of Berlin's governing coalition, ruled out continuing to operate them — let alone reopening three nuclear stations that closed in December.

"We decided for reasons that I think are very good and right that we want to phase them out," Chancellor Olaf Scholz told Parliament this month, adding that the idea of delaying Germany's exit from nuclear power was "not a good plan."

Even in countries that see nuclear power as a valuable option, a host of hurdles lie in the way. "It is not going to happen overnight," said Mark Hibbs, a nuclear expert at the Carnegie Endowment for International Peace, a research organization.

President Emmanuel Macron's plans for a nuclear power renaissance in France envision a wave of large and small new-generation atomic reactors at an estimated starting price of €50 billion ($53 billion) — a staggering cost that other European countries can't or won't take on. Buildup won't be fast, he acknowledged, in part because the industry also needs to train a new generation of nuclear power engineers.

"Most governments push and push, and even if they start building it takes a long time," Mr. Stern of the Oxford Institute for Energy Studies said. "All these other technologies are advancing rapidly, and they're all getting cheaper, while nuclear isn't advancing and it's getting more expensive."

In the meantime, many of France's aging reactors, built to forge energy independence after the 1970s oil crisis, have been paused for safety inspections, making it difficult for French nuclear power to help bridge a Russian energy squeeze, said Anne-Sophie Corbeau of the Center on Global Energy Policy at Columbia University.

***Delays hinder atomic power as a way to cut ties to Russia quickly.***

"Nuclear production will decrease in France this year unless you find a magic solution, but there is no magic solution," she said.

Still, Moscow's aggression may help reverse what had been an arc of the industry's gradual decline.

Recently there has been a string of upbeat declarations. The Netherlands, with one reactor, plans to build two more to supplement solar, wind and geothermal energy.

And in Eastern Europe, a number of countries in Russia's shadow had been making plans to build fleets of nuclear reactors — a move that advocates say appears prescient in the wake of Russia's invasion of Ukraine.

NuScale Power, an Oregon company selling a new reactor design that it claims will be cheaper and quicker to build because key components will be assembled in factories, has signed preliminary deals in Romania and Poland.

Russia's invasion has reinforced customers' "desire to consider nuclear being part of the overall energy mix for their portfolios," said Tom Mundy, the company's chief commercial officer.

Nuclearelectrica, the Romanian power company, is pushing ahead with a NuScale plant and two Canadian reactors, to accompany a pair of nuclear facilities that generate about 20 percent of the country's electricity, said Cosmin Ghita, the chief executive.

"The Ukraine crisis has definitely shown us the need to bolster energy security," Mr. Ghita said. "We are gaining more traction for our projects."

Meike Becker, a utilities analyst at Bernstein, a research firm, said that in the long run, Russia's war was likely to "help the European idea" of being more energy independent. "That is something that nuclear can deliver," she added.

Liz Alderman reported from Paris, and Stanley Reed from London.

# Countries Had Same Aid Goal, but Different Costs

FROM FIRST BUSINESS PAGE

is that "inflation could stay higher, or the Fed could control it by lowering output in the future."

The Biden administration has repeatedly argued that, to the extent the United States is seeing more inflation, the policy response to the pandemic also created a stronger economy.

"We got a lot more growth, we got less child poverty, we got better household balance sheets, we have the strongest labor market by some metrics I've ever seen," Jared Bernstein, an economic adviser to President Biden, said in an interview. "Were all of those accomplishments accompanied by heat on the price side? Yes, but some degree of that heat showed up in every advanced economy, and we wouldn't trade that back for the historic recovery we helped to generate."

Inflation has picked up around the world, but price increases have been quicker in America than in many other wealthy nations.

GABBY JONES FOR THE NEW YORK TIMES

**A shopper in Brooklyn last month. The Biden administration argues that, despite price gains, their pandemic spending created a stronger economy.**

Consumer prices were up 9.8 percent in March from a year earlier, according to a measure of inflation that strips out owner-occupied housing to make it comparable across countries. That was faster than in Germany, where prices rose 7.6 percent in the same period; Britain, where they rose 7 percent; and other European countries. Other measures similarly show U.S. inflation outpacing that of its global peers.

The comparatively large jump in prices in America is owed at least partly to the nation's ambitious spending. Research from the Federal Reserve Bank of San Francisco attributed about half the nation's 2021 annual price increase to the government's spending response. The researchers estimated the number, which is imprecise, by comparing America's inflation outcome with what happened in countries that spent less.

"The size of the package was very large compared to any other country," said Òscar Jordà, a coauthor of the study.

The Trump and Biden administrations spent about $5 trillion on pandemic relief in 2020 and 2021 — far more as a share of the nation's economy than what other advanced economies spent, based on a database compiled by the International Monetary Fund. Much of that money went directly to households in the form of stimulus checks, expanded unemployment insurance and tax credits for parents.

Payments to households helped to fuel rapid consumer demand and quick economic growth — progress that has continued into 2022. A global economic outlook released by the International Monetary Fund last week showed that America's economy is expected to expand by 3.7 percent this year, faster than the roughly 2 percent trend that prevailed before the pandemic and the 3.3 percent average expected across advanced economies this year.

That followed even more rapid 2021 growth. And as the U.S. economy has expanded so quickly, unemployment has plummeted. After spiking to 14.7 percent in early 2020, joblessness is roughly back to the 50-year lows that prevailed before the pandemic.

That's a victory that politicians have celebrated. "Our economy roared back faster than most predicted," Mr. Biden said in his State of the Union address last month. A major report from the White House on April 14 noted that the United States had experienced a faster recovery than other advanced economies, as measured by gross domestic product, consumer spending and other indicators.

But increasingly, at least when it comes to the job market, America's achievement looks less unique.

Unemployment in the United States jumped much higher at the outset of the pandemic in part because America's policies did less to discourage layoffs than those in Europe. While many European governments paid companies to keep workers on their payrolls, the U.S. focused more on providing money directly to those who lost their jobs.

Joblessness fell fast in the United States, too, but that was also true elsewhere. Many European countries, Canada and Australia are now back to or below their prepandemic unemployment rates, data reported by the Organization for Economic Cooperation and Development showed.

And when it comes to the share of people who are actually working, the United States is lagging some of its global peers. The nation's employment rate is hovering around 71.4 percent, still down slightly from nearly 71.8 percent before the pandemic.

By comparison, the eurozone countries, Canada and Australia have higher employment rates than before the pandemic, and Japan's employment rate has fully recovered.

Europe's more complete employment recovery may partly reflect its different regulations and different approach to supporting workers during the pandemic, said Nick Bennenbroek, international economist at Wells Fargo. European aid programs effectively paid companies to keep people on the payroll even when they couldn't go to work, while the United States supported workers directly through the unemployment insurance system.

That relatively subtle difference had a major consequence: Because fewer Europeans were separated from employers, many flowed right back into their old jobs as the economy reopened. But pandemic layoffs touched off an era of soul-searching and job shuffling in the United States.

"You didn't have as much motivation to reconsider your assessment of your work-life situation," Mr. Bennenbroek said. "What we initially saw in the U.S. was much more disruptive."

Disruption has had its upsides. America now has a record 1.8 jobs open for every unemployed worker, which has in some ways given employees more power to demand more flexible schedules, better benefits and higher pay.

Wages in the United States are rising at the fastest pace in four decades, while pay growth in Europe has been more subdued. Mr. Bernstein, the White House adviser, called America's situation now "the strongest job market in generations."

**'The size of the package was very large compared to any other country.'**

Òscar Jordà, who compared U.S. pandemic spending to the policies and inflation outcomes of different countries.

But the red-hot labor market carries its own risks. For one thing, wage growth is not keeping up with rapid inflation for many people, leaving some households behind even as their paychecks get bigger. And the ratcheting up in wages could prompt companies to try to cover their costs by raising prices even more.

Higher wages can be a "feeder for inflation," Mary C. Daly, president of the Federal Reserve Bank of San Francisco, told reporters on Wednesday.

"It's unsustainably hot," Jerome H. Powell, the Fed chair, said of the job market during an event on Thursday. "It's our job to get it to a better place where supply and demand are closer together."

America's heady pay gains could mean that the Fed has to react more aggressively to slow down the economy. The central bank is trying to tame inflation by lifting interest rates in a bid to make money more expensive to borrow, which can slow spending and cool off economic conditions.

But if the Fed has to raise rates to high levels to restore economic calm, it could touch off a recession that pushes the unemployment rate higher. Mr. Powell and his colleagues have said they hope they can manage to land the economy softly without inducing that kind of pain — but they acknowledge that a downturn is a risk.

Ultimately, the legacy of America's big relief programs may depend on what happens in the months ahead. If inflation moderates without painful action by the Fed — something some economists still believe is at least possible if the pandemic fades, supply chains normalize and workers return to the job market — then the brief period of rapid price gains may end up looking like a relatively small price to pay for a strong economic recovery that in some ways outstripped those staged abroad.

But if central bankers decide they need to take more drastic steps, resulting in a recession, it could reverse some of the recent progress — and the consequences are likely to be worse for low-wage workers who have experienced the strongest job and wage gains.

The war in Ukraine could complicate attempts to judge America's performance against its global peers. Economic growth in Europe had been accelerating late last year, but the Russian invasion — and the spike in fuel costs that came with it — is threatening to derail the recovery there. The United States could also face consequences, but is comparatively insulated from the Russian and Ukrainian economies.

"Europe was doing well and I was very optimistic prior to the war," said Gian Maria Milesi-Ferretti, an economist at the Brookings Institution who has studied the recoveries in the United States and Europe. "But now the war shock is completely asymmetric between the U.S. and Europe."

Central banks around the world are responding as prices climb rapidly. Rate increases are underway in Britain, and European policymakers have become more wary as inflation has jumped higher. That could mean that those economies, having accelerated through a recovery together, now slow in tandem.

"For a while, inflation started to move up and central banks remained very tranquil about that — but that time has passed," said Carlos Viana de Carvalho, an economist at the Brazilian asset manager Kapitalo Investimentos and a former Fed economist. "The attitude has changed."

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| In re: | |
|---|---|
| SALEM HARBOR POWER DEVELOPMENT LP (f/k/a Footprint Power Salem Harbor Development LP), *et al.*,[1] Debtors. | Chapter 11<br>Case No. 22-10239 (MFW)<br>(Jointly Administered) |

**NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' ASSETS**

**PLEASE TAKE NOTICE** that on April 20, 2022, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (II) Scheduling Certain Dates Related Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief* [D.I. 127] (the "Bidding Procedures Order"),[2] authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to conduct an auction (the "Auction"), if any, to select the party or parties to purchase all or substantially all of the Debtors' assets (the "Assets" and such transaction, the "Sale Transaction") pursuant to the *Joint Chapter 11 Plan of Salem Harbor Power Development LP and Its Debtor Affiliates* [D.I. 128] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"). The Auction will be governed by the bidding procedures approved pursuant to the Bidding Procedures Order (attached to the Bidding Procedures Order as Exhibit 1, the "Bidding Procedures").

The Plan contemplates a "toggle" structure, whereby the Debtors will elect to pursue either a standalone restructuring transaction (the "Standalone Restructuring Transaction") or, to the extent the Debtors, in consultation with the Consultation Parties (as defined in the Bidding Procedures), determine the Sale Transaction (if any) will maximize value to the Debtors' estates and result in greater value than that implied by the Standalone Restructuring Transaction, the Sale Transaction (such election between the Standalone Restructuring Transaction and the Sale Transaction, the "Transaction Election"). The Transaction Election shall occur no later than Transaction Election Deadline (as defined in the Bidding Procedures).

**Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Kroll Restructuring Administration LLC by calling (844) 205-7534 (Domestic, toll-free) or +1 (646) 813-2944 (International), emailing salemharborinfo@ra.kroll.com, or visiting the Debtors' restructuring website at https://cases.ra.kroll.com/SalemHarbor.**

**PLEASE TAKE FURTHER NOTICE** that the **Bid Deadline is June 10, 2022 at 5:00 p.m. (prevailing Eastern Time)**, and that any person or entity who wishes to participate in the Auction, if any, must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors, to the extent necessary, intend to conduct the Auction, if any, at which they will consider proposals submitted to the Debtors and their advisors, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **June 14, 2022 at 10:00 a.m. (prevailing Eastern Time)**, at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 or by remote video, or such later date and time as selected by the Debtors after consultation with the Consultation Parties.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to modify the Bidding Procedures, in their reasonable business judgment in accordance with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that **July 13, 2022 at 10:30 a.m. (prevailing Eastern Time) or as soon thereafter as the Debtors may be heard**, shall be the date and time for the hearing at which the Court will consider approval of the Sale Transaction, if any, in connection with confirmation of the Plan (the "Confirmation Hearing"). **The Confirmation Hearing may be continued to a later date by the Debtors, after consultation with the Consultation Parties, by sending notice prior to, or making an announcement at, the Confirmation Hearing. No further notice of any such continuance will be required to be provided to any party.**

**PLEASE TAKE FURTHER NOTICE** that the deadline to object to confirmation of the Plan, including consummation of the proposed Sale Transaction, if any, pursuant to the Plan, shall be set forth in the Court's order approving the *Disclosure Statement for Joint Chapter 11 Plan of Salem Harbor Power Development LP and Its Debtor Affiliates* [D.I. 129] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") and related solicitation and notice procedures.

**PLEASE TAKE FURTHER NOTICE** that, solely to the extent the Transaction Election is made for the Sale Transaction, at the Confirmation Hearing, the Debtors, in consultation with the Consultation Parties, shall present the Successful Bid to the Court for approval. The Successful Bidder shall appear at the Confirmation Hearing and be prepared to have a representative testify in support of its Successful Bid and such Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned as part of the proposed Sale Transaction (the "Assigned Contracts").

**PLEASE TAKE FURTHER NOTICE** that the deadline to object to the assumption and assignment of the Assigned Contracts pursuant to the Plan in connection with the Sale Transaction and any related cure amounts (the "Assigned Contract Objection Deadline") is set for **July 6, 2022 at 4:00 p.m. (prevailing Eastern Time)**. Any objection must: (a) be in writing; (b) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, and any order governing the administration of these chapter 11 cases; (c) state with specificity the nature of the objection and, if the objection pertains to the proposed cure costs, state the cure amount alleged to be owed to the objecting contract counterparty, together with any applicable and appropriate documentation in support thereof; and (d) be filed with the Court in accordance with the customary practices of the Court and served and **actually received** by the no later than the Assigned Contract Objection Deadline by the Court and the following parties: (i) the Debtors, Salem Harbor Power Development LP, c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite #475, Spring, Texas 77380 Attn: John Lambert (jlambert@tateswood.com); (ii) the Debtors' counsel, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Brian S. Hermann (bhermann@paulweiss.com), John T. Weber (jweber@paulweiss.com), and Alice Nofzinger (anofzinger@paulweiss.com); (iii) the Debtors' co-counsel, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801, Attn: Andrew L. Magaziner (amagaziner@ycst.com) and Katelin A. Morales (kmorales@ycst.com); (iv) the United States Trustee, United States Department of Justice, Office of the United States Trustee, 844 N. King Street, Suite #2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Joseph Cudia (joseph.cudia@usdoj.gov); (v) counsel to the Prepetition Agent, Mayer Brown LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn: Brian Trust (btrust@mayerbrown.com) and Joaquin M. C De Baca (jcdebaca@mayerbrown.com); (vi) Delaware counsel to the Prepetition Agent, Potter Anderson & Corroon LLP, 1313 N. Market Street, P.O. Box 951, Wilmington, Delaware 19801, Attn: Christopher M. Samis (csamis@potteranderson) and L. Katherine Good (kgood@potteranderson.com); and (vii) counsel to the official committee of unsecured creditors appointed by the Office of the United States Trustee, if any.

Dated: April 21, 2022, Wilmington, Delaware, **YOUNG CONAWAY STARGATT & TAYLOR, LLP,** */s/ Andrew L. Magaziner* , Pauline K. Morgan (No. 3650), Andrew L. Magaziner (No. 5426), Katelin A. Morales (No. 6683), Timothy R. Powell (No. 6894), Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Telephone: (302) 571-6600, Facsimile: (302) 571-1253, Email: pmorgan@ycst.com, amagaziner@ycst.com, kmorales@ycst.com, tpowell@ycst.com -and- **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP,** Brian S. Hermann (admitted *pro hac vice*), John T. Weber (admitted *pro hac vice*), Alice Nofzinger (admitted *pro hac vice*), 1285 Avenue of the Americas, New York, New York 10019, Tel: (212) 373-3000, Fax: (212) 757-3990, Email: bhermann@paulweiss.com, jweber@paulweiss.com, anofzinger@paulweiss.com, *Counsel to the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP) (1360); Highstar Salem Harbor Holdings GP, LLC (f/k/a Highstar Footprint Holdings GP, LLC) (2253); Highstar Salem Harbor Power Holdings L.P. (f/k/a Highstar Footprint Power Holdings L.P.) (9509); Salem Harbor Power FinCo GP, LLC (f/k/a Footprint Power Salem Harbor FinCo GP, LLC) (N/A); Salem Harbor Power FinCo, LP (f/k/a Footprint Power Salem Harbor FinCo, LP) (9219); and SH Power DevCo GP LLC (f/k/a Footprint Power SH DevCo GP LLC) (9008). The location of the Debtors' service address is: c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite 475, Spring, Texas 77380.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| In re: | |
|---|---|
| SALEM HARBOR POWER DEVELOPMENT LP (f/k/a Footprint Power Salem Harbor Development LP), *et al.*,[1] Debtors. | Chapter 11<br>Case No. 22-10239 (MFW)<br>(Jointly Administered)<br>**Docket Ref Nos. 66 & 120** |

**NOTICE OF ENTRY OF BAR DATE ORDER ESTABLISHING DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING 503(b)(9) CLAIMS) AGAINST THE DEBTORS**

**PLEASE TAKE NOTICE THAT:**

The United States Bankruptcy Court for the District of Delaware (the "Court") has entered an order (the "Bar Date Order")[2] establishing deadlines to file Proof of Claim for all potential claims (as defined below), including claims pursuant to section 503(b)(9) (each, a "503(b)(9) Claim") of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") against the above-captioned debtors and debtors in possession (collectively, the "Debtors") that arose prior to March 23, 2022 (the "Petition Date").

Pursuant to the terms of the Bar Date Order, and except as otherwise provided herein, each person or entity that holds or asserts a claim against the Debtors (including 503(b)(9) Claims) must file a Proof of Claim with original signature, substantially conforming to the proof of claim form attached hereto, so that it is actually received by Kroll Restructuring Administration LLC ("Kroll"),[3] the Court-approved claims and noticing agent in these chapter 11 cases, on or before the Bar Dates set forth below. Proofs of Claim must be sent by *first-class mail*, *overnight courier*, or *hand-delivery* to: **Salem Harbor Power Development LP, Claims Processing Center, c/o Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC), 850 3rd Avenue, Suite 412, Brooklyn, NY 11232.**

Alternatively, Proofs of Claim may be submitted electronically through the electronic filing system available at https://cases.ra.kroll.com/Salemharbor.

To be properly filed, a Proof of Claim must be filed against the specific Debtor against which the claimant holds or asserts a claim. For example, if a claimant holds or asserts a claim against Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP), the Proof of Claim must specify Salem Harbor Power Development LP. If a claimant wishes to assert a claim against more than one Debtor, separate Proofs of Claim must be filed against each applicable Debtor.

Proofs of claim will be deemed timely filed only if actually received by Kroll on or before the Bar Date associated with such claim. Further, except with respect to the electronic filing system described above, Kroll will not accept Proof of Claim sent by facsimile, telecopy, email, or other electronic submission, and such claims will not be deemed to be properly or timely filed claims.

***General Bar Date.*** **Except as otherwise provided herein, each person or entity holding or asserting a claim (including a 503(b)(9) Claim) against the Debtors that arose prior to the Petition Date must file a Proof of Claim so that it is actually received by Kroll on or before May 23, 2022 at 4:00 p.m. (prevailing Eastern Time) (the "General Bar Date").**

***Governmental Unit Bar Date.*** **Each governmental unit holding or asserting a claim against the Debtors that arose prior to the Petition Date must file a Proof of Claim so that it is actually received by Kroll on or before September 19, 2022 at 4:00 p.m. (prevailing Eastern Time) (the "Governmental Bar Date," and, together with the General Bar Date, the "Bar Dates").**

*Amended Schedules Bar Date.* If, on or after the date on which the Debtors serve this Notice, the Debtors amend or supplement their schedules of assets and liabilities or statements of financial affairs (collectively, the "Schedules") (a) to change the amount, nature, classification or characterization of a claim, or (b) to add a new claim to the Schedules, the affected claimant, if it disagrees with the amount, nature, classification or characterization of such claim, shall file a Proof of Claim or amend any previously filed Proof of Claim in respect of the amended scheduled claim so that the Proof of Claim is actually received by Kroll on or before the later of (y) the General Bar Date or (z) twenty-one (21) days after the claimant is served with notice of the applicable amendment or supplement to the Schedules.

*Rejection Bar Date.* A Proof of Claim relating to the Debtors' rejection of an executory contract or unexpired lease pursuant to a Court order must be filed so that it is actually received by Kroll on or before the later of (a) the General Bar Date or (b) thirty (30) days after the later of (i) the date of service of the Court order authorizing such rejection or (ii) the effective date of such rejection.

For purposes of the Bar Date Order and this Notice, and pursuant to section 101(5) of the Bankruptcy Code, the term "claim" means (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured as of the Petition Date. Further, a "503(b)(9) Claim" is a claim for the value of any goods received by the Debtors within twenty (20) days prior to the Petition Date in which the goods have been sold to the Debtors in the ordinary course of the Debtors' business.

Any person or entity (including, without limitation, any individual, partnership, joint venture, corporation, limited liability company, estate, trust or governmental unit) holding an interest in the Debtors (an "Interest Holder"), which interest is based exclusively upon the ownership of common or preferred stock in the corporation or other equity security (as defined in section 101(16) of the Bankruptcy Code), or warrants or rights to purchase, sell or subscribe to such a security (any such security being referred to in this Notice as an "Interest"), need not file a proof of interest on or before the General Bar Date; provided, however, that Interest Holders who wish to assert claims against the Debtors that arise out of or relate to the ownership or purchase of an Interest, including claims arising out of or relating to the sale, issuance, or distribution of such Interest, must file Proof of Claim on or before the General Bar Date (or, in the case of a governmental unit, the Governmental Bar Date), unless another exception identified in the Bar Date Order applies.

**ANY PERSON OR ENTITY THAT IS REQUIRED TO FILE A TIMELY PROOF OF CLAIM IN THE FORM AND MANNER SPECIFIED BY THE BAR DATE ORDER AND WHO FAILS TO DO SO ON OR BEFORE THE APPLICABLE BAR DATE: (A) SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS, THEIR ESTATES, OR PROPERTY OF THE DEBTORS, OR THEREAFTER FILING A PROOF OF CLAIM WITH RESPECT THERETO IN THE CHAPTER 11 CASES; (B) SHALL NOT, WITH RESPECT TO SUCH CLAIM, BE TREATED AS A CREDITOR OF THE DEBTORS FOR THE PURPOSES OF VOTING UPON ANY PLAN OF REORGANIZATION OR LIQUIDATION IN THESE PROCEEDINGS; AND (C) SHALL NOT RECEIVE OR BE ENTITLED TO RECEIVE ANY PAYMENT OR DISTRIBUTION OF PROPERTY FROM THE DEBTORS OR THEIR SUCCESSORS OR ASSIGNS WITH RESPECT TO SUCH CLAIM; PROVIDED, HOWEVER, THAT A CLAIMANT SHALL BE ABLE TO VOTE UPON, AND RECEIVE DISTRIBUTIONS UNDER, ANY PLAN OF REORGANIZATION OR LIQUIDATION IN THESE CHAPTER 11 CASES TO THE EXTENT, AND IN SUCH AMOUNT, AS ANY UNDISPUTED, NON-CONTINGENT, AND LIQUIDATED CLAIMS IDENTIFIED IN THE SCHEDULES ON BEHALF OF THE CLAIMANT.**

Acts or omissions of the Debtors, if any, that occurred prior to the Petition Date, including acts or omissions related to any indemnity agreements, guarantees, or services provided to or rendered by the Debtors, may give rise to claims against the Debtors notwithstanding the fact that such claims (or any injuries on which they are based) may be contingent or may not have matured or become fixed or liquidated prior to the Petition Date. Therefore, any person or entity that holds or asserts a claim or a potential claim against the Debtors, no matter how remote or contingent, must file a Proof of Claim on or before the General Bar Date.

Questions concerning the contents of this Notice, the Bar Date Order, and requests for Proofs of Claim should be directed via phone to Kroll's at (844) 205-7534 (U.S./Canada, toll-free) or +1 (646) 813-2944 (International), or by email to salemharborinfo@ra.kroll.com. Please note that Kroll's staff is not permitted to give legal advice. You should consult your own attorney for assistance regarding any other inquiries, such as questions concerning the completion or filing of a Proof of Claim. Nothing contained in this Notice shall preclude the Debtors from objecting to any filed claim on any grounds.

Dated: April 22, 2022, Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP,** */s/ Andrew L. Magaziner,* Pauline K. Morgan (No. 3650), Andrew L. Magaziner (No. 5426), Katelin A. Morales (No. 6683), Timothy R. Powell (No. 6894), Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Telephone: (302) 571-6600, Facsimile: (302) 571-1253, Email: pmorgan@ycst.com, amagaziner@ycst.com, kmorales@ycst.com, tpowell@ycst.com -and- **PAUL, WEISS, RIFKIND, HARTON & GARRISON LLP,** Brian S. Hermann (admitted *pro hac vice*), John T. Weber (admitted *pro hac vice*), Alice Nofzinger (admitted *pro hac vice*), 1285 Avenue of the Americas, New York, New York 10019, Tel: (212) 373-3000, Fax: (212) 757-3990, Email: bhermann@paulweiss.com, jweber@paulweiss.com, anofzinger@paulweiss.com, *Counsel to the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP) (1360); Highstar Salem Harbor Holdings GP, LLC (f/k/a Highstar Footprint Holdings GP, LLC) (2253); Highstar Salem Harbor Power Holdings L.P. (f/k/a Highstar Footprint Power Holdings L.P.) (9509); Salem Harbor Power FinCo GP, LLC (f/k/a Footprint Power Salem Harbor FinCo GP, LLC) (N/A); Salem Harbor Power FinCo, LP (f/k/a Footprint Power Salem Harbor FinCo, LP) (9219); and SH Power DevCo GP LLC (f/k/a Footprint Power SH DevCo GP LLC) (9008). The location of the Debtors' service address is: c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite 475, Spring, Texas 77380.

[2] Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to them in the Bar Date Order.

[3] On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

**Exhibit B**

# TO GLOBE NEWSPAPER CO., INC.,

For Advertising in the Boston Globe

**Kroll**
55 East 52nd Street
17th Floor
New York, NY 10055

**Legal Notice**

I, Christopher M Zito, hereby certify that I am a Classified Advertising Sales Representative of the Boston Globe, Media Partners, LLC., publishers of the Boston Globe; that the above advertisement has been inserted in said newspaper one time on Wednesday, April 27, 2022 and that it is charged at the usual rates.

Boston, Mass – May 2, 2022

Personally appeared before me and made oath that the above statement subscribed to him is true........
Suffolk ss.

COMMONWEALTH OF MASSACHUSETTS
Christopher Zito personally appeared before me, the undersigned notary public, and proved to me his/her identity through satisfactory evidence, which were Personally Known to be the person whose name is signed on the preceding or attached document in my presence on this 2 day of May, 2022.

AIMEE ANN GIANNINI, Notary Public

Notary Public.
My Commission Expires

Ad# 530734/United States Bankruptcy for the District of Delaware

notices & more
boston.com/classifieds

LEGAL NOTICES LEGAL NOTICES

### The Commonwealth of Massachusetts

**DEPARTMENT OF PUBLIC UTILITIES**
**NOTICE OF FILING AND PUBLIC HEARING**

D.P.U. 22-47 April 22, 2022

Petition of NSTAR Electric Company d/b/a Eversource Energy for approval by the Department of Public Utilities of the Company's Marion-Fairhaven capital investment project proposal under the Provisional Program established by the Department in Provisional System Planning Program, D.P.U. 20-75-B (2021).

On April 15, 2022, NSTAR Electric Company d/b/a Eversource Energy ("Eversource" or "Company") submitted to the Department of Public Utilities ("Department") for review and approval of a capital investment project ("CIP") proposal. The Department docketed this matter as D.P.U. 22-47.

Currently, if a distributed generation ("DG") facility, such as a solar facility, requires an electric distribution company ("EDC") (e.g., Eversource) to upgrade the electric power system ("EPS") for the DG facility to interconnect with the EPS, the DG facility is responsible for the full cost of that upgrade. In Provisional System Planning Program, D.P.U. 20-75-B (2021), the Department established a new, provisional framework for planning and funding these upgrades to the EPS through an alternative method ("Provisional Program"). Under the Provisional Program, the costs of the EPS upgrade (the CIP) would be shared by the interconnecting DG facilities and all ratepayers of the EDC. While ratepayers will initially pay the costs of the CIP through a charge on their electric bills, each DG facility that is able to interconnect due to the upgrade to the EPS will pay a pro rata share of the costs of the CIP. Costs collected from those DG facilities will be returned to ratepayers through a credit on their electric bill through a reconciliation mechanism. D.P.U. 20-75-B at n.36. The requirements for the Provisional Program, including cost allocation, are discussed in the Department's Order establishing the program, D.P.U. 20-75-B. The Provisional Program is intended to foster timely and cost-effective development and interconnection of DG facilities.

Here, Eversource's CIP proposal is designed to make EPS modifications to allow DG facilities to interconnect in and around Fairhaven, Acushnet, Marion, Mattapoisett, and Rochester, MA. The CIP proposal includes upgrades to four substations located in Fairhaven, Acushnet, Marion, and Rochester. The EPS upgrades and impacted area are discussed in the Marion-Fairhaven Group Study (Exh. ES-Engineering Panel-1, at 18-20). Eversource projects the total cost to complete the system modifications under its CIP proposal to be approximately $119 million and that the CIPs will enable 141,000 kilowatts ("kW") of DG (Exh. ES-Engineering Panel-1, at 53; Exh. ES-ANB-3, at 3). Of the total cost, Eversource proposes $54 million be paid by DG facilities through a $385/kW CIP fee and for the remainder to be borne by ratepayers (Exh. ES- Engineering Panel-1, at 53). The portion of CIP costs paid by ratepayers will increase rates. The Company estimates that average monthly bill impacts would vary across rate classes ranging between 0.1 and 0.2 percent (Exh. ES-ANB-1, at 12-13; Exh. ES-ANB-4). A typical residential customer using on average 516 kWh per month would experience a monthly bill increase of $0.24.

On April 20,2022, the Attorney General of the Commonwealth ("Attorney General") filed a notice of intervention pursuant to G.L. c. 12, § 11E(a). The Attorney General has the right to represent and advocate on behalf of ratepayers in proceedings involving changes in EDCs' rates, prices, or tariffs. Pursuant to G.L. c. 12, § 11E(b), the Attorney General filed a notice of retention of experts and consultants to assist in her investigation of the Company's filing. The Attorney General has requested Department approval to spend up to $150,000. Pursuant to G.L. c. 12, § 11E(b), the costs incurred by the Attorney General relative to her retention of experts and consultants may be recovered by the Company in its rates. These costs are collected through a charge known as the Attorney General Consultant Expenses Adjustment Factor (AGCE).

Due to certain ongoing safety measures and precautions relating to in-person events as a result of the COVID-19 pandemic, the Department will conduct a virtual public hearing to receive comments on the Company's filing. During the public hearing, any member of the public will be able to provide comments. The Department will hold a procedural conference following the public hearing. During the procedural conference, the Department, Eversource, the Attorney General, and any party granted the right to intervene in the proceeding may discuss procedural matters, including the schedule for the evidentiary phase of the proceeding. The Department will conduct the public hearing and procedural conference using Zoom videoconferencing on May 19, 2022, beginning at 2:00 P.M. Attendees can join by entering the link, https://us06web.zoom.us/j/82322997561, from a computer, smartphone, or tablet. No prior software download is required. For audio-only access to the hearings, attendees can dial in at (646) 558-8656 (not toll free) and then enter the Meeting ID number, 82322997561. If you anticipate providing comments via Zoom during the public hearing, please send an email by May 16, 2022, to katie.zilgme@mass.gov with your name, email address, and mailing address.

Alternatively, any person who desires to provide written comment on this matter may submit their comments to the Department no later than the close of business (5:00 p.m.) on May 19, 2022. To the extent a person or entity wishes to submit written comments in accordance with this Notice, electronic submission, as detailed below, is sufficient.

At this time, all filings will be submitted only in electronic format in recognition of the difficulty that parties and the Department may have filing and receiving original copies. Ordinarily, all parties would follow Sections B.1 and B.4 of the Department's Standard Ground Rules (D.P.U. 15-184-A, App. 1 (March 4, 2020)). However, until further notice, parties must retain the original paper version, and the Department will later determine when the paper version must be filed with the Department Secretary.

All written comments or other documents must be submitted to the Department in **.pdf format** by email attachment to dpu.efiling@mass.gov and katie.zilgme@mass.gov. In addition, one copy of all written comments should be emailed to the Company's attorney, John K. Habib, Esq., jhabib@keeganwerlin.com. The text of the email must specify: (1) the docket number of the proceeding (D.P.U. 22-47); (2) the name of the person or company submitting the filing; and (3) a brief descriptive title of the document. The email must also include the name, title, and telephone number of the person to contact in the event of questions about the filing. The electronic file name should identify the document but should not exceed 50 characters in length. Importantly, all large files submitted must be broken down into electronic files that **do not exceed 20MB.**

Any person who desires to participate in the evidentiary phase of this proceeding shall file a petition for leave to intervene no later than close of business (5:00 p.m.) on May 12, 2022. A petition for leave to intervene must satisfy the timing and substantive requirements of 220 CMR 1.03. Receipt by the Department, not mailing, constitutes filing and determines whether a petition has been timely filed. A petition filed late may be disallowed as untimely, unless good cause is shown for waiver under 220 CMR 1.01(4). To be allowed, a petition under 220 CMR 1.03(1) must satisfy the standing requirements of G.L. c. 30A, § 10. All responses to petitions to intervene must be filed by the close of business (5:00 p.m.) on the second business day after the petition to intervene was filed. Any person who seeks to intervene in this matter and also desires to comment on the Attorney General' notice of retention of experts and consultants must file the comments no later than the close of business (5:00 p.m.) on May 12, 2022. One copy of written comments on the Attorney General's notice of retention of experts and consultants must be emailed to Elizabeth Mahony at elizabeth.l.mahony@mass.gov.

Eversource's filing and all subsequent related documents, pleadings, and/or filings submitted to the Department and/or issued by the Department will be available on the Department's website as soon as is practicable at https://eeaonline.eea.state.ma.us/DPU/Fileroom/dockets/bynumber (enter "22-47"). To the extent a person or entity wishes to submit comments in accordance with this Notice, electronic submission, as detailed above, is sufficient. To request materials in accessible formats (Braille, large print, electronic files, audio format), contact the Department's ADA coordinator at DPUADACoordinator@state.ma.us.
For further information regarding the Company's filing, please contact the Company's attorney, John K. Habib, Esq. at jhabib@keeganwerlin.com or 617-951-1400. For further information regarding this Notice, please contact Katie Zilgme, Hearing Officer, Department of Public Utilities, at katie.zilgme@mass.gov.

**COMMONWEALTH OF MASSACHUSETTS**
**LAND COURT**
**DEPARTMENT OF THE TRIAL COURT**
**DOCKET NO. 22 SM 000567**
**ORDER OF NOTICE**

TO: Armand J. Casale

and to all persons entitled to the benefit of the Servicemembers Civil Relief Act, 50 U.S.C. C. 50 §3901 (et seq):

Mortgage Assets Management LLC f/k/a Reverse Mortgage Solutions, Inc

claiming to have an interest in a Mortgage covering real property in Waltham, numbered 67 Hibiscus Avenue, given by Joseph A. Casale and Rose A. Casale to Genworth Financial Home Equity Access, Inc., dated June 8, 2010, and recorded in Middlesex County (Southern District) Registry of Deeds in Book 54822, Page 417, and now held by the Plaintiff by assignment, has/have filed with this court a complaint for determination of Defendant's/Defendants' Servicemembers status.

If you now are, or recently have been, in the active military service of the United States of America, then you may be entitled to the benefits of the Servicemembers Civil Relief Act. If you object to a foreclosure of the above-mentioned property on that basis, then you or your attorney must file a written appearance and answer in this court at Three Pemberton Square, Boston, MA 02108 on or before 05/30/2022 or you may lose the opportunity to challenge the foreclosure on the ground of noncompliance with the Act.

Witness, GORDON H. PIPER Chief Justice of this Court on 4/13/2022
Attest: Deborah J. Patterson, Recorder

**LEGAL NOTICE**
**Morgan Memorial Goodwill Industries**
**Invitation to Bid**

Morgan Memorial Goodwill Industries, the Awarding Authority, invites sealed bids for the construction of Morgan Memorial Goodwill - Parking & Site Improvements as described in the drawings and specifications prepared by SMMA, Inc.

The project includes reconstruction of existing parking and loading facilities, new lighting, drainage, and stormwater management.

A pre-bid conference will be held on Wednesday, May 11, 2022 at 10:00 AM at the Morgan Memorial Goodwill office located at 1010 Harrison Avenue, Boston, MA 02119. All bidders are strongly encouraged to attend.

Sealed bids for the General Contract will be received at the Goodwill office at 1010 Harrison Avenue until May 25, 2022 at 3:00 PM.

Drawings and specifications may be obtained from Morgan Memorial Goodwill Industries.

Each bidder may obtain up to one memory stick containing electronic files (PDFs) of the drawings and specifications without charge.

Drawings and specifications will also be available for examination during normal business hours, but may not be taken from, the following location: Morgan Memorial Goodwill Industries, 1010 Harrison Avenue, Boston, MA 02119.

All inquiries should be submitted in writing by email to Paul MacNeil [pmacneil@goodwillmass.org] by 5:00 PM on May 16, 2022.

LEGAL NOTICES LEGAL NOTICES

### The Commonwealth of Massachusetts

**DEPARTMENT OF PUBLIC UTILITIES**
**SECOND NOTICE OF FILING and PUBLIC HEARING**

D.P.U 22-22 March 4, 2022

Petition of NSTAR Electric Company, doing business as Eversource Energy, pursuant to G.L. c. 164, § 94 and 220 CMR 5.00, for Approval of a General Increase in Base Distribution Rates for Electric Service and a Performance-Based Ratemaking Plan.

On January 14, 2022, NSTAR Electric Company, doing business as Eversource Energy ("NSTAR Electric" or "Company"), filed a petition with the Department of Public Utilities ("Department") for an increase in electric base distribution rates. The Department has docketed this matter as D.P.U. 22-22 and has suspended the effective date of the proposed rate increase until December 1, 2022, to investigate the propriety of the Company's request. The Company represents that it will implement any change in rates beginning on January 1, 2023. The Company was last granted an increase in base distribution rates in NSTAR Electric Company/Western Massachusetts Electric Company, D.P.U. 17-05 (2017).

NSTAR Electric seeks to increase its rates to generate $89,477,862 in additional revenues. The Company proposes to transfer costs recovered through certain reconciling mechanisms, which totaled $58,184,827 in calendar year 2020, to base distribution rates, effective December 1, 2022. Based on this proposal, the proposed overall increase to distribution revenues is $147,662,689, which represents a 13.2 percent increase in distribution revenue.

The Company also proposes to implement a performance-based ratemaking ("PBR") plan, which would allow NSTAR Electric to adjust its base distribution rates on an annual basis through the application of a revenue-cap formula. The Company proposes to implement the PBR plan for a term of ten years with certain conditions, including the filing of mid-term rate schedules to update the cost of service and to provide sales and capital expenditure forecasts through the end of the proposed PBR term. Within the proposed ten-year PBR plan, NSTAR Electric proposes to invest $955.6 million to address its reliability-based electrification plans, which the Company states includes the installation of new substations, feeders, and distribution and transmission lines necessary to support customer demand over the long term. NSTAR Electric also proposes numerous individual performance metrics to gauge the Company's progress on its PBR plan commitments. As an alternative to the proposed ten-year PBR plan, NSTAR Electric proposes a PBR plan with a five-year term.
As part of its filing, NSTAR Electric also makes proposals regarding the implementation of advanced metering infrastructure and associated cost recovery, and the review and treatment of certain grid modernization, SMART program, and solar investments. Further, NSTAR Electric proposes certain changes to its storm fund mechanism, vegetation management program, and service quality reporting. The Company also makes proposals regarding the recovery of certain property taxes and prior period pension costs. Additionally, NSTAR Electric proposes post-test year adjustments to certain expense categories and to the Company's capital structure.

NSTAR Electric's filing also includes a number of rate design proposals, including refining existing tariff definitions and rate classes in the small and medium general service categories; introducing or expanding non-demand price options for small general service customers; eliminating unique, legacy rate designs involving declining blocks or seasonal pricing; eliminating or closing certain small, optional time-of-use rate classes; and revising the allocation and design of transmission rates, the allocation factors applicable to reconciling rates, and LED streetlight pricing.

The Department also will consider proposals regarding the discontinuance of full revenue decoupling for NSTAR Electric. 2022-2024 Three-Year Energy Efficiency Plans, D.P.U. 21-120 through D.P.U. 21-129, at 230-235 & n.146 (January 31, 2022).

The foregoing is not intended to be an exhaustive list of issues set forth in NSTAR Electric's filing. Additional information regarding the foregoing proposals, and all other proposals set forth by NSTAR Electric, can be found in the Company's filing.

NSTAR Electric states that if its petition is approved as requested, customers can expect the following bill impacts:

For residential non-heating customers:

- A typical residential non-heating customer using 530 kilowatt-hours ("kWh") of electricity per month in the Company's Eastern Massachusetts service area can expect a monthly bill increase of $7.14 (5.2 percent);
- A typical residential non-heating customer using 549 kWh of electricity per month in the Company's Western Massachusetts service area can expect a monthly bill increase of $7.29 (5.4 percent);
- A typical residential non-heating low-income customer using 480 kWh of electricity per month in the Company's Eastern Massachusetts service area can expect a monthly bill increase of $4.32 (5.9 percent); and
- A typical residential non-heating low-income customer using 586 kWh of electricity per month in the Company's Western Massachusetts service area can expect a monthly bill increase of $4.86 (5.5 percent).

For residential heating customers:

- A typical residential heating customer using 744 kWh of electricity per month in the Company's Eastern Massachusetts service area can expect a monthly bill increase of $17.12 (9.5 percent);
- A typical residential heating customer using 805 kWh of electricity per month in the Company's Western Massachusetts service area can expect a monthly bill increase of $18.29 (9.9 percent);
- A typical residential heating low-income customer using 843 kWh of electricity per month in the Company's Eastern Massachusetts service area can expect a monthly bill increase of $12.16 (9.9 percent); and
- A typical residential heating low-income customer using 993 kWh of electricity per month in the Company's Western Massachusetts service area can expect a monthly bill increase of $13.99 (10.2 percent).

For Commercial and Industrial Customers:

Commercial and industrial customers can expect bill impacts to vary depending on usage and rate class. Commercial and industrial customers should contact the Company, as indicated below, for specific bill impacts.

The Attorney General of the Commonwealth of Massachusetts ("Attorney General") filed a notice of intervention in this matter pursuant to G.L. c. 12, § 11E(a). Further, pursuant to G.L. c. 12, § 11E(b), the Attorney General filed a notice of retention of experts and consultants to assist in her investigation of the Company's filing and has requested Department approval to spend up to $550,000 in this regard. Pursuant to G.L. c. 12, § 11E(b), the costs incurred by the Attorney General relative to her retention of experts and consultants may be recovered in the Company's rates. The Department approved the Attorney General's request on February 17, 2022. NSTAR Electric Company, D.P.U. 22-22, Order on Attorney General's Notice of Retention of Experts and Consultants (February 17, 2022).

Due to certain ongoing safety measures and precautions relating to in-person events as a result of the COVID-19 pandemic, the Department will conduct a virtual public hearing to receive comments on the Company's filing. The Department will conduct the public hearing using Zoom videoconferencing on **May 4, 2022, beginning at 6:00 p.m.** Attendees can join the hearing by entering the link, https://us06web.zoom.us/j/88186818093 from a computer, smartphone, or tablet. No prior software download is required. For audio only access to the hearings, attendees can dial in to either hearing at (646) 558-8656 or (301) 715-8592 (not toll free) and then enter the Webinar ID: 881 8681 8093. If you anticipate providing comments via Zoom during either public hearing, please send an email by **May 3, 2022**, to marc.tassone@mass.gov with your name, email address, mailing address, and hearing date.

When using the Zoom platform, you will be able to listen to the hearing and provide comments in English, Spanish, Portuguese, or Mandarin. To access interpretation services through Zoom during the hearing, click on the "Interpretation" button on the menu at the bottom of the Zoom application screen and select your language (i.e., English, Spanish, Portuguese, or Mandarin).

Alternately, any person interested in commenting on the Company's filing may submit written comments to the Department no later than the close of business (5:00 p.m.) on **May 6, 2022**. To the extent a person or entity wishes to submit comments in accordance with this Notice, electronic submission, as detailed below, is sufficient.
Any person who desires to participate in the evidentiary phase of this proceeding shall file a petition for leave to intervene no later than 5:00 p.m. on **April 8, 2022**. A petition for leave to intervene must satisfy the timing and substantive requirements of 220 CMR 1.03. Receipt by the Department, not mailing, constitutes filing and determines whether a petition has been timely filed. A petition filed late may be disallowed as untimely, unless good cause is shown for waiver under 220 CMR 1.01(4). To be allowed, a petition under 220 CMR 1.03(1) must satisfy the standing requirements of G.L. c. 30A, § 10. All responses to petitions to intervene must be filed by the close of business (5:00 p.m.) on the second business day after the petition to intervene was filed.

All documents submitted to the Department pursuant to this Notice must be submitted in **pdf format** by e-mail attachment to dpu.efiling@mass.gov and marc.tassone@mass.gov. The text of the e-mail must specify: (1) the docket number of the proceeding (D.P.U. 22-22); (2) the name of the person or company submitting the filing; and (3) a brief descriptive title of the document. All documents submitted in electronic format will be posted on the Department's website as soon as practicable at https://eeaonline.eea.state.ma.us/DPU/Fileroom. Importantly, all large files submitted must be broken down into electronic files that do not exceed 20 MB. A copy of any documents submitted to the Department also should be emailed to the Company's attorney Cheryl M. Kimball, Esq. atckimball@keeganwerlin.com.

Ordinarily, all parties would follow Sections B.1 and B.4 of the Department's Standard Ground Rules (D.P.U. 15-184-A, App. 1 (March 4, 2020)) regarding the filing of documents. However, at this time, all filings will be submitted to the Department only in electronic format, consistent with the Department's June 15, 2021, Memorandum addressing continued modified filing requirements. Until further notice, parties must retain the original paper version of the filing and the Department will later determine when the paper version must be filed with the Department Secretary.

At this time, a paper copy of the Company's filing or the Attorney General's notice of retention of experts and consultants will not be available for public viewing at the Company's offices, the Department's offices, or at any location (e.g., public library, town hall) within the Company's service area. All documents, pleadings and filings submitted to the Department or issued by the Department related to these proceedings will be available on the Department's website at https://eeaonline.eea.state.ma.us/DPU/Fileroom/dockets/bynumber (enter "22-22"). To request materials in accessible formats for people with disabilities (Braille, large print, electronic files, audio format), contact the Department's ADA coordinator at DPUADACoordinator@mass.gov..

Any person desiring further information regarding the Company's filing, or a paper copy of the filing, should contact Cheryl M. Kimball at (617) 951-1400 or ckimball@keeganwerlin.com. For further information regarding this notice, please contact Marc J. Tassone, Hearing Officer, at marc.tassone@mass.gov.

**Legal Notice**

Springwell Title III-C Elderly Nutrition Program is inviting bid proposals on a Food Service Contract for the preparation and delivery of approximately nine hundred (900) meals five (5)
days per week, one hundred (100) Vaad approved Kosher meals five (5) days per week and sixty (60) weekly Vaad approved Kosher frozen meals for delivery either to staging site or congregate site.

Virtual Bidders Conference will be held on May 4, 2022. Please contact Dalia Cohen to register for event. Sealed bid proposals are to be submitted with three (3) copies to Dalia Cohen, Director of Nutrition, Springwell, 307 Waverley Oaks Road suite 205, Waltham MA, 02452 by June 1, 2022. Bid proposals will be opened at Springwell at 12:00pm on June 1, 2022.

All bid proposals will be accepted and subject to review by Springwell, Springwell's Board of Directors, and the Commonwealth Executive Office of Elder Affairs. Bid Specifications for Food Service Contractors will be e-mailed upon request. Springwell reserves the right to reject any and all bids as Springwell may determine in its own best interest.

Questions, inquiries and to register for virtual Bidders Conference, please email dcohen@springwell.com.

LEGAL NOTICES LEGAL NOTICES

**LEGAL NOTICE**
**MORTGAGEE'S SALE OF REAL ESTATE**

By virtue of and in execution of the Power of Sale contained in a certain mortgage given by Paul F. Teahan to Mortgage Electronic Registration Systems, Inc. acting solely as a nominee for Ideal Mortgage Bankers, LTD d/b/a Lend America, dated August 11, 2008 and registered at Norfolk County Registry District of the Land Court as Document No. 1158615 and noted on Certificate of Title No. 146051 (the "Mortgage"), as affected by a Loan Modification Agreement dated October 16, 2012, and registered as Document No. 1276329 and noted on Certificate of Title No. 146051 of which mortgage Selene Finance LP is the present holder by Assignment from Mortgage Electronic Registration Systems, Inc. as nominee for the beneficial Owner Ideal Mortgage Bankers, LTD, d/b/a LendAmerica to LoanCare, a division of FNF Servicing, Inc. dated February 2, 2010 and registered as Document No. 1205381 and noted on Certificate of Title No. 146051, and Assignment from LoanCare, a division of FNF Servicing, Inc. to Selene Finance LP dated August 16, 2014 and registered as Document No. 1320730 and noted on Certificate of Title No. 146051, for breach of conditions of said mortgage and for the purpose of foreclosing the same, the mortgaged premises located at 520 Common Street, Walpole, MA 02081 will be sold at a Public Auction at 10:00 AM on May 23, 2022, at the mortgaged premises, more particularly described below, all and singular the premises described in said mortgage, to wit:

The land with the buildings thereon situated in Walpole in the County of Norfolk, Massachusetts, bounded and described as follows:

SOUTHWESTERLY: by Common Street, sixty six and 22/100 (66.22) feet;
SOUTHERLY: by the Northeasterly line of said Common Street, thirty three and 88/100 (33.88) feet;
NORTHWESTERLY: by lot numbered 51, as indicated on the plan hereinafter referred to, two hundred thirty-two and 18/100 (232.18) feet;
NORTHEASTERLY: one hundred twenty eight and 04/100 (128.04) feet;
NORTHWESTERLY: forty six and 60/100 (46.60) feet, by lot numbered 54, as shown on said plan;
NORTHEASTERLY: by lots numbered 23 and 22, as indicated on said plan, one hundred eighty one and 31/100 (feet);
SOUTHERLY: by land now or formerly of Merrill Dost, one hundred thirty three and 54/100 (133.54) feet;
SOUTHWESTERLY: by lots numbered 1a and 2a, as indicated on said plan, one hundred twenty six and 58/100 (126.58) feet, and
SOUTHEASTERLY: by said lot numbered 2a, two hundred two and 96/100 (202.96) feet.

Said parcel is shown as lot numbered 55 on a plan drawn by Bay Colony Surveyors, William R. Buckley, Surveyor, dated July 17, 1970, as approved by the Land Court, filed in the Land Registration Office as No. 13207-0, a copy of a portion of which is filed in Norfolk Registry District with Certificate No. 90259, Book 452.

The above described land is subject to easements as reserved in a deed given by Jonathan Billings to Daniel Rhodes, dated July 25, 1822, duly recorded in Book 68, Page 70, so far as in force and applicable at date of original decree.

For mortgagor's title see deed registered at Norfolk County Registry District of the Land Court as Document Number 728414 and Noted on Certificate of Title Number 146051.

The premises will be sold subject to any and all unpaid taxes and other municipal assessments and liens, and subject to prior liens or other enforceable encumbrances of record entitled to precedence over this mortgage, and subject to and with the benefit of all easements, restrictions, reservations and conditions of record and subject to all tenancies and/or rights of parties in possession.

Terms of the Sale: Cashier's or certified check in the sum of $5,000.00 as a deposit must be shown at the time and place of the sale in order to qualify as a bidder (the mortgage holder and its designee(s) are exempt from this requirement); high bidder to sign written Memorandum of Sale upon acceptance of bid; balance of purchase price payable by certified check in thirty (30) days from the date of the sale at the offices of mortgagee's attorney, Korde & Associates, P.C., 900 Chelmsford Street, Suite 3102, Lowell, MA or such other time as may be designated by mortgagee. The description for the premises contained in said mortgage shall control in the event of a typographical error in this publication.

Other terms to be announced at the sale.

Selene Finance LP
Korde & Associates, P.C.
900 Chelmsford Street
Suite 3102
Lowell, MA 01851
(978) 256-1500
Teahan, Paul F., 16-026105

**NOTICE TO CONTRACTORS –**
**M.G.L. C. 30, sec. 39M CONSTRUCTION**
**ADVERTISEMENT OF INVITATION FOR BIDS**
**COMMONWEALTH OF MASSACHUSETTS**
**DEPARTMENT OF CONSERVATION AND RECREATION**
**251 CAUSEWAY STREET, SUITE 600,**
**BOSTON, MA 02114-2104**
**PHONE: 617-626-1250 FAX: 617-626-1449**
**www.mass.gov/dcr**

Contract No.: **P22-3462-C2A**
Title: **Bridge Maintenance and Repairs, Various Locations**
Location: Barnstable, Berkshire, Bristol, Duke, Essex, , Franklin, Hampshire, Hampden, Middlesex, Nantucket, Norfolk , Plymouth, Suffolk , Worcester

GENERAL BID proposals shall be submitted on a form furnished by the Department and will be received until **12:00 PM on Wednesday, June 15, 2022** through DCR's E-bid room at www.bidexpress.com/businesses/36765/home.

Individual sets of contract documents will only be available on DCR's E-bid room at www.bidexpress.com/businesses/36765/home.

If any addenda are issued throughout the open period for this project, DCR will distribute these addenda via Bid Express, which will also email identified prospective at the time plans and specifications are issued.

A pre-bidding conference for prospective bidders will be held virtually on Wednesday May 18, 2022, at 10:00 A.M. via MS TEAMS. Please email: dinesh.prashar@mass.gov if interested in joining this online pre-bid conference.

The project consists of undertaking scheduled and emergency bridge repairs to bridges statewide. Work order assignments will typically consist of furnishing equipment, materials, engineering, & labor to undertake bridge repairs and maintenance, including furnishing traffic management set-ups to support worksite access and coordinating Traffic Police Details.

The estimated project cost is $2,100,000.00

The work is to be accomplished within 750 calendar days of a notice to proceed. Liquidated damages in the amount of _$500____ per day will be assessed if the work has not been completed in accordance with the provisions of the contract within the time specified (as extended by any authorized extension of time granted in accordance with the contract provisions).

Bidders must be pre-qualified by the Massachusetts Dept. of Transportation (MassDOT) Highway Division in ____BRIDGE CONSTRUCTION_ to bid on the above project. An award will not be made to a Contractor who is not pre-qualified by MassDOT prior to the opening of Proposals.

The proposed contract includes a combined participation goal of 10.4% of the bid price for minority-owned business enterprises and women-owned business enterprises. Proposed MBE/WBE participation plans that include solely MBE or solely WBE participation, or do not include a reasonable amount of participation by both MBE and WBE firms to meet the combined goal, will not be considered responsive.

The applicable local minority workforce utilization percentage is a minimum goal of 15.3%. The applicable local women workforce utilization percentage is a minimum goal of 6.9%.

The Commonwealth encourages the participation of Veteran-Owned Business Enterprises ("VOBE") on its construction projects. The Veteran-Owned Business Enterprise participation benchmark for this contract is 3.0%.

Each bid must be accompanied by a bid deposit, in the form of a bid bond, cash, certified check, or a treasurer's or cashier's check issued by a responsible bank or trust company, payable to the Department of Conservation and Recreation in the amount of 5% of the bid.

Each bid must be submitted through DCR's E-Bid room at www.bidexpress.com/businesses/36765/home. Please ensure that your bid is complete and marked as responsive when submitting through DCR's Bid room. Any bids found to be incomplete and/or marked unresponsive will be rejected by DCR and will not be considered when awarding the project.

Bids are subject to the provisions of M.G.L. Ch. 30, Sect. 39F, G, H and M inclusive. Wages are subject to minimum wage rates as per M.G.L. Ch. 149, sections 26 to 27D inclusive. The Department reserves the right to waive any informalities in or to reject any and all bids if it be in the public interest to do so.

Stephanie Cooper, Acting Commissioner
Massachusetts Department of Conservation and Recreation

**NOTICE OF ACTIVITY AND USE LIMITATION**
**604 PLEASANT STREET**
**WATERTOWN, MASSACHUSETTS**
**RTN 3-36803**

A release of oil and/or hazardous materials has occurred at this location, which is a disposal site as defined by M.G.L. c. 21E, § 2 and the Massachusetts Contingency Plan, 310 CMR 40.0000. On April 5, 2022, WCV-610 Pleasant, LLC recorded with the Southern Middlesex Land Court Registry District a Notice of Activity and Use Limitation on the disposal site, pursuant to 310 CMR 40.1070 through 40.1080.

The Notice of Activity and Use Limitation will limit the following site activities and uses on
the above property:

* Use as a single-family residence

* Use for agricultural purposes, where the subsurface soil is used for growing fruits or vegetables for human consumption

* Use as a multi-family residence, school, daycare, or nursery school, without an evaluation conducted by an LSP who renders an Opinion which concludes that a condition of No Significant Risk, as defined in the MCP, has been achieved for building occupants with respect to vapor intrusion

* Excavation activities, other than short term emergency repairs, which disturb soil without the prior development and implementation of a Soil and Groundwater Management Plan and a Health and Safety Plan prior to the commencement of such activity

* Removal or disturbance of the concrete building floor slab, unless the slab is repaired

Any person interested in obtaining additional information about the Notice of Activity and Use Limitation may contact Patricia M Pinto, LSP, Sanborn Head & Associates, Inc. 1 Technology Park Drive, Westford, MA 01886, (978) 392-0900.

The Notice of Activity and Use Limitation and the disposal site files can be can be viewed at MassDEP website using Release Tracking Numbers (RTN) 3-36803 at http://public.dep.state.ma.us/SearchableSites2/Search.aspx or at MassDEP, Northeast Regional Office, 205B Lowell Street, Wilmington, Massachusetts 01887, 978-694-3200.

Experience Globe.com

LEGAL NOTICES LEGAL NOTICES

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>SALEM HARBOR POWER DEVELOPMENT LP (f/k/a Footprint Power Salem Harbor Development LP), *et al.*,[1]<br>Debtors. | Chapter 11<br>Case No. 22-10239 (MFW)<br>(Jointly Administered)<br>**Docket Ref Nos. 66 & 120** |

**NOTICE OF ENTRY OF BAR DATE ORDER ESTABLISHING DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING 503(b)(9) CLAIMS) AGAINST THE DEBTORS**

**PLEASE TAKE NOTICE THAT:**

The United States Bankruptcy Court for the District of Delaware (the "Court") has entered an order (the "Bar Date Order")[2] establishing deadlines to file Proof of Claim for all potential claims (as defined below), including claims pursuant to section 503(b)(9) (each, a "503(b)(9) Claim") of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") against the above-captioned debtors and debtors in possession (collectively, the "Debtors") that arose prior to March 23, 2022 (the "Petition Date").

Pursuant to the terms of the Bar Date Order, and except as otherwise provided herein, each person or entity that holds or asserts a claim against the Debtors (including 503(b)(9) Claims) must file a Proof of Claim with original signature, substantially conforming to the proof of claim form attached hereto, so that it is actually received by Kroll Restructuring Administration LLC ("Kroll"),[3] the Court-approved claims and noticing agent in these chapter 11 cases, on or before the Bar Dates set forth below. Proofs of Claim must be sent by *first-class mail, overnight courier*, or *hand-delivery* to:

**Salem Harbor Power Development LP, Claims Processing Center, c/o Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC), 850 3rd Avenue, Suite 412, Brooklyn, NY 11232**

Alternatively, Proofs of Claim may be submitted electronically through the electronic filing system available at https://cases.ra.kroll.com/Salemharbor.

To be properly filed, a Proof of Claim must be filed against the specific Debtor against which the claimant holds or asserts a claim. For example, if a claimant holds or asserts a claim against Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP), the Proof of Claim must specify Salem Harbor Power Development LP. If a claimant wishes to assert a claim against more than one Debtor, separate Proofs of Claim must be filed against each applicable Debtor.

Proofs of claim will be deemed timely filed only if actually received by Kroll on or before the Bar Date associated with such claim. Further, except with respect to the electronic filing system described above, Kroll will not accept Proof of Claim sent by facsimile, telecopy, email, or other electronic submission, and such claims will not be deemed to be properly or timely filed claims.

***General Bar Date.*** **Except as otherwise provided herein, each person or entity holding or asserting a claim (including a 503(b)(9) Claim) against the Debtors that arose prior to the Petition Date must file a Proof of Claim so that it is actually received by Kroll on or before May 23, 2022 at 4:00 p.m. (prevailing Eastern Time) (the "General Bar Date").**

***Governmental Unit Bar Date.*** **Each governmental unit holding or asserting a claim against the Debtors that arose prior to the Petition Date must file a Proof of Claim so that it is actually received by Kroll on or before September 19, 2022 at 4:00 p.m. (prevailing Eastern Time) (the "Governmental Bar Date," and, together with the General Bar Date, the "Bar Dates").**

*Amended Schedules Bar Date.* If, on or after the date on which the Debtors serve this Notice, the Debtors amend or supplement their schedules of assets and liabilities or statements of financial affairs (collectively, the "Schedules") (a) to change the amount, nature, classification or characterization of a claim, or (b) to add a new claim to the Schedules, the affected claimant, if it disagrees with the amount, nature, classification or characterization of such claim, shall file a Proof of Claim or amend any previously filed Proof of Claim in respect of the amended scheduled claim so that the Proof of Claim is actually received by Kroll on or before the later of (y) the General Bar Date or (z) twenty-one (21) days after the claimant is served with notice of the applicable amendment or supplement to the Schedules.

*Rejection Bar Date.* A Proof of Claim relating to the Debtors' rejection of an executory contract or unexpired lease pursuant to a Court order must be filed so that it is actually received by Kroll on or before the later of (a) the General Bar Date or (b) thirty (30) days after the later of (i) the date of service of the Court order authorizing such rejection or (ii) the effective date of such rejection.

For purposes of the Bar Date Order and this Notice, and pursuant to section 101(5) of the Bankruptcy Code, the term "claim" means (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured as of the Petition Date. Further, a "503(b)(9) Claim" is a claim for the value of any goods received by the Debtors within twenty (20) days prior to the Petition Date in which the goods have been sold to the Debtors in the ordinary course of the Debtors' business.

Any person or entity (including, without limitation, any individual, partnership, joint venture, corporation, limited liability company, estate, trust or governmental unit) holding an interest in the Debtors (an "Interest Holder"), which interest is based exclusively upon the ownership of common or preferred stock in the corporation or other equity security (as defined in section 101(16) of the Bankruptcy Code), or warrants or rights to purchase, sell or subscribe to such a security (any such security being referred to in this Notice as an "Interest"), need not file a proof of interest on or before the General Bar Date; provided, however, that Interest Holders who wish to assert claims against the Debtors that arise out of or relate to the ownership or purchase of an Interest, including claims arising out of or relating to the sale, issuance, or distribution of such Interest, must file Proof of Claim on or before the General Bar Date (or, in the case of a governmental unit, the Governmental Bar Date), unless another exception identified in the Bar Date Order applies.

**ANY PERSON OR ENTITY THAT IS REQUIRED TO FILE A TIMELY PROOF OF CLAIM IN THE FORM AND MANNER SPECIFIED BY THE BAR DATE ORDER AND WHO FAILS TO DO SO ON OR BEFORE THE APPLICABLE BAR DATE: (A) SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS, THEIR ESTATES, OR PROPERTY OF THE DEBTORS, OR THEREAFTER FILING A PROOF OF CLAIM WITH RESPECT THERETO IN THE CHAPTER 11 CASES; (B) SHALL NOT, WITH RESPECT TO SUCH CLAIM, BE TREATED AS A CREDITOR OF THE DEBTORS FOR THE PURPOSES OF VOTING UPON ANY PLAN OF REORGANIZATION OR LIQUIDATION IN THESE PROCEEDINGS; AND (C) SHALL NOT RECEIVE OR BE ENTITLED TO RECEIVE ANY PAYMENT OR DISTRIBUTION OF PROPERTY FROM THE DEBTORS OR THEIR SUCCESSORS OR ASSIGNS WITH RESPECT TO SUCH CLAIM; PROVIDED, HOWEVER, THAT A CLAIMANT SHALL BE ABLE TO VOTE UPON, AND RECEIVE DISTRIBUTIONS UNDER, ANY PLAN OF REORGANIZATION OR LIQUIDATION IN THESE CHAPTER 11 CASES TO THE EXTENT, AND IN SUCH AMOUNT, AS ANY UNDISPUTED, NON-CONTINGENT, AND LIQUIDATED CLAIMS IDENTIFIED IN THE SCHEDULES ON BEHALF OF THE CLAIMANT.**

Acts or omissions of the Debtors, if any, that occurred prior to the Petition Date, including acts or omissions related to any indemnity agreements, guarantees, or services provided to or rendered by the Debtors, may give rise to claims against the Debtors notwithstanding the fact that such claims (or any injuries on which they are based) may be contingent or may not have matured or become fixed or liquidated prior to the Petition Date. Therefore, any person or entity that holds or asserts a claim or a potential claim against the Debtors, no matter how remote or contingent, must file a Proof of Claim on or before the General Bar Date.

Questions concerning the contents of this Notice, the Bar Date Order, and requests for Proofs of Claim should be directed via phone to Kroll's at (844) 205-7534 (U.S./Canada, tollfree) or +1 (646) 813-2944 (International), or by email to salemharborinfo@ra.kroll.com. Please note that Kroll's staff is not permitted to give legal advice. You should consult your own attorney for assistance regarding any other inquiries, such as questions concerning the completion or filing of a Proof of Claim. Nothing contained in this Notice shall preclude the Debtors from objecting to any filed claim on any grounds.

Dated: April 22, 2022, Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
*/s/ Andrew L. Magaziner*
Pauline K. Morgan (No. 3650), Andrew L. Magaziner (No. 5426), Katelin A. Morales (No. 6683), Timothy R. Powell (No. 6894), Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Telephone: (302) 571-6600, Facsimile: (302) 571-1253, Email: pmorgan@ycst.com, amagaziner@ycst.com, kmorales@ycst.com, tpowell@ycst.com - and - **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP,** Brian S. Hermann (admitted *pro hac vice*), John T. Weber (admitted *pro hac vice*), Alice Nofzinger (admitted *pro hac vice*) 1285 Avenue of the Americas, New York, New York 10019, Tel: (212) 373-3000, Fax: (212) 757-3990, Email: bhermann@paulweiss.com, jweber@paulweiss.com, anofzinger@paulweiss.com.
*Counsel to the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor Development LP) (1360); Highstar Salem Harbor Holdings GP, LLC (f/k/a Highstar Footprint Holdings GP, LLC) (2253); Highstar Salem Harbor Power Holdings L.P. (f/k/a Highstar Footprint Power Holdings L.P.) (9509); Salem Harbor Power FinCo GP, LLC (f/k/a Footprint Power Salem Harbor FinCo GP, LLC) (N/A); Salem Harbor Power FinCo, LP (f/k/a Footprint Power Salem Harbor FinCo, LP) (9219); and SH Power DevCo GP LLC (f/k/a Footprint Power SH DevCo GP LLC) (9008). The location of the Debtors' service address is: c/o Tateswood Energy Company, LLC, 480 Wildwood Forest Drive, Suite 475, Spring, Texas 77380.

[2] Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to them in the Bar Date Order.

[3] On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

LEGAL NOTICES LEGAL NOTICES

**COMMONWEALTH OF MASSACHUSETTS**
**TRIAL COURT OF MASSACHUSETTS**

NORFOLK, ss. SUPERIOR COURT DEPARTMENT
Docket No.: 2082CV00313

CIT BANK, N.A.
**PLAINTIFF**
vs.

ROBERT E. BARTICK, JR.,INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ROBERT E. BARTICK; CHRISTOPHER M. BARTICK; SCOTT FEDOR
**DEFENDANTS**

**ORDER FOR SERVICE BY PUBLICATION**

Whereas, a civil action has been brought against Robert E. Bartick, Jr., individually and as Personal Representative of the Estate of Robert E. Bartick, Christopher M. Bartick and Scott Fedor seeking to determine the rights to certain surplus proceeds held by Plaintiff after a Foreclosure sale.

Whereas it appears to the Court from the Motion for alternate service by publication filed by the Plaintiff that no one can locate Scott Fedor and that no personal service of the Complaint may be made upon Scott Fedor, it is ORDERED, pursuant to Mass.R.Civ.P. 4(d)(1), that notice of this suit be given to Scott Fedor by publishing this order, once a week for two (2) consecutive weeks, the last publication to be at least twenty (20) days before said return day, in the Boston Globe, a newspaper published in Suffolk County, with circulation, among other locales, in Foxboro, Massachusetts.

WE COMMAND YOU, SCOTT FEDOR, if you intend to make any defense that on or by June 1, 2022 or within such further time as the law allows you, do cause your written responsive pleading (or other response as appropriate) to be filed in the Office of the Clerk of the Norfolk County Superior Court, 650 High Street Dedham, MA 02026 in said commonwealth, with a copy to be served upon the Plaintiff's attorney, Kelsey M. Bagge, Esq. Marinosci Law Group, P.C., 275 West Natick Road, Suite 500, Warwick, RI 02886 and further that you defend against said suit according to law if you intend any defense, and that you do and receive what the Court shall order and adjudge therein. If you fail to meet the above requirements, judgment by default may be rendered against you for the relief demanded in the Complaint.

Unless otherwise provided by Rule 13(e), your answer must state as a counterclaim any claim which you may have against the Plaintiff which arises out of the transaction or occurrence that is the subject matter of the Plaintiff's claim or you will be barred from making any such claim in any other action.

SO ORDERED.

Dated this 7th day of April, 2022.

JUSTICE OF THE SUPERIOR COURT

Witness, Heidi E. Brieger at Dedham, Massachusetts the 7th day of April 2022.

Walter F. Timilty, Clerk

**COMMONWEALTH OF MASSACHUSETTS**
**LAND COURT**
**DEPARTMENT OF THE TRIAL COURT**
**DOCKET NO. 22 SM 001146**
**ORDER OF NOTICE**

TO: Patricia A. Wilkinson

and to all persons entitled to the benefit of the Servicemembers Civil Relief Act, 50 U.S.C. C. 50 §3901 (et seq):

**AJX Mortgage Trust I, a Delaware Trust, Wilmington Savings Fund Society, FSB, Trustee**

claiming to have an interest in a Mortgage covering real property in **Roxbury (Boston), numbered 51 Saint James Street a/k/a 51 St. James Street**, given **by Patricia A. Wilkinson to Sovereign Bank, dated April 29, 2008, and recorded in Suffolk County Registry of Deeds in Book 43496, Page 66**, and now held by the Plaintiff by assignment, has/have filed with this court a complaint for determination of Defendant's/Defendants' Servicemembers status.

If you now are, or recently have been, in the active military service of the United States of America, then you may be entitled to the benefits of the Servicemembers Civil Relief Act. If you object to a foreclosure of the above-mentioned property on that basis, then you or your attorney must file a written appearance and answer in this court at **Three Pemberton Square, Boston, MA 02108** on or before 06/06/2022 or you may lose the opportunity to challenge the foreclosure on the ground of noncompliance with the Act.

Witness, GORDON H. PIPER Chief Justice of this Court on 4/22/2022
Attest: Deborah J. Patterson, Recorder

**THE STATE OF NEW HAMPSHIRE**
**JUDICIAL BRANCH**
**NH CIRCUIT COURT**

1st Circuit - Probate Division - Lancaster 1-855-212-1234
55 School St., Suite 104 TTY/TDD Relay: (800) 735-2964
Lancaster NH 03584 https://www.courts.nh.gov

**CITATION BY PUBLICATION**
**Case Name: Estate of William F Mitchell, JR**
**Case Number: 314-2022-ET-00030**

To all persons interested in the Estate of **William F Mitchell JR** late of **Berlin, NH.**

Any potential heirs-at-law of the above referenced estate shall notify the executor or the court of his/her current address within 30 days of the last date of publication of this notice. Failure to do so shall result in the waiver of further notice requirements.

The petitioner is ordered to serve this citation by publishing the same once each week for two successive weeks in a newspaper of statewide circulation in Massachusetts, the last publication to be one week at least before May 23, 2022.

April 08, 2022
/s/ Terri L. Peterson
Clerk of Court
State of New Hampshire
Coos County

LEGAL NOTICES LEGAL NOTICES

LEGAL NOTICE
MORTGAGEE'S SALE OF REAL ESTATE

By virtue of and in execution of the Power of Sale contained in a certain mortgage given by Aisha Blocker to Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Sidus Financial, LLC, dated November 20, 2008 and recorded in Suffolk County Registry of Deeds in Book 44275, Page 139 (the "Mortgage"), as affected by a Loan Modification Agreement dated April 17, 2012, and recorded at said Registry of Deeds in Book 49477, Page 266, and further affected by a Loan Modification Agreement dated November 29, 2014, and recorded at said Registry of Deeds in Book 53863, Page 312, and further affected by a Loan Modification Agreement dated July 24, 2018, and recorded at said Registry of Deeds in Book 60015, Page 216 of which mortgage MidFirst Bank is the present holder by Assignment from Mortgage Electronic Registration Systems, Inc., its successors and assigns to JPMorgan Chase Bank, NA dated May 2, 2012 and recorded at said Registry of Deeds in Book 49477, Page 264, and Assignment from Sidus Financial, LLC to JPMorgan Chase Bank, National Association dated July 12, 2017 and recorded at said Registry of Deeds in Book 58620, Page 315, and Assignment from JPMorgan Chase Bank, National Association to MidFirst Bank dated April 4, 2019 and recorded at said Registry of Deeds in Book 60947, Page 42, for breach of conditions of said mortgage and for the purpose of foreclosing the same, the mortgaged premises located at 83 Dix Street, Unit No. 2, of the 83 Dix Street Condominium, Dorchester (Boston), MA 02122 will be sold at a Public Auction at 2:00 PM on May 10, 2022, at the mortgaged premises, more particularly described below, all and singular the premises described in said mortgage, to wit:

Unit No.2 of 83 Dix Street Condominiums created by Master Deed dated February 17, 2006, and recorded on March 1, 2006 in the Suffolk County Registry of Deeds in Book 39126, Page 304, and shown on a plan recorded with said Registry of Deeds in Plan Book 2006, Page 167.

The Post Office address of the Condominium is: 83 Dix Street. Unit #2. Dorchester. Massachusetts. 02124.

The unit conveyed is laid out as shown on a plan filed herewith, which plan is a copy of a portion of the plans filed with said Master Deed and to which is affixed a verified statement in the form provided in 0.1. c. 183A, §9. It is subject to and with the benefit of the obligations, restrictions, rights and liabilities contained in 0.1. c. 183A, the Master Deed and the By-Laws filed therewith.

The Condominium and each of the units is intended for residential purposes and other uses permitted by the applicable Zoning Ordinances and as set forth in the Master Deed.

The undivided percentage interest of the unit conveyed hereunder in the common areas and facilities is 16 and 2/3%

Being the same property conveyed to Aisha Blocker by deed from Joseph M. McEachern, dated April 28, 2006 and recorded April 28. 2006 in Book 39481 at Page 126.

For mortgagor's title see deed recorded with the Suffolk County Registry of Deeds in Book 39481, Page 126.

The premises will be sold subject to any and all unpaid taxes and other municipal assessments and liens, and subject to prior liens or other enforceable encumbrances of record entitled to precedence over this mortgage, and subject to and with the benefit of all easements, restrictions, reservations and conditions of record and subject to all tenancies and/or rights of parties in possession.

Terms of the Sale: Cashier's or certified check in the sum of $5,000.00 as a deposit must be shown at the time and place of the sale in order to qualify as a bidder (the mortgage holder and its designee(s) are exempt from this requirement); high bidder to sign written Memorandum of Sale upon acceptance of bid; balance of purchase price payable by certified check in thirty (30) days from the date of the sale at the offices of mortgagee's attorney, Korde & Associates, P.C., 900 Chelmsford Street, Suite 3102, Lowell, MA or such other time as may be designated by mortgagee. The description for the premises contained in said mortgage shall control in the event of a typographical error in this publication.

Other terms to be announced at the sale.

MidFirst Bank
Korde & Associates, P.C.
900 Chelmsford Street
Suite 3102
Lowell, MA 01851
(978) 256-1500
Blocker, Aisha, 19-035842

New Listings Everyday

FOR
SALE
boston.com/realestate

